| |
|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY |
| *Caption in Compliance with D.N.J. LBR 9004-2*<br><br>**A.Y. STRAUSS LLC**<br>Eric H. Horn, Esq.<br>Heike M. Vogel, Esq.<br>Maria A.G. Harper, Esq.<br>290 West Mount Pleasant Avenue, Suite 3260<br>Livingston, New Jersey 07039<br>Tel. (973) 287-5006<br>Fax  (973) 533-0127<br><br>*Proposed Counsel to the Debtors<br>and Debtors in Possession* |

| | |
|---|---|
| In re:<br><br>JTRE 14 VESEY LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 24-12087 (MBK)<br><br>*(Joint Administration Requested)* |
| In re:<br><br>14 VESEY STREET PARTNERS (DEL) LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 24-12086 (MBK)<br><br>*(Joint Administration Requested)* |

**DECLARATION OF DAVID GOLDWASSER IN
SUPPORT OF THE DEBTORS' CHAPTER 11 PETITION**

**David Goldwasser**, pursuant to 28 U.S.C. § 1746, deposes and says under penalty of perjury:

1. I am the vice-president-restructuring of JTRE 14 Vesey LLC (the "***JTRE Debtor***") and 14 Vesey Street Partners (DEL) LLC (the "***Partners Debtor***" and together with the JTRE Debtor, the "***Debtors***").

2. I have over twenty years' experience in addressing special real estate situations. I have the ability to bring parties together, execute on an action plan and deliver results. In connection with my role as the Vice President of Restructuring of each of the Debtors, I am fully familiar with the facts set forth herein. I submit this declaration in support of the Debtor's petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

A. **The JTRE Debtor**

1. 14 Vesey Street Partners (DEL) LLC owns 100% of the membership interests of JTRE 14 Vesey LLC.

2. The JTRE Debtor owns, in fee, the real property at located at 14 Vesey Street, New York, NY 10007 (the "*Property*").

B. **The Partners Debtor**

3. The ownership of 14 Vesey Street Partners (DEL) LLC is as follows: (i) JTRE Holdings LLC owns 90%% of the membership interests; and (ii) the remaining 10% of membership interests are owned by outside investors each of which own less than 6% of the membership interests.

C. **The Property**

4. The Property is a unique, historic building that was once owned by the New York County Lawyers Association, and is therefore known as the "New York County Lawyers Association Building."

5. The Property was designed by a famous architect Cass Gilbert in 1930, and was designated as a "Landmark" by New York City in 1965.

6. In designating the Property as a Landmark, the New York Landmark Preservation Commission noted:

2

> On the basis of a careful consideration of the history, the architecture and other features of this building, the Landmarks Preservation Commission finds that the New York County Lawyers Association Building has a special character, special historical and aesthetic interest and value as part of the development, heritage and cultural characteristics of New York City. The Commission further finds that, among its important qualities, this distinguished building has set a very high standard for the planning, design and construction of a small clubhouse and that, as such, the New York County Lawyers Association Building makes a significant contribution to the architectural beauty of the City.

Ex. A at 1.

7. As noted on an architect's webpage from a firm that performed work on the property, the property was declared the "Home of Law" when it was constructed in 1930.

### D. Pre-Petition Secured Debt

8. The JTRE Debtor, at the direction of the Partners Debtor, purchased the Property on or around April 22, 2021, financing part of the purchase price with a $18,050,000 loan from CPIF Lending LLC ("**CPIF Lending**"), as a successor in interest (the "***Acquisition Loan***").

9. The Partners Debtor sought to make improvements to the Property and directed the JTRE Debtor to enter into another loan agreement with CPIF Lending for an additional $7,950,000 (the "***Building Loan***") to finance the costs of renovations, repairs, and other improvements.

10. The terms of the Building Loan and the Acquisition Loan (collectively, the "***Loans***") are governed by two Loan Agreements corresponding to the Loans (the "***Acquisition Loan Agreement***" and the "***Building Loan Agreement***," together the "***Loan Agreements***").

11. As a condition to making funds available to the JTRE Debtor under the Loans, CPIF Lending required the Partners Debtor to pledge the Membership Interests as security pursuant to two pledge agreements corresponding to the Loans (the "***Acquisition Loan Pledge Agreement***" and the "***Building Loan Pledge Agreement***").

3

12. In connection with both the Acquisition Loan and Building Loan, the JTRE Debtor executed two promissory notes corresponding to the Loans (the "*Acquisition Note*" and "*Building Note*" respectively, together the "*Notes*").

13. Under the original terms of the Notes, the Loans matured on April 22, 2022, but that date could be extended until October 22, 2022 provided, among other things, there were no ongoing "Events of Default".

14. On or about May 19, 2021, CPIF Lending purported to assign to CPIF MRA, LLC ("*CPIF MRA*") its interest in the Loan Agreements, Notes, Pledge Agreements, and various other agreements related to the Loans (the "*Loan Documents*").

15. On November 16, 2022, the JTRE Debtor and CPIF MRA entered into two "change-in terms" agreements corresponding to the Building Loan and Acquisition Loan (the "*Building Loan Amendment*" and the "*Acquisition Loan Amendment*" respectively, together the "*Amendments*"). The Amendments extended the maturity of the Loans to April 30, 2023.

E. **Unsecured Debt**

16. The JTRE Debtor has $566,657.50 in general unsecured debt.

F. **Reasons for the Chapter 11 Filing**

17. After purchasing the Property, the Partner's Debtor, through the JTRE Debtor, made repairs and renovations to the Property in an attempt to refurbish it and maximize its value.

18. However, CPIF MRA and/or CPIF Lending LLC substantially and inexcusably delayed their funding of the renovations under the Loan Agreements, which prevented the JTRE Debtor from completing its renovation of the Property.

4

19. By letter to the JTRE Debtor dated November 7, 2023, CPIF MRA asserted that various "Events of Defaults" had occurred under the Loan Documents, including JTRE's alleged non-payment of the Notes upon maturity.

20. On or about January 8, 2024, the Debtors received a marketing email from Keen-Summit Capital Partners LLC ("**Keen Summit**"), acting as CPIF MRA's broker, advertising a UCC foreclosure sale of the Membership Interests pursuant to the Pledge Agreements, which was scheduled to occur on February 28, 2024 (the "**Foreclosure Sale**").

21. The Debtors understand that said email, and various subsequent Keen Summit emails it received, were CPIF MRA's primary method of advertising the Foreclosure Sale to the public. The Debtors did not receive formal notice of the sale until January 26, 2024.

22. On February 26, 2024, the Partners Debtor filed a complaint by order to show cause with the New York Supreme Court, County of New York seeking to cancel the sale. Such was denied by the court.

23. Following such denial, I texted with the principal of CPIF MRA seeking to push out the foreclosure sale by one week, to which such principal responded "sure."

24. Such agreement was later reneged and as a result, the Debtors filed these emergent chapter 11 cases.

**G.     Chapter 11 Objectives**

25. The Debtors intends on using the chapter 11 process to sell the Property pursuant to a fulsome and transparent sales process. I believe that such is the best path to ensure that the Debtors' estates receive the highest and best value for the Property. Indeed, a fire sale will certainly not accomplish that goal. Additionally, the Debtor intend on working hand-in-hand with the lender and its professionals with the goal of reaching an accord and a consensual plan process.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

Dated: March 14, 2024

By: _____
Name: David Goldwasser
Title: Vice President of Restructuring