| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br><br>Caption in Compliance with D.N.J. LBR 9004-1(b)<br><br>**TOGUT, SEGAL & SEGAL LLP**<br>Frank A. Oswald, Esq.<br>550 Broad Street, Suite 1508<br>Newark, NJ 07102<br>Tel:  (212) 594-5000<br>frankoswald@teamtogut.com<br><br>Albert Togut, Esq. (admitted *pro hac vice*)<br>Eitan E. Blander, Esq. (admitted *pro hac vice*)<br>One Penn Plaza, Suite 3335<br>New York, NY 10119<br>Tel:  (212) 594-5000<br>altogut@teamtogut.com<br>eblander@teamtogut.com<br><br>*Attorneys for Albert Togut,*<br>*Not Individually But Solely in His Capacity*<br>*as Chapter 11 Trustee* | |
| In re:<br><br>JTRE 14 VESEY LLC, et al.,<br><br>              Debtors.[1] | Chapter 11<br><br>Case No.: 24-12087 (MBK)<br><br>Judge:  Michael B. Kaplan, U.S.B.J.<br><br>Hearing Date:  April 23, 2026 at 10:00 a.m.<br><br>(Jointly Administered) |

**TRUSTEE'S APPLICATION FOR:  (I) AN ORDER APPROVING
(A) BIDDING PROCEDURES REGARDING THE TRUSTEE'S SALE
OF 14 VESEY ST. PROPERTY, (B) THE STALKING HORSE BID
PROTECTIONS, AND (C) THE TIME, DATE, PLACE AND FORM
OF NOTICE FOR BIDS, AN AUCTION AND  A SALE HEARING;  AND
(II) AN ORDER APPROVING (A) THE SALE FREE AND CLEAR OF
LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS; AND
(B) PAYMENT OF BROKER COMMISSIONS FROM SALE PROCEEDS**

---

[1]    JTRE 14 Vesey LLC's case is jointly administered with the case of 14 Vesey Street Partners (DEL) LLC (24-12086), Park 28 Partners LLC (24-17234), and W72 Street Partners LLC (24-17236).

1

TO THE HONORABLE MICHAEL B. KAPLAN
UNITED STATES BANKRUPTCY JUDGE:

Albert Togut, not individually but solely in his capacity as Chapter 11 trustee (the "Trustee") of the estate (the "Estate") of JTRE 14 Vesey LLC (the "Debtor"), by his attorneys, Togut, Segal & Segal LLP, makes this application (the "Application") pursuant to, *inter alia*, sections 330, 363 and 506 of title 11, U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Rules 2002, 6004, and 9006 of the Federal Rules of Bankruptcy Procedure Rules (the "Bankruptcy Rules"), and Local Rules 6004-1, 6004-2, and 6004-5 of the Local Bankruptcy Rules for the District of New Jersey (the "Local Rules").

## PRELIMINARY STATEMENT

The Debtor owns real property located at 14 Vesey Street, New York, New York, 10007 (the "Property").  The Debtor's Estate does not have the ability to address or pay any secured, priority, or administrative claims that have been asserted against it absent a sale of the Property by the Trustee.

The Property does not generate any income.  It is subject to a recorded first-priority lien that secures claims held by CPIF MRA, LLC ("Lender") that total no less than $29,016,757.66.

Cushman and Wakefield ("Cushman") was retained by the Debtor, effective as of June 21, 2024, and then by the Trustee, as real estate broker to market and assist in the sale of the Property.  After extensive marketing efforts by Cushman, the Trustee received a formal written offer from 14 Vesey LLC (the "Stalking Horse Purchaser") to purchase the Property.  In consultation with the Lender, the Trustee and the Stalking Horse Purchaser have negotiated a contract of sale (the "Stalking Horse Sale Contract"), a copy of which is annexed hereto as Exhibit A, that provides for the sale of the Property for a purchase price of $13,000,000, all cash (the "Stalking Horse

2

Purchase Price"), subject to higher or better offers and Bankruptcy Court approval.

The Trustee seeks entry of a bidding procedures order in the form annexed hereto as Exhibit B (the "Bidding Procedures Order") approving, among other things: (i) bidding procedures, in substantially the form attached to the Bidding Procedures Order as Exhibit 1 (the "Bidding Procedures"), (ii) the Stalking Horse Bid Protections (defined below) including a Break-Up Fee equal to $300,000, or approximately 2.3% of the Stalking Horse Purchase Price, and Expense Reimbursement not to exceed $50,000, (iii) the time, date and place for the auction (the "Auction") and the proposed deadline for submitting qualified bids (the "Bid Deadline"), and a Court hearing (the "Sale Hearing") promptly thereafter to consider approval of the sale of the Property (the "Sale") to the offeror having made the highest and best offer for the Property (the "Successful Bidder"); and (iv) the form of notice of the Auction and the Sale Hearing, in substantially the form attached to the Bidding Procedures Order as Exhibit 2 (the "Notice of Auction and Sale Hearing").

At the Sale Hearing, the Trustee will seek entry of an order approving the sale of the Property to the Successful Bidder substantially in the form annexed hereto as Exhibit C (the "Sale Order"). The Sale Order will approve, among other things, the Sale of the Property to the Successful Bidder free and clear of all liens pursuant to Sections 363(b) and (f) of the Bankruptcy Code (the "Liens"), with any such Liens to attach to the Sale proceeds, and payment of the Broker Commission (defined below).

In support of this Application, the Trustee submits the declaration of Bobby Carrozzo, Senior Director in the New York Investment Sales department of Cushman, annexed hereto as Exhibit D (the "Carrozzo Declaration"). The Trustee reserves the right to file additional documents and to present such further information or evidence to the Court as may be appropriate in support of the relief requested herein.

As described below, following an extensive marketing campaign, the proposed sale will realize the value of the Property for the benefit of the Debtor's Estate. Moreover, on May 9, 2025, the Court entered the *Stipulation and Order in Aid of Sale of Property* [Docket No. 197] (the "506(c) Stipulation") that will enable the Trustee to address the projected allowed administrative expenses of the Estate and any allowed priority claims that will have to be satisfied as part of confirmation of a plan.

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Application and the relief requested herein pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Application is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The predicates for the relief requested herein are Bankruptcy Code sections 105(a), 330, 363, 506(c) and 1146, Bankruptcy Rules 2002, 6004, and 9006(c), and Local Rules 6004-1, 6004-2, and 6004-5.

## BACKGROUND

**A.      The Chapter 11 Case**

3. On February 28, 2024 (the "Vesey Petition Date"), the Debtor and 14 Vesey Partners (DEL) LLC ("Vesey Partners," and with the Debtor, the "Vesey Debtors") each filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code in this Court.

4. Vesey Partners is the sole member and 100% equity owner of the Debtor, which is a member managed limited liability company.

5. On July 19, 2024 (with the Vesey Petition Date, as applicable to the respective Debtor, the "Petition Date"), Park 28 Partners LLC and W72 Street Partners

LLC ("W72 Street Partners" and with Park 28 Partners LLC and the Vesey Debtors, the "Debtors"), each filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code in this Court.

6. On November 21, 2024, the Court entered an order [Docket No. 129] authorizing the procedural consolidation and joint administration of the Debtors' cases pursuant to Bankruptcy Rule 1015(b).

7. On November 22, 2024, the Court entered an *Order Appointing Chapter 11 Trustee* [Docket No. 130]. On December 5, 2024, the Court entered its *Order Approving the Appointment of a Chapter 11 Trustee by United States Trustee* [Docket No. 143], pursuant to which the Court approved the appointment of Albert Togut as Trustee for the estates of each of the Debtors.

8. No committee of unsecured creditors has been appointed in any of the Debtors' cases.

**B.**     **The Property**

9. The Property is real property located at 14 Vesey Street, New York, New York, 10007.

10. The Property is a unique, historic building that was once owned by the New York County Lawyers Association and is therefore known as the "New York County Lawyers Association Building." The Property was designed by a famous architect Cass Gilbert in 1930 and was designated as a "Landmark" by New York City in 1965.

11. The Property is the only known asset owned by the Debtor. The Property is currently vacant and generates no income from which the Trustee can pay property taxes, insurance premiums, assessments, governmental charges, costs and other expenses to maintain and safeguard the Property. The Lender has advanced

funds to the Trustee to pay costs and expenses of the Estate as needed.  As such, in order to generate any revenue to pay claims and expenses of the Estate, the Property must be sold.

**C.      The Lender's Mortgage**

12.      Prior to the Petition Date, CPIF MRA LLC (the "Lender") (as successor to CPIF Lending LLC) made three loans totaling a commitment of up to $28,039,798.80 to the Debtor that are evidenced by, among other things, (i) that certain Acquisition Loan Agreement, dated as of April 22, 2021 (as amended, supplemented, or otherwise modified from time to time, the "Acquisition Loan Agreement"); (ii) that certain Consolidated, Amended and Restated Promissory Note (Acquisition Loan), dated April 22, 2021, in the original principal amount of $18,050,000.00 (as amended, supplemented, or otherwise modified from time to time, the "Acquisition Note"); (iii) that certain Building Loan Agreement, dated as of April 22, 2021 (as amended, supplemented, or otherwise modified from time to time, the "Building Loan Agreement"); (iv) that certain Promissory Note (Building Loan), dated April 22, 2021, in the original principal amount of $7,950,000.00 (as amended, supplemented, or otherwise modified from time to time, the "Building Note"); (v) that certain Loan Agreement, dated as of November 16, 2022 (as amended, supplemented, or otherwise modified from time to time, the "Extension Loan Agreement," and together with the Acquisition Loan Agreement and the Building Loan Agreement, the "Loan Agreements"); and (vi) that certain Promissory Note, dated November 16, 2022, in the original principal amount of $2,039,798.77 (as amended, supplemented, or otherwise modified from time to time, the "Extension Note," and together with the Acquisition Note and the Building Note, the "Notes").  Lender is the current owner and holder of these loan documents (together with all other documents evidencing the Loans, the "Loan Documents").

13. The Loans are secured by, among other things, (i) a Consolidated, Amended and Restated Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (Acquisition Loan), dated as of April 22, 2021, which was recorded in the New York City Department of Finance, Office of the City Register (the "Public Records") on May 7, 2021, as Document Id. 2021000169358 (as amended or corrected, the "Acquisition Mortgage"); (ii) a Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (Building Loan), dated as of April 22, 2021, which was recorded in the Public Records on May 26, 2021, as Document Id. 2021000195404 (as amended or corrected, the "Building Mortgage"); and (iii) a Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated as of November 16, 2022, which was recorded in the Public Records on November 21, 2022, as Document Id. 2022000429170 (as amended or corrected, the "Extension Mortgage," and together with the Acquisition Mortgage and the Building Mortgage, the "Mortgages").

14. The Mortgages encumber certain real, personal, and other property owned by the Debtor, including the Property, which is located in New York County, New York, commonly known as 14 Vesey Street, New York, New York 10007, and more particularly described in the Mortgages. In addition to the real and personal property of the Debtor securing the Loans, Lender holds a pledge of all issued and outstanding equity in the Debtor (the "Pledged Equity") pursuant to two substantively identical Pledge and Security Agreements, each dated as of April 22, 2021 (together, the "Pledge Agreements") and executed by Vesey Partners for the benefit of Original Lender.

15. On or about May 19, 2021, CPIF Lending LLC assigned all of its right, title, and interest in, to, and under the Loans and Loan Documents, including the

Acquisition Mortgage and Building Mortgage, to Lender. Thus, Lender is the owner and holder of the subject first mortgage lien on the Property, as well as the other Loan Documents, and is the successor in interest to Original Lender for all purposes with respect to the Acquisition Loan and Building Loan.

**D.**     **Other Asserted Liens Against the Property**

16.     New York Insulation Inc. ("NY Insulation") asserts a claim against the Debtor that it alleges is secured by a prepetition mechanic's lien (the "NY Insulation Mechanic's Lien") against the Property filed on April 6, 2023. In the Debtor's Schedules of Assets and Liabilities [Docket No. 21], the Debtor did not list any claims in favor of NY Insulation and NY Insulation did not file a proof of claim in the Debtor's Chapter 11 case. The NY Insulation Mechanic's Lien was perfected after the Lender's Mortgages and is therefore junior in priority to the Lender's Mortgages.

17.     Nouveau Elevator Industries LLC ("Nouveau") asserts a claim against the Debtor that it alleges is secured by a prepetition mechanic's lien (the "Nouveau Mechanic's Lien") against the Property filed on September 8, 2023. In the Debtor's Schedules of Assets and Liabilities, Nouveau is listed as holding an undisputed, liquidated, non-contingent unsecured claim for approximately $33,000. Nouveau also filed Proof of Claim Nos. 2 and 3 against the Debtor asserting unsecured claims in the amounts of $31,306.48 and $77,072.15, respectively. The Nouveau Mechanic's Lien was perfected after the Lender's Mortgages and is therefore junior in priority to the Lender's Mortgages.

**E.**     **The Marketing Process**

18.     Prior to the Appointment of the Trustee, on July 1, 2024, the Court entered an order authorizing the Debtor to retain Cushman to assist in the marketing and sale of the Property (the "Cushman Retention Order") [Docket. No. 86].

Following the appointment of the Trustee, the Trustee continued and extended the retention of Cushman through December 31, 2025, and then again through July 1, 2026.

19. Cushman extensively marketed the Property. Following the launch of the Property listing on August 20, 2024, Cushman identified and contacted numerous brokers and potential buyers for the Property, through direct e-mail correspondence and/or telephone outreach. Cushman also posted marketing information regarding the Property on its own website and other listing websites, including CoStar, LoopNet, Crexi, and others. The above forms of listing were designed to expose the Property to thousands of prospective bidders and brokers worldwide.

20. As explained in the Carrozzo Declaration, Cushman received direct expressions of interest from a total of 90 parties, showed the Property to 29 interested parties, and received a total of 8 offers through the date of this Application.

21. Following discussions with Cushman and the Trustee's professionals, the Trustee determined that Stalking Horse Purchaser's offer is the highest and best offer that has been made for the Property and should be accepted as the "stalking horse offer" presented to the Court for approval, subject to higher and better offers. The Stalking Horse Purchase Price is to be paid in cash at closing and is not subject to any financing contingencies. The Trustee has concluded that the Stalking Horse Sale Contract is fair and reasonable, and in the best interests of the Estate, its creditors and other parties in interest. Notwithstanding, the Proposed Sale and the Stalking Horse Purchase Price will be tested by an additional solicitation process and auction at which higher or better offers will be considered.

**F.** **The Stalking Horse Sale Contract**

22. The following is a summary of the material terms of the Stalking Horse Sale Contract:[2]

- **Stalking Horse Purchase Price**: $13,000,000.

- **Deposit**: $600,000 was delivered to the Trustee upon signing, and another $600,000 will be delivered within two business days following entry of the Sale Order if the Stalking Horse Purchaser is the Successful Bidder (together, the "Deposit").

- **Closing Date:** A closing to be held on the date that is forty-five (45) days after the date on which the Sale Order becomes a final, non-appealable order, provided, however, Purchaser shall have the onetime right, upon written notice to Seller not less than five (5) days prior to the Closing date, to extend the Closing date for a period of up to fifteen (15) days, TIME BEING OF THE ESSENCE.

- **No Reliance on Warranties or Representations:** Upon signing the Contract, Purchaser shall have inspected the Premises, and Purchaser shall be deemed to have acknowledged that it has made its own analysis and evaluation of the income potential and profits and expenses of the Premises as well as the physical condition, layout, footage, income, expenses and operation of the Premises, and that, except as otherwise expressly set forth herein, Seller has not made and does not make any representations as to any of the foregoing or any other matter or thing affecting or related to the Premises or to this Agreement and that neither party is relying upon any statement or representation made by the other not embodied in this Agreement. Except as otherwise set forth herein, Purchaser hereby expressly acknowledges that it is purchasing the Premises and the fixtures and equipment thereon, if any, in its current "AS IS, WHERE IS, AND WITH ALL FAULTS" condition, including, without limitation, the state of, or any conditions in connection with and subject to the provisions of §8.01 and §9.02, the following: the condition of the surface or subsurface of the Premises; zoning or other governmental conditions or restrictions applicable to the Premises; utility availability or capacities; compliance with Environmental Laws (as defined below) or any other existing laws or governmental regulations; the condition of the Building; the past or present absence or presence of any Hazardous Substances (as defined below); merchantability or fitness of the Premises or any part thereof for a particular purpose; or any other aspect of the Premises whether or not same may materially affect the value or the use thereof.

---

[2] The summary of the Stalking Horse Sale Contract is provided for the convenience of the Court and parties in interest. In the event of any inconsistency between the summary in this Application and the terms of the Stalking Horse Sale Contract, the terms of the Stalking Horse Sale Contract shall govern.

**G.**     <u>**Stalking Horse Bid Protections**</u>

23.     The Stalking Horse Sale Contract provides that if the Court approves the Sale of the Property to a Successful Bidder other than the Stalking Horse Purchaser, the Stalking Horse Purchaser will be entitled to a breakup fee equal to $300,000, or approximately 2.3% of the gross Stalking Horse Purchase Price (the "<u>Break-Up Fee</u>") and an expense reimbursement of reasonable and necessary documented costs and expenses, including reasonable attorney's fees incurred by the Stalking Horse Bidder, not to exceed $50,000 (the "<u>Expense Reimbursement</u>" and, collectively, the "<u>Stalking Horse Bid Protections</u>").  The Stalking Horse Bid Protections would be payable upon closing of the Sale of the Property to the Successful Bidder from the sale proceeds of the Sale, and until paid will be allowed as an administrative claim pursuant to Bankruptcy Code section 503(b).

24.     The Trustee respectfully submits that given the Trustee's need to maximize value for creditors through a timely and efficient marketing process, the ability to designate a stalking horse bidder and offer such bidder the Stalking Horse Bid Protections is justified, appropriate, and essential.

<u>**RELIEF REQUESTED**</u>

25.     By this Application, the Trustee seeks entry of:  (a) the Bidding Procedures Order approving (i) the Bidding Procedures;  (ii) the Stalking Horse Bid Protections;  (iii) the time, date and place of the Auction and the Sale Hearing;  and (iv) the Notice of Auction and Sale Hearing;  and following entry of the Bidding Procedures Order, and (b) the Sale Order approving (i) the Sale of the Property as described herein and provided for in the Stalking Horse Sale Contract, or such other offer received by the Successful Bidder and (ii) payment of the Broker Commission.

**H.** **The Proposed Bidding Procedures and Auction**

26. The Trustee proposes to fix May 21, 2026, at 5:00 p.m. (ET) as the Bid Deadline. In the event that a Qualified Bid (defined below) is received on or before the Bid Deadline, the Trustee proposes to hold an Auction within a few days thereafter.[3] The Bidding Procedures contain the terms and procedures that will govern the submission of bids for the Property.

27. At the Auction, and subject to the Bidding Procedures, all Qualified Bidders (as defined in the Bidding Procedures) will be allowed to bid to purchase the Property. The Trustee, in consultation with the Lender, will determine the highest or best bid for the Property, with the goal of maximizing the net value to the Estate. In evaluating bids, the Trustee intends to consider the following factors, among others and without limitation: (a) the amount and form of consideration offered; (b) the changes to the Stalking Horse Sale Contract, if any, required by the bidder; and (c) the bidder's ability to timely consummate the Sale.

28. At the Sale Hearing, the Trustee will seek approval of the Sale to the Successful Bidder.

29. The Bidding Procedures provide, in pertinent part:[4]

- **Qualified Bidders.** To participate in the bidding process, a bidder (the "Potential Bidder") must first deliver to the Trustee a Qualified Bid (as defined below) for the Property.

---

[3] The Trustee reserves the right to extend the deadlines set forth in the Bidding Procedures Order and/or adjourn, continue or cancel the Auction and/or the Sale Hearing for any reason, including in the event the Trustee determines that a more favorable transaction is available that can be consummated without significant delay, without further order of the Bankruptcy Court, by filing a notice with the Bankruptcy Court and serving such notice on all interested bidders.

[4] To the extent that there are any inconsistencies between the description of the Bidding Procedures contained herein and the actual Bidding Procedures, the terms of the Bidding Procedures shall control.

- **Qualified Bid.** A Qualified Bid[5] for the Property must: (a) be irrevocable through the earlier of the Closing Date and thirty (30) days after the entry of the Sale Order; <u>provided</u>, <u>however</u>, that (i) if the Qualified Bid becomes the Successful Bid, such bid shall be irrevocable through the Closing Date or such earlier date as such sale contract may be terminated in accordance with its terms, and (ii) in the case of the Second Highest Bid (as defined in the Bidding Procedures), such bid shall remain irrevocable through the earlier of (A) the Closing Date for the Sale of the Property, and (B) sixty (60) days after the entry of the Sale Order in respect of the Successful Bid, unless the Successful Bidder fails to close and the Trustee shall have given notice to the Second Highest Bidder that he has decided to consummate the transaction contemplated by the Second Highest Bid, in which case the Second Highest Bid shall remain open through the Closing Date with such Second Highest Bidder; (b) be submitted to the proper parties, as described in the Bidding Procedures, prior to the Bid Deadline, and (c) satisfy the requirements set forth in the Bidding Procedures, including the following:

  o The bid must be in writing and on the same (or better) terms and conditions as those set forth in the Stalking Horse Sale Contract, and must include an agreement substantially similar to the Stalking Horse Sale Contract and marked to show any changes thereto;

  o The bid must be for a price of at least $400,000 greater than the Stalking Horse Purchaser's bid, and under terms which the Trustee believes to be higher and better than the Stalking Horse Purchaser's bid;

  o The bid must be accompanied by a deposit in an amount equal to at least ten percent (10%) of the proposed purchase price, which must be in the form of a wire transfer, certified or cashier's check, and such deposit will be non-refundable in the event such bid is accepted by the Trustee and approved by the Court (except as otherwise provided in the Stalking Horse Sale Contract or the Bidding Procedures Order);

  o The bid must be accompanied by sufficient information to demonstrate, as determined by the Trustee after consultation with the Lender, that the Potential Bidder has the financial ability to timely consummate the proposed transaction, including, but not limited to, current bank account statements, current audited financial statements, commitments or other proof of available and non-contingent financing, and such other forms of financial disclosure and credit quality in support of such Potential Bidder (including financial information from any entities that will finance or guarantee the obligations of such Potential Bidder), which the Trustee requests;

  o The bid must be firm and unconditional and not subject to any contingencies that are not provided for in the Stalking Horse Sale Contract, including, without limitation, further due diligence review or receipt of debt or equity financing;

---

[5] For the avoidance of doubt, the Stalking Horse Sale Contract constitutes a Qualified Bid.

- The bid must expressly acknowledge that no offer or bid for the Property shall be deemed accepted by, or binding upon, the Debtor's estate unless and until such offer or bid is accepted in writing by the Trustee and approved by Order of the Bankruptcy Court;

- The bid must expressly acknowledge that the Property is being sold **"AS IS", "WHERE IS" IN ITS CURRENT CONDITION, WITHOUT ANY REPRESENTATIONS, COVENANTS, GUARANTEES OR WARRANTIES OF ANY KIND OR NATURE WHATSOEVER**, and free and clear of any liens, claims or encumbrances of whatever kind or nature, with such liens, if any, to attach to the proceeds of sale, and is subject to among other things (a) any state of facts that an accurate survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; and (d) any building or zoning ordinances or any other applicable municipal regulations and violations thereof; and (e) environmental conditions;

- The bid must expressly state that the Potential Bidder (a) has had an opportunity to conduct due diligence regarding Property prior to making its offer and does not require further due diligence, (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Property in making its bid, and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Property, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures;

- The bid must expressly state that the Potential Bidder has obtained all necessary approvals to make its bid and to enter into and consummate the transaction set forth in the Stalking Horse Sale Contract;

- The bid must include an executed original of the Bidding Procedures acknowledging and agreeing to the Bidding Procedures and all the terms thereof;

- The bid must include a statement that the Potential Bidder is not an "Insider" (as that term is defined under the Bankruptcy Code) of any of the Debtors; and

- The bid must expressly state that that the Potential Bidder has not engaged in any bad faith or collusion with respect of the Auction or Sale.

- **Bid Deadline.** All bids for the Property must be received by the Trustee by 5:00 p.m. (ET) on the Bid Deadline.

- **The Auction.** If a Qualified Bid or Bids for the Property is received by the Bid Deadline, the Auction will be held commencing at 1:00 p.m. (ET) on May 26, 2026, and continued, if the Trustee deems necessary, from time to time, to such date(s)

and time(s) as the Trustee shall determine. Only Qualified Bidders will be eligible to participate at the Auction. The Trustee, in consultation with the Lender, will determine the highest and best Qualified Bid received prior to the Bid Deadline, and such Qualified Bid will be the starting bid at the Auction (the "Starting Auction Bid").

- **Auction Rules.** At the Auction, the minimum initial overbid will be at least $100,000 greater than the Starting Auction Bid unless otherwise determined by the Trustee, in consultation with the Lender. The Trustee will, from time to time, advise all participants in the Auction as to the determination of the highest or best bid or bids currently offered. Subject to the Stalking Horse Sale Contract, the Trustee, after consultation with the Lender, may adopt other rules for the Auction that, in his reasonable judgment, will promote the goals of the Auction. All such rules will provide that: (a) the Auction procedures must be fair and open, and (b) all bids shall be made known to all other participating Qualified Bidders, and the Trustee will advise all participants in the Auction of such other rules before they are implemented.

- **Successful Bid.** At the conclusion of the Auction, the Trustee will select, in consultation with the Lender, subject to Court approval, a bid as the highest and best for the Property. The Qualified Bidder submitting the Successful Bid for the Property will be the "Successful Bidder." The Trustee will also select an alternate bid for the Property, which will become the Successful Bid should the Successful Bidder fail to close the Sale. If no Auction is held, the Stalking Horse Sale Contract will be considered the Successful Bid. In determining whether a Qualified Bid is the Successful Bid, the Trustee may also consider the potential costs of satisfying the conditions of any bid.

- **Sale Hearing.** The Sale Hearing will be held shortly following the Auction at a date and time established by the Court and set forth in the Bidding Procedures Order. At the Sale Hearing, the Trustee will seek entry of the Sale Order.

**I.      Extraordinary Provisions of the Proposed Sale**

30.      The Trustee is required to highlight any "extraordinary provisions." The extraordinary provisions are as follows:

- **"Sale Free and Clear."** The Property shall be transferred to the purchaser free and clear of all encumbrances to the fullest extent permitted by section 363 of the Bankruptcy Code.

- **"Tax Exemption."** The Trustee reserves the right to sell the Property pursuant to a Chapter 11 plan and seek to have the sale declared exempt from transfer taxes under section 1146(a) of the Bankruptcy Code.

- **"Successor Liability."** Under the Sale Order, the purchaser shall not be liable for any Claims against any of the Debtors or any of their respective predecessors or affiliates, and the Stalking Horse Purchaser shall have no successor or vicarious liabilities of any kind of character, including, but not limited to, under any theory of antitrust, environmental, successor or transferee liability, labor law, successor or successor employer liability, de facto merger or joint venture, mere continuation or substantial continuity, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including, but not limited to, liabilities on account of warranties, intercompany loans and receivables between any of the Debtor and any non-debtor subsidiary, liabilities relating to or arising from any environmental laws, and any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Property prior to Closing.

- **"Relief from Bankruptcy Rule 6004(h)."** The Trustee requests that any Sale Order provide for a waiver of the automatic 14-day stay imposed by Bankruptcy Rule 6004(h).

**J.      Notice of Bidding Procedures, Auction and Sale Hearing**

31.      The Trustee will serve a copy of this Application, with exhibits, by first class mail and/or e-mail, upon the following parties (the "Notice Parties") upon submitted the Application to the Court: (a) counsel to the Stalking Horse Purchaser, Wachtel Missry LLP, One Dag Hammarskjold Plaza, 47th Floor, 885 Second Avenue, New York, New York 10017, Attn: Steven J. Cohen, Esq.; (b) counsel to the Debtors, A.Y. Stauss LLC, 290 West Mount Pleasant Avenue, Suite 3260 Livingston, New Jersey 07039, Attn: Eric H. Horn, Esq; (c) counsel to Lender, Benesch, Friedlander, Coplan & Aranoff LLP, 1155 Avenue of the Americas, 26th Floor New York, NY 10036, Attn: Abbey Walsh, Esq.; (d) the United States Trustee, One Newark Center, Suite 2100, Newark NJ 07102, Attn: Lauren E. Bielskie, Esq.; (e) all parties that have recorded liens against the Property; (f) all of the Debtor's known creditors at the addresses listed in the Debtor's Schedules of Assets and Liabilities, or the Proof of Claim filed in the case; (g) all parties that have filed a Notice of Appearance; (h) the Internal Revenue Service, Centralized Insolvency Operations, P.O. Box 7346, Philadelphia, PA 19101-7346; (i) the

New York City Department of Finance, 345 Adams Street, 3rd Floor, Brooklyn, New York 11201, Attn: Bankruptcy Unit; (j) New York State Department of Taxation and Finance, Bankruptcy/Special Procedures, P.O. Box 5300, Albany, New York 12205-0300; (k) the United States Attorney for the Southern District of New York, Attn: Tax and Bankruptcy Unit, 86 Chambers Street, 3rd Floor, New York, New York 10007; (l) Corporation Counsel for the City of New York, Bankruptcy Unit, 100 Church Street, #4, New York, New York 10007, Attn: Hugh Shull, Esq.; and (m) the New York State Attorney General, 120 Broad Street, New York, New York 10271-0332. The Trustee submits that no other or further notice of the proposed Bidding Procedures Order is necessary and respectfully requests that, if satisfactory to the Court, the Bidding Procedures Order should be approved and entered by the Court.

32.     Within two (2) business day after entry of the Bidding Procedures Order, the Trustee will cause copies of the Bidding Procedures Order, as entered by the Court, together with the exhibits thereto (including the Bidding Procedures), to be served on the Notice Parties, as well as to all of the parties that have expressed an interest in purchasing the Property to Cushman. The Trustee submits that no other or further notice of the Bidding Procedures Order, the Bidding Procedures, the Bid Deadline, the Auction and the Sale Hearing is necessary.

**K.     Objections to the Sale**

33.     The Trustee proposes that objections, if any, to the Sale, must be filed with this Court and served so as to be received by: (a) Togut, Segal & Segal LLP, attorneys for the Trustee, One Penn Plaza, Suite 3335, New York, New York 10119, Attn: Frank Oswald, Esq; (b) Wachtel Missry LLP, counsel to the Stalking Horse Purchaser, One Dag Hammarskjold Plaza, 47th Floor, 885 Second Avenue, New York, New York 10017, Attn: Steven J. Cohen, Esq.; (c) Benesch, Friedlander, Coplan & Aranoff LLP,

counsel for Lender, 1155 Avenue of the Americas, 26th Floor New York, NY 10036, Attn: Abbey Walsh, Esq.; (d) the United States Trustee, One Newark Center, Suite 2100, Newark NJ 07102, Attn: Lauren E. Bielskie, Esq.; (e) A.Y. Strauss LLC, counsel to the Debtors, 290 West Mount Pleasant Avenue, Suite 3260 Livingston, New Jersey 07039, Attn: Eric H. Horn, Esq.; and (f) all parties that have filed a Notice of Appearance, so as to be actually received no later than seven (7) days before the Sale Hearing (the "Objection Deadline"). Objections, if any, shall state the party's interest in the Debtor's Chapter 11 case and shall also set forth the specific grounds, legal and/or factual, for the objection.

34. The Trustee further requests that the Bidding Procedures Order provide that the failure of any objecting person or entity to file timely an objection to the Sale shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Sale, or to any portion of the agreement with the Successful Bidder to the extent it is based on a ground that should have been known prior to the Objection Deadline.

## BASIS FOR RELIEF

### A. The Bidding Procedures Should Be Approved

35. The Bidding Procedures, which are standard for the sale of assets in similar cases, will ensure that the Trustee receives the greatest benefit available from the Sale of the Property. Further, the Bidding Procedures are fair and open, and do not unfairly favor any potential purchaser. Finally, the Trustee submits the Bidding Procedures set out a timeframe that will allow potential purchasers sufficient time to conduct due diligence and submit informed bids, while still providing for the prompt sale of the Property. As discussed above, the Property has been extensively marketed for almost two years, and interested parties have already had ample opportunity to visit and conduct diligence on the Property prior to approval of the Bidding Procedures.

36.     The Trustee respectfully submits that the Bidding Procedures are reasonably designed to ensure that the Debtor's estate receives the highest or best purchase price for the Property and, therefore, warrant Court approval.

**B.     The Sale Schedule and Notice Are Reasonable and Should Be Approved**

37.     Bankruptcy Rule 6004(a) provides that notice of a proposed sale of property of the estate, other than in the ordinary course of business, shall be given to all known creditors and parties-in-interest pursuant to Bankruptcy Rule 2002(a)(2), (c)(1), (i) and (k).

38.     Bankruptcy Rule 2002(a) requires that "the clerk, or some other person as the court may direct," give "the debtor, the trustee, all creditors and indenture trustees at least 21 days notice by mail of:  (2) a proposed use, sale, or lease of property of the estate other than in the ordinary course of business…."  Fed. R. Bankr. P. 2002(a).   Bankruptcy Rule 2002(c) requires that this notice include "the time and place of any public sale, the terms and conditions of any private sale and the time fixed for filing objections."  Fed. R. Bankr. P. 2002(c).

39.     Bankruptcy Rule 6004(c) requires that an application pursuant to section 363(f) of the Bankruptcy Code for authority to sell property free and clear of liens or other interests "shall be served on the parties who have liens or other interest in the property to be sold."  Fed. R. Bankr. P. 6004(c).  The parties holding Liens and interests in the Property will receive notice of the Trustee's proposed Sale.

40.     As described above, the Trustee is proposing that the Bid Deadline be set approximately thirty (30) days following the date of entry and service of the Bidding Procedures Order, with the Auction to be held shortly thereafter.

41.     The Bidding Procedures Order and Notice of Auction and Sale

Hearing sets forth all the information a potential bidder and any other party in interest should require concerning the bidding process for the Property, including: the property of the estate that is being sold by the Trustee; the terms of the Sale; notice of the Bidding Procedures and information on how to obtain a copy of the Bidding Procedures; the Bid Deadline; the time, date, and location of the Auction; and the time, date, and location of the Sale Hearing. The Bidding Procedures Order and Notice of Auction and Sale Hearing will be served on all of the Notice Parties, all of the Debtor's known creditors, and all of the parties that inspected or otherwise expressed an interest to Cushman in acquiring the Property.

42. The Trustee respectfully submits that all of these notice procedures satisfy the requirements of Bankruptcy Rules 2002 and 6004 and Local Rules 6004-1 and 6004-2, and respectfully requests that the Court approve them.

**C.    The Stalking Horse Bid Protections Should Be Approved**

43. The Trustee seeks authority to provide customary "stalking horse" bid protections to the Stalking Horse Purchaser in the form of the Break-Up Fee and the Expense Reimbursement. The use of a bid protections, such as break-up fees, are a normal and in many cases necessary component of sales under the Bankruptcy Code. *See Official Comm. Of Subordinated Bondholders v. Integrated Res., Inc.* 147 B.R. 650, 659-60 (S.D.N.Y. 1992) ("Break-up fees are important tools to encourage bidding and to maximize the value of the debtor's assets . . . [due to the] duty to encourage bidding, break-up fees can be necessary to discharge [such] duties to maximize value.")

44. In the Third Circuit, bid protections such as break-up fees are subject to the general standard used for administrative expenses under section 503 of the Bankruptcy Code. *See In re Energy Future Holdings Corp.*, 904 F.3d 298, 313 (3d Cir. 2018); *Reliant Energy*, 594 F.3d at 206 (holding that the general standard used for all

20

administrative expenses applies to break-up fees).

45. The Stalking Horse Bid Protections are reasonable in relation to the size of the proposed Sale and the facts and uncertainties of this transaction. The proposed Break-Up Fee is approximately 2.3% of the Stalking Horse Purchase Price, which is below the standard break-up fee of approximately 3% approved in other Chapter 11 cases in this district. *See, e.g.*, *In re Cyxtera Technologies, Inc.*, No. 23-14853 (JKS) (Bankr. D.N.J. June 29, 2023) [Docket No. 180] (approving stalking horse bid protections, including a break-up fee and expense reimbursement, not to exceed three percent of the proposed purchase price in the aggregate); *In re Bed Bath & Beyond Inc.*, No. 23-13359 (VFP) (Bankr. D.N.J. April 25, 2023) [Docket No. 92] (same); *In re David's Bridal, LLC¸* No. 23-13131 (CMG) (Bankr. D.N.J. April 17, 2023) [Docket No. 72] (approving break-up fee of up to three percent of the proposed purchase price); *In re BlockFi Inc.*, No. 22-19361 (MBK) (Bankr. D.N.J. Jan. 30, 2023) [Docket No. 441] (same); *In re RTW Retailwinds, Inc.*, No. 20-18445 (JKS) (Bankr. D.N.J. Aug. 8, 2020) [Docket No. 192] (same).

46. The Trustee asserts that the allowance of the Stalking Horse Bid Protections here are in the best interests of the Estate and its creditors, as the Stalking Horse Sale Contract will establish a floor for bidding that may ultimately increase the net purchase price received by the Trustee in exchange for the Property.

## THE SALE ORDER SHOULD BE ENTERED

**A. The Sale of the Property Is a Sound Exercise of the Trustee's Business Judgment**

47. Bankruptcy Code section 363(b) governs transactions outside the ordinary course of business involving property of the Debtor's estate and provides, in relevant part, that, "[t]he trustee, after notice and a hearing, may use, sell, or lease, other

21

than in the ordinary course of business, property of the estate…."  11 U.S.C. § 363(b).

48.     A Chapter 11 trustee's sale or use of property of the estate outside the ordinary course of business should be approved by the Court if the Trustee can demonstrate a sound business justification for the proposed transaction.

49.     Courts have made clear that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling an estate's assets.  *See, e.g. In re Culp*, 550 B.R. 683, 697 (D. Del. 2015) ("'In determining whether to authorize use, sale or lease of property of the estate under Section 363, courts require the [debtor] to show that a sound business purpose justifies such actions.' If the [debtor's] decision evidences a sound business purpose, then the Bankruptcy Court should approve the sale.") (quoting *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999));  *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996);  *Schipper*, 933 F.2d at 515 (internal citations and quotations omitted) ("Under Section 363, the debtor in possession can sell property of the estate . . . if he has an 'articulated business justification'");  *see also In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (applying business judgment rule to bidding procedures and incentives and noting that "[c]ourts are loath to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence").

50.     The Property is the primary asset of the Debtor's Estate and is the sole source of funds to pay administrative fees and expenses of the Debtor's Chapter 11 case, as well as any allowed priority claims that may have to be paid to achieve confirmation of a Chapter 11 plan.  The Trustee has determined in his business judgment that selling the Property is in the best interests of the Estate because there is no other viable alternative to pay creditors and expenses of the Estate or to reorganize the Debtor.

51.     The services provided by the Trustee and his retained professionals have benefitted the holders of secured claims.  Consequently, those administrative fees and expenses, when allowed, and priority tax claims, should be paid from the net sale proceeds before payments are made to the holders of allowed secured claims pursuant to a Chapter 11 plan.  *See* 11 U.S.C. § 506(c) ("The trustee may recover ... reasonable, necessary costs and expenses ... to the extent of any benefit to the holder of such claim.");  *see also In re Pudgie's Dev. of NY, Inc.,* 239 B.R. 688, 697 (S.D.N.Y. 1999) (allowing debtor's counsel to surcharged attorney fees pursuant to section 506(c) of the Bankruptcy code against secured collateral to the extent that such services benefited the creditor);  *Matter of Stable Mews Assocs.,* 49 B.R. 395, 406 (Bankr. S.D.N.Y. 1985) (allowing Trustee's commission and counsel fee's to be surcharged against secured creditor collateral pursuant to section 506(c) of the Bankruptcy Code over objection of second mortgage holder).

52.     Here, the 506(c) Stipulation between the Trustee and Lender expressly enables the Trustee to recover these fees and expenses.

53.     Consequently, the Trustee has determined in his business judgment that selling the Property pursuant to the Stalking Horse Sale Contract, or such higher or better offer which may be received, is in the best interests of the Estate.

54.     Moreover, the Trustee submits that the Stalking Horse Purchase Price is fair and reasonable in light of the current real estate market, sale listings for comparable properties in the neighborhood where the Property is located, the extensive marketing of the Property that has occurred, and the offers received for the Property to date.  *See* Carrozzo Declaration.  Finally, any concern that the Trustee may be able to sell the Property on better overall terms than those provided for in the Stalking Horse Sale

Contract should be allayed by the fact that the Stalking Horse Sale Contract will be tested through the Bidding Procedures and at the Auction.

55. Based upon the foregoing, the Trustee respectfully submits that the Sale of the Property offers the greatest benefit to the Debtor's Estate and is a sound exercise of his business judgment.

**B.     The Property Should Be Sold Free and Clear of any Interests
         to the Extent Permitted by Section 363(f) of the Bankruptcy Code**

56. Pursuant to section 363(f) of the Bankruptcy Code, a Trustee may sell property under Bankruptcy Code section 363(b) free and clear of any interests if one of the following conditions is satisfied: (a) applicable nonbankruptcy law permits the sale of the property free and clear of such interest; (b) the entity holding the lien, claim or interest consents to the sale; (c) the interest is a lien and the price at which such property to be sold is greater than the aggregate value of all liens on the property; (d) the interest is in bona fide dispute; or (e) the entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of its interest. *See* 11 U.S.C. § 363(f); *see also See In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("[I]f any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens."); *In re Smart World Tech., LLC*, 423 F.3d 166, 169 n. 3 (2d Cir. 2005) ("Section 363 permits sales of assets free and clear of claims and interests. It thus allows Purchaser … to acquire assets [from a debtor] without any accompanying liabilities.").

57. The Trustee respectfully submits that cause exists to authorize the Sale of the Property pursuant to the Stalking Horse Sale Contract free and clear of all interests and Liens, as described herein and as provided in the Stalking Horse Sale Contract, because more than one of the conditions contained in Bankruptcy Code section 363(f) are satisfied, with such Liens to attach to the Sale proceeds.

     *i.*   *Section 363(f)(2) Is Satisfied: Holders of Liens*
         *and Interests Implied Consent to the Sale*

   58.   All parties in interest will be given sufficient opportunity to object to the relief requested by the Trustee, and any such entity that does not object to the Sale should be deemed to have consented. *See Futuresource LLC v. Reuters Ltd.*, 312 F.3d 281, 285-86 (7th Cir. 2002) ("It is true that the Bankruptcy Code limits the conditions under which an interest can be extinguished by a bankruptcy sale, but one of those conditions is the consent of the interest holder, and lack of objection (provided of course there is notice) counts as consent. It could not be otherwise; transaction costs would be prohibitive if everyone who *might* have an interest in the bankrupt's assets had to execute a formal consent before they could be sold.") (internal citations omitted); *Hargrave v. Township of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (failure to object to sale free and clear of liens, claims and encumbrances satisfies section 363(f)(2)); *Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (same). Moreover, the Lender, the senior secured party, has expressly consented to the proposed Sale.

     *ii.*  *Section 363(f)(5) Is Satisfied: Any Party Holding a Lien*
         *Can Be Compelled to Accept Monetary Satisfaction of Lein*

   59.   The Sale satisfies Bankruptcy Code section 363(f)(5) because (a) any entity holding a Lien against the Property could be compelled to accept a monetary satisfaction of its Lien, and (b) the Trustee proposes that any Lien against the Property will attach to the net proceeds of the Sale, subject to all claims and defenses that the estate may possess regarding such Liens, with the same priority, validity and extent they had on the Petition Date. As a result, the Trustee respectfully submits the Sale of the Property free and clear of all Liens satisfies section 363(f)(5) of the Bankruptcy Code.

60.     Based upon all of the foregoing, sufficient cause exists for the sale of the Property free and clear of the Liens, with the Liens to attach to the proceeds of the Sale.

**C.      The Purchaser Should Be Afforded All Protections
Under Section 363(m) as a Good Faith Purchaser**

61.     Section 363(m) of the Bankruptcy Code protects a good faith purchaser's interest in property purchased from the estate notwithstanding that the sale conducted under section 363(b) may later be reversed or modified on appeal. Specifically, section 363(m) states that:

> The reversal or modification on appeal of an authorization under [section 363(b)] … does not affect the validity of a sale … to an entity that purchased … such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale … were stayed pending appeal.

11 U.S.C. § 363(m); *see also Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 888 (S.D.N.Y. 1994) ("Section 363(m) … provides that good faith transfers of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal"); *In re Stein & Day, Inc.*, 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("pursuant to 11 U.S.C. § 363(m), good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay pending appeal").

62.     While the Bankruptcy Code does not define "good faith," courts have held that a purchaser shows its good faith through the integrity of its conduct during the course of the sale proceedings, finding that where there is a lack of such integrity, a good-faith finding may not be made. *See, e.g., In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)) ("Typically, the misconduct that would destroy a [buyer's] good faith status at a judicial sale involves fraud, collusion between the

[proposed buyer] and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."); *In the Matter of Andy Frain Services, Inc.*, 798 F.2d 1113 (7th Cir. 1986) (same); *In re Sasson Jeans, Inc.*, 90 B.R. 608, 610 (S.D.N.Y. 1988) (same).

63. Here, the Stalking Horse Purchaser and Trustee have satisfied the requirements of Section 363(m). The Stalking Horse Sale Contract is the result of arm's-length, good-faith negotiations between the Trustee and the Stalking Horse Purchaser, and each of them have been represented by their respective professionals. The Trustee submits that the Stalking Horse Purchaser or such other Successful Bidder is a "good-faith" purchaser within the meaning of section 363(m) of the Bankruptcy Code and should be entitled to its protection. Accordingly, the Trustee requests that the Court make a finding that the Stalking Horse Purchase is entitled to the protections of section 363(m) of the Bankruptcy Code.

64. To the extent that the Stalking Horse Purchaser is not the Successful Bidder at the Auction, the Trustee will seek a finding from the Court at the Sale Hearing that the Successful Bidder is a good faith purchaser entitled to the protections of section 363(m) of the Bankruptcy Code.

**D.    Subject to a Chapter 11 Plan Being Confirmed in This Case, the Sale Should Be Exempt from Transfer Taxes in Accordance with Bankruptcy Code Section 1146(a)**

65. The Trustee will file a Chapter 11 plan in the Debtor's case before the Sale closes, and, consequently, the Sale should be exempt from transfer taxes, if any, in accordance with Bankruptcy Code section 1146(a). Bankruptcy Code section 1146(a) provides, "[t]he issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 of this title, may not be taxed under any law imposing a stamp tax or similar tax." 11 U.S.C. § 1146(a).

66. Transfers of property qualify for exemption under Bankruptcy Code section 1146(a) where (a) the sale's approval occurred pre-confirmation but the sale closing occurred post-confirmation, and (b) the transfer of Property is necessary to the consummation of a plan. *In re NEW 118th, Inc.*, 398 B.R. 791, 797-98. (Bankr. S.D.N.Y. 2009). Here, both criteria are met: the Trustee seeks approval of the Sale pre-confirmation, but the Sale may close post-confirmation.

67. Moreover, any plan filed and confirmed in the Debtor's Chapter 11 case will expressly contemplate the transfer of the Property under Bankruptcy Code 363(b) to make distributions to creditors. Indeed, given the necessity of the Sale to the feasibility of any plan filed in the Debtor's case, it is unlikely that a plan could become effective absent a successful Sale. Thus, the Sale is clearly necessary to the consummation of a plan in the Debtor's Chapter 11 case.

### THE BROKER'S COMMISSIONS SHOULD BE ALLOWED AND PAID

68. Pursuant to the Cushman Retention Order, Cushman is entitled to a commission (the "Broker Commission") equal to two percent (2%) of the ultimate purchase price for the sale of the Property. The Cushman Retention Order does not require a separate application for an order fixing and allowing payment of the Broker Commission.

69. Here, Cushman is entitled to a commission of $260,000, representing two percent (2%) of the Stalking Horse Purchase Price, in the event that the Property is sold to the Stalking Horse Purchaser for the Stalking Horse Purchase Price.[6]

### WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)

70. The Trustee respectfully request that the Court waive the stay

---

[6] The amount of the Broker Commission may increase if the total sale price for the Property increases as a result of the Auction.

imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). In light of the notice of the Sale that was provided to parties in interest, and the fact that Liens against the Property will attach to the proceeds (with the exception of Permitted Liens and interests governed by section 363(e)), yet continue to accrue interest, the Trustee submits that no party will be prejudiced by a waiver of the stay imposed by Bankruptcy Rule 6004(h) and that such waiver will help to limit the accrual of interest charges.

## NO PRIOR REQUEST

71. The Debtor previously filed a Motion to *Motion to Sell Property Free and Clear of Liens under Section 363(f)* regarding the Property [Docket No. 123]. However, the Debtor's motion was withdrawn following appointment of the Trustee [Docket No. 169]. There have otherwise not been any prior applications for the relief requested herein to this or any other Court.

*(concludes on following page)*

## CONCLUSION

**WHEREFORE** the Trustee respectfully requests entry of the orders authorizing the relief requested herein and such other and further relief as is just and proper.

Dated: New York, New York
March 23, 2026

> ALBERT TOGUT, not individually but solely
> in his capacity as Chapter 11 Trustee,
> By His Attorneys,
> TOGUT, SEGAL & SEGAL LLP
> By:
>
> */s/ Frank A. Oswald*
> FRANK A. OSWALD
> A Member of the Firm
> 550 Broad Street, Suite 1508
> Newark, NJ 07102
> (212) 594-5000

**Exhibit A**

**<u>Stalking Horse Sale Contract</u>**

CONTRACT made as of March 17, 2026 by and between **ALBERT TOGUT, NOT INDIVIDUALLY, BUT SOLELY IN HIS CAPACITY AS CHAPTER 11 TRUSTEE ("Seller") OF JTRE 14 VESEY STREET LLC ("Debtor")** and **14 VESEY LLC ("Purchaser")**.

Seller and Purchaser hereby covenant and agree, subject to Bankruptcy Court approval as expressly provided herein, as follows:

**Section 1.     Sale of Premises and Acceptable Title**

§1.01.  Seller shall sell to Purchaser, and Purchaser shall purchase from Seller, at the price and upon the terms and conditions set forth in this Contract: (a) the parcels of land more particularly described in Schedule A attached hereto ("Land"); (b) all buildings and improvements situated on the Land (collectively, "Building"); (c) all right, title and interest of Seller and/or Debtor, if any, in and to the land lying in the bed of any street or highway in front of or adjoining the Land to the center line thereof and to any unpaid award for any taking by condemnation or any damage to the Land by reason of a change of grade of any street or highway; (d) the appurtenances and all the estate and rights of Seller and/or Debtor in and to the Land and Building; (e) development rights appurtenant to the Land or any portion thereof; and (f) all right, title and interest of Seller and/or Debtor, if any, in and to the fixtures, equipment and other personal property attached or appurtenant to the Building (collectively, the "**Premises**").  The Premises are located in the County, City and State of New York and known as **14 Vesey Street, New York, New York 10007 and as Block 88, Lot 2**, on the tax map of New York County.

§1.02.  Seller shall convey and Purchaser shall accept fee simple title to the Premises in accordance with the terms of this Contract, subject only to the conditions set forth in this Contract, including (a) the matters set forth in Schedule B attached hereto (collectively, "Permitted Exceptions") and (b) such other matters as the title insurer specified in Schedule D attached hereto shall be willing, without special premium, to omit as exceptions to coverage or to except with insurance against collection out of or enforcement against the Premises.

**Section 2.     Purchase Price, Acceptable Funds, Existing Mortgages, Purchase Money Mortgage, Escrow of Deposit and Foreign Persons**

§2.01.  The purchase price ("Purchase Price") to be paid by Purchaser to Seller for the Premises as provided in Schedule C attached hereto is ~~Twelve Million Five Hundred Thousand and 00/100 Dollars ($12,500,000.00).~~ Thirteen Million and 00/100 Dollars ($13,000,000.00).

§2.02.  All monies payable under this Contract, unless otherwise specified in this Contract, shall be paid at Closing by wire transfer of immediately available Federal funds, payable to the account of Seller or as directed by Seller, except that uncertified checks of Purchaser payable to the order of Seller up to the amount of Five Thousand ($5,000.00) Dollars shall be acceptable for sums payable to Seller at the Closing.

§2.03.  (a)     The sum paid under paragraphs (a) and (b) of Schedule C and any other sums paid on account of the Purchase Price prior to the Closing (collectively, the "Deposit") shall

Initial

*a†a†*

3968646.5

be paid to Seller's Attorney (as set forth on Schedule D) ("Escrowee") by wire transfer of immediately available federal funds. Escrowee shall hold the proceeds thereof in escrow in an interest-bearing special bank account (or as otherwise agreed in writing by Seller, Purchaser and Escrowee) until the Closing or sooner termination of this Contract and shall pay over or apply such proceeds in accordance with the terms of this section. Any interest that is earned thereon shall be paid to the same party entitled to receive the Deposit or as directed by such party, and the party receiving such interest shall pay any income taxes thereon. The tax identification numbers of the parties are either set forth in Schedule D or shall be furnished to Escrowee upon request. At the Closing, such proceeds and the interest thereon, if any, shall be paid by Escrowee to Seller or as directed by Seller. If for any reason the Closing does not occur and either party makes a written demand upon Escrowee for payment of such amount, Escrowee shall give written notice to the other party of such demand. If Escrowee does not receive a written objection from the other party to the proposed payment within five (5) business days after the giving of such notice, Escrowee is hereby authorized to make such payment. If Escrowee does receive such written objection within such five (5) business day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by written instructions from the parties to this Contract or a final order of the United States Bankruptcy Court for the District of New Jersey ("**Bankruptcy Court**") entered in that certain chapter 11 jointly administered bankruptcy proceeding pending under lead Case No: 24-12087-MBK. However, Escrowee shall have the right at any time to deposit the escrowed proceeds and interest thereon, if any, with the Bankruptcy Court. Escrowee shall give written notice of such deposit to Seller and Purchaser. Upon such deposit Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b)     The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience, that Escrowee shall not be deemed to be the agent of either of the parties, and that Escrowee shall not be liable to either of the parties for any act or omission on its part (including, without limitation, any loss suffered due to any act, omission, loss or failure of the financial institution in which the Deposit is deposited) unless taken or suffered in bad faith, in willful disregard of this Contract or involving gross negligence. Seller and Purchaser shall jointly and severally indemnify and hold Escrowee harmless from and against all costs, claims and expenses, including reasonable attorneys' fees, incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith, in willful disregard of this Contract or involving gross negligence on the part of Escrowee.

(c)     Escrowee has acknowledged agreement to these provisions by signing in the place indicated on the signature page of this Contract.

(d)     Escrowee may act or refrain from acting in respect of any matter referred to in this §2.03 in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from action upon the advice of such counsel.

Initial

*a†a†*

3968646.5

**Section 3.     The Closing**

§3.01.  Except as otherwise provided in this Contract, the closing of title pursuant to this Contract ("Closing") shall take place at the time and place specified in Schedule D attached hereto. For purposes of this Contract, the "Closing Date" shall mean the actual date of the Closing.

**Section 4.     Representations and Warranties of Seller**

Seller represents and warrants to Purchaser as follows:

§4.01.  Debtor is the sole owner of the Premises.

§4.02.  Seller has the sole authority to act in accordance with the Contract and to convey title on behalf of the Debtor and the Estate, subject to Bankruptcy Court approval.

§4.03.  As of the date of Closing, there shall be no written leases, tenancies, or occupancies affecting any portion of the Premises.

§4.04.  Seller is not a "foreign person" as defined in the Internal Revenue Code (the "Code").

§4.05.  Seller has not entered into a management agreement or any other material contracts or agreements affecting the Premises which will survive Closing and be binding upon Purchaser.

§4.06.  Seller has no employees.

**Section 5.     Acknowledgments, Representations and Warranties of Purchaser**

Purchaser acknowledges that:

§5.01.  Purchaser has inspected the Premises, is fully familiar with the physical condition and state of repair thereof, and, subject to the provisions of §8.01 and §9.03, shall accept the Premises "as is", "where is" and in their present condition, without any representations or warranties of any kind whatsoever except as may be expressly set forth in this Contract, subject to use, wear, tear and natural deterioration between now and the Closing Date, without any reduction in the Purchase Price for any change in such condition by reason thereof subsequent to the date of this Contract.

§5.02.  Before entering into this Contract, Purchaser has made such examination of the Premises (including, without limitation, any inspection for the presence of lead-based paint and/or lead-based paint hazards, the presence of any materials containing asbestos, and any other hazardous materials), the operation, income and expenses thereof and all other matters affecting or relating to this transaction as Purchaser deemed necessary, or has waived Purchaser's right to do so.  In entering into this Contract, Purchaser has not been induced by and has not relied upon any representations, warranties or statements, whether express or implied, made by Seller or any agent, employee or other representative of Seller or by any broker or any other person representing

Initial



3968646.5

or purporting to represent Seller, which are not expressly set forth in this Contract, whether or not any such representations, warranties or statements were made in writing or orally.

§5.03. Upon signing the Contract, Purchaser shall have inspected the Premises, and Purchaser shall be deemed to have acknowledged that it has made its own analysis and evaluation of the income potential and profits and expenses of the Premises as well as the physical condition, layout, footage, income, expenses and operation of the Premises, and that, except as otherwise expressly set forth herein, Seller has not made and does not make any representations as to any of the foregoing or any other matter or thing affecting or related to the Premises or to this Agreement and that neither party is relying upon any statement or representation made by the other not embodied in this Agreement. Except as otherwise set forth herein, Purchaser hereby expressly acknowledges that it is purchasing the Premises and the fixtures and equipment thereon, if any, in its current "AS IS, WHERE IS, AND WITH ALL FAULTS" condition, including, without limitation, the state of, or any conditions in connection with and subject to the provisions of §8.01 and §9.02, the following: the condition of the surface or subsurface of the Premises; zoning or other governmental conditions or restrictions applicable to the Premises; utility availability or capacities; compliance with Environmental Laws (as defined below) or any other existing laws or governmental regulations; the condition of the Building; the past or present absence or presence of any Hazardous Substances (as defined below); merchantability or fitness of the Premises or any part thereof for a particular purpose; or any other aspect of the Premises whether or not same may materially affect the value or the use thereof. For purposes of this Agreement, the term (i) "Hazardous Substances" shall mean and refer to the following: pollutants, dangerous substances, toxic substances, hazardous wastes, hazardous materials or hazardous substances as defined in or pursuant to any Environmental Laws including without limitation, petroleum products and fractions thereof, asbestos, asbestos containing materials, urea formaldehyde, polychlorinated biphenyls, nuclear fuel or materials, radioactive materials and all other dangerous, toxic or hazardous pollutants, contaminants, chemicals, materials, substances and wastes listed or identified in, or regulated by, any Environmental Law, and (ii) "Environmental Laws" shall mean and refer to the following: the Resource Conservation and Recovery Act (42 U.S.C. §6901, et seq.) as amended, the Comprehensive Environmental Response, Compensation and Liability Act (42 U.S.C. §9601, et seq.) as amended, or any other related Legal Requirement, and all other federal, state, county, municipal, local and other statutes, laws, ordinances and regulations which relate to or deal with human health or the environment, all as may be amended from time to time.

§5.03.01. No Effect on Purchaser's Obligations. Purchaser further acknowledges that its covenants, agreements, and obligations under this Agreement are not conditioned upon and shall not be excused or modified by any occurrence, condition or event except as may be expressly set forth in this Agreement.

§5.03.02. Subsequent Representations. No oral or written communication made by any employee, agent or representative of Seller nor the furnishing of any material from files maintained by Seller or its managing agent shall constitute a representation or a warranty under this Agreement unless the same is contained in this Agreement or in a written instrument and duly executed by Seller.


Initial

§5.03.03.　　Limited Disclosure.  Purchaser shall, and shall direct its directors, officers and other personnel, and its agents, employees and representatives, to hold in strict confidence and not disclose to any other party without the prior written consent of Seller, any of the confidential information regarding the Premises delivered, provided or furnished to Purchaser or any of its agents, representatives or employees by Seller, Broker, or their agents. Notwithstanding anything to the contrary hereinabove set forth, Purchaser may disclose such information only: (i) on a "need-to-know" basis to its employees, principals or professional firms serving it in connection with this transaction, or to any potential lenders, investors or consultants, but Purchaser shall instruct such parties to hold all such information in strict confidence, and not to disclose such information to any other party without the prior written consent of Seller; (ii) to any other party, subject to Seller's consent, which consent shall not be unreasonably withheld or delayed; (iii) to any governmental agency if such agency requires such disclosure in order for Purchaser to comply with applicable laws or regulations or as part of customary violation searches and a Phase I environmental site assessment; (iv) if required by law; or (v) if such information is or becomes publicly available or is independently developed by Purchaser without reliance upon the confidential information provided by Seller.  The foregoing shall not be deemed to prohibit the issuance after Closing of any press release or other public statement concerning the transaction described in this Contract provided none of the pricing or other material business terms are so disseminated.

§5.03.04.　　Return of Information.  In the event the Closing does not occur for any reason and this Agreement is terminated, Purchaser shall promptly return to Seller, or if not practicable, destroy (if legally permissible) all copies of all such information without retaining any copy thereof, except such as must be retained by any professionals to whom such information was disclosed in accordance with this Article 8 in order to comply with their professional obligations.

§5.03.05.　　Survival.  The provisions of this Article 5 shall terminate at the Closing provided, however, that if the Closing does not occur, the provisions of this Article 5 shall survive the termination of this Agreement.

§5.03.06.　　Inspection.  Purchaser, its agents, designees, contractors, and other agents ("Purchaser's Representatives") shall be entitled to inspect and review the Premises and all matters relating to the Premises, including, without limitation, the physical condition of the Premises, surveys and title examinations, and to conduct any non-invasive environmental, soils, seismic, hydro geologic, geologic, air quality testing, infrared testing, and engineering tests and studies with respect to the Premises, on such dates and at such times as are reasonably acceptable to Seller.  Purchaser and Purchaser's Representatives shall not be permitted to conduct borings of the Premises or drilling in or on the Premises, or any other invasive testing, in connection with the preparation of an environmental audit or in connection with any other inspection of the Premises, without the prior written consent of Seller in Seller's sole discretion (and, if such consent is given, Purchaser, at its sole cost and expense, shall promptly, but in no event more than fifteen (15) days after such damage or alteration occurs, cause any portion of the Property damaged or altered by or in connection with such boring or drilling to be repaired and/or restored to substantially the condition it was in prior to the inspection).  Prior to conducting any physical inspection or testing at the Premises, including without limitation, boring, drilling and sampling of soil, Purchaser shall cause the applicable Purchaser Representative to obtain, and during the period of such inspection



Initial

3968646.5

Docusign Envelope ID: 85107F64-FBCE-4910-9553-4718F7A319A4

or testing shall maintain, at its or Purchaser's expense, commercial general liability insurance, including a contractual liability endorsement, and personal injury liability coverage, with Seller (and Seller's additional designees, if any) as additional insured party(ies), from an insurer reasonably acceptable to Seller, which insurance policies must have limits for bodily injury and death of not less than Two Million Dollars ($2,000,000.00) for any one occurrence and not less than Two Million Dollars ($2,000,000.00) for property damage liability for any one occurrence. Prior to making any entry upon the Premises, Purchaser shall furnish to Seller a certificate of insurance evidencing the foregoing coverages, satisfactory to Seller in all respects. Purchaser hereby agrees to indemnify and hold Seller harmless from and against any and all losses, costs, damages, liens, claims, liabilities or expenses (including, but not limited to, reasonable attorneys' fees, court costs and disbursements) incurred by Seller arising from or by reason of: (i) a breach by Purchaser's and/or Purchaser's Representatives' of the covenants or obligations of Purchaser under this §5.03.06, or (ii) any negligence or willful misconduct by Purchaser and/or Purchaser's Representatives during its access to, or inspection of, the Premises, or any tests, inspections or any other review conducted by or on behalf of Purchaser.  The provisions of this §5.03.06 shall survive the Closing or any termination of this Agreement.

Purchaser represents and warrants to Seller that:

§5.04.  The funds comprising the Purchase Price to be delivered to Seller in accordance with this Contract are not derived from any illegal activity.

§5.05.  Neither Purchaser, nor any of Purchaser's officers, directors, shareholders, partners, members or associates, nor any other direct or indirect holder of any equity interest in Purchaser, is an entity or person: (i) that is listed in the Annex to, or is otherwise subject to the provisions of United States Presidential Executive Order 13224 issued on September 24, 2001 ("Executive Order"); (ii) whose name appears on the U.S. Department of the Treasury, Office of Foreign Assets Control's ("OFAC") most current list of "Specifically Designated National and Blocked Persons" (which list may be published from time to time in various mediums including, but not limited to, the OFAC website, www.treas.gov/ofac/; (iii) who commits, threatens to commit or supports "terrorism", as that term is defined in the Executive Order; or (iv) who is otherwise affiliated with any entity or person listed above (any and all parties or persons described in clauses (i) through (iv) above are herein referred to as a "Prohibited Person").  Purchaser covenants and agrees to use commercially reasonable efforts to ensure that neither Purchaser, nor any of its respective officers, directors, shareholders, partners, members or associates, and no other direct or indirect holder of any equity interest in Purchaser will: (a) conduct any business, or engage in any transaction or dealing, with any Prohibited Person, including, but not limited to, the making or receiving of any contribution of funds, goods, or services, to or for the benefit of a Prohibited Person; or (b) engage in or conspire to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in the Executive Order or the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001.  On request by Seller from time to time, Purchaser further covenants and agrees promptly to deliver to Seller any such certification or other evidence as may be requested by Seller in Seller's sole and absolute discretion, confirming that no violation of this §5.03 shall have occurred.


Initial

3968646.5

**Section 6.      Seller's Obligations as to Leases**

§6.01.  Between the date of this Contract and the Closing, Seller shall not enter into any new lease or other tenancy for any portion of the Premises.

**Section 7.      Responsibility for Violations**

§7.01.  Seller shall have no obligation or responsibility to cure or comply with any violations of law or governmental or quasi-governmental ordinances, orders or requirements by any governmental or quasi-governmental department, agency or bureau having jurisdiction which have been or are issued or noticed affecting the Premises (the **"Violations"**) and any and all liens which have attached to the Premises pursuant thereto on, before or after the date hereof. Purchaser agrees to take title to the Premises subject to the Violations and the existence of any Violations shall neither relieve Purchaser of Purchaser's obligations hereunder nor entitle Purchaser to any abatement or reduction of or credit against the Purchase Price.

**Section 8.      Destruction, Damage or Condemnation**

§8.01.  The provisions of Section 5-1311 of the General Obligations Law shall apply to the sale and purchase provided for in this Contract.

**Section 9.      Covenants of Seller**

Seller covenants that between the date of this Contract and the Closing:

§9.01.  No fixtures, equipment or personal property included in this sale shall be removed from the Premises by Seller unless the same are replaced with similar items of at least equal quality prior to the Closing.

§9.02.  Seller shall operate, maintain and repair the Premises from the date hereof until the Closing Date in substantially the same manner in which Seller has acted prior to the date hereof.

§9.03.  Maintain in full force and effect the insurance policies currently in effect with respect to the Premises, or policies providing similar coverage.

**Section 10.      Seller's Closing Obligations**

At the Closing, Seller shall deliver the following to Purchaser:

§10.01.        A copy of the Approval Order (as defined herein)

§10.02.        A statutory form of bargain and sale deed without covenants against grantor's acts, containing the covenant required by Section 13 of the Lien Law, and properly executed in proper form for recording so as to convey the title required by this Contract.


**Initial**

3968646.5

§10.03. To the extent they are then in Seller's possession and not posted at the Premises, certificates, licenses, permits, plans, authorizations and approvals issued for or with respect to the Premises by governmental and quasi-governmental authorities having jurisdiction.

§10.04. Certification that Debtor is not a foreign person pursuant to IRC Section 1445.

§10.05. (a) Checks to the order of the appropriate officers in payment of all applicable real property transfer taxes and copies of any required tax returns therefor executed by Seller, which checks shall be certified or official bank checks if required by the taxing authority, unless Seller elects to have Purchaser pay any of such taxes and credit Purchaser with the amount thereof, and (b) a certification of non-foreign status, in form required by the Code Withholding Section, signed under penalty of perjury. Seller understands that such certification will be retained by Purchaser and will be made available to the Internal Revenue Service on request.

§10.06. Any other instruments and documents which are true and accurate and reasonably necessary to effect the transaction contemplated herein.

While the parties agree that the transfer of the Premises to Purchaser shall be deemed a transfer pursuant to § 1146(a) of the United States Bankruptcy Code (the "Bankruptcy Code") which should not be taxed under any law imposing a stamp, transfer, recording or surrender tax, in the event such a fee or tax is required to be paid, it shall be paid as set forth in §10.05 and §11.02.

## Section 11.    Purchaser's Closing Obligations

At the Closing, Purchaser shall:

§11.01. Deliver to Seller, or as directed by Seller, by wire transfer of immediately available federal funds, the portion of the Purchase Price payable at the Closing, as adjusted for apportionments under Section 12 and as otherwise set forth herein.

§11.02. Cause the deed to be recorded, duly complete all required real property transfer tax returns and cause all such returns and checks in payment of such taxes to be delivered to the appropriate officers promptly after the Closing.

§11.03. Deliver any other documents required by this Contract to be delivered by Purchaser.

## Section 12.    Apportionments

§12.01. The following apportionments shall be made between the parties at the Closing as of the close of business on the day prior to the Closing Date:

(a) Real estate taxes, water charges and sewer rents, if any, on the basis of the fiscal period for which assessed, except that if there is a water meter on the Premises,

Initial



3968646.5

apportionment at the Closing shall be based on the last available reading, subject to adjustment after the Closing when the next reading is available.

(b)     Value of fuel stored on the Premises, at the price then charged by Seller's supplier, including any taxes; and

(c)     Any other items listed in this Contract or in Schedule D.

If the Closing shall occur before a new tax rate is fixed, the apportionment of taxes at the Closing shall be upon the basis of the old tax rate for the preceding period applied to latest assessed valuation. Promptly after the new tax rate is fixed, the apportionment of taxes shall be recomputed. Any discrepancy resulting from such recomputation and any errors or omissions in computing apportionments at Closing shall be promptly corrected, which obligations shall survive the Closing.

§12.02.     Real estate tax refunds and credits received after the Closing Date which are attributable to the fiscal tax year during which the Closing Date occurs shall be apportioned between Seller and Purchaser after deducting any expenses of collection thereof, which obligation shall survive the Closing.

§12.03.     Errors or omissions in adjustments shall be readjusted post-closing. This paragraph shall survive Closing of title for a period of ninety (90) days.

§12.04.     Any refunds or credits resulting from all pending tax certiorari or tax protest proceedings affecting the Premises (collectively, "**Tax Proceedings**") attributable to the period prior to the Closing Date shall belong to Seller, and any refunds or credits attributable to the period on or after the Closing Date shall belong to Purchaser. Seller shall reasonably cooperate with Purchaser in connection with any pending or future Tax Proceedings, including executing any documents reasonably necessary to prosecute such proceedings, provided Seller shall not be required to incur any out-of-pocket costs in connection therewith (unless reimbursed by Purchaser).

**Section 13.     Objections to Title; Failure of Seller or Purchaser to Perform**

§13.01.     Purchaser shall promptly order an examination of title and shall cause its title company to forward a copy of the title report to Seller's attorney. Seller shall be entitled to a reasonable adjournment or adjournments of the Closing for up to sixty (60) days in the aggregate to remove any defects in or objections to title noted in such title report and any other defects or objections which may be disclosed on or prior to the Closing Date.

§13.02.     If Seller shall be unable to convey title to the Premises at the Closing in accordance with the provisions of this Contract or if Purchaser shall have any other grounds under this Contract for refusing to consummate the purchase provided for herein, Purchaser, nevertheless, may elect to accept such title as Seller may be able to convey, but without any other credit or liability on the part of Seller. If Purchaser shall not so elect, Purchaser may terminate this Contract and the sole liability of Seller shall be to refund the Deposit to Purchaser. Upon such


Initial

3968646.5

refund and reimbursement, this Contract shall be null and void and the parties hereto shall be relieved of all further obligations and liability other than any arising under Section 14. Seller shall not be required to bring any action or proceeding or to incur any expense to cure any title defect or to enable Seller otherwise to comply with the provisions of this Contract.

§13.03. Any unpaid taxes, assessments, water charges and sewer rents, together with the interest and penalties thereon to the extent they are not disputed by Seller, may be paid out of the proceeds of the monies payable at the Closing or placed in escrow with the title insurance company to hold pending the Bankruptcy Court's ruling as to any disputed items. In such case, such items shall not be considered objections to title.

§13.04. If Purchaser shall default in the performance of its obligation under this Contract to purchase the Premises, the sole remedy of Seller shall be to retain the Deposit as liquidated damages for all loss, damage and expense suffered by Seller, including without limitation the loss of its bargain. If Seller shall default in the performance of its obligations under this Contract, the sole and exclusive remedies of Purchaser shall be to either (i) seek specific performance of Seller's obligations pursuant to the Approval Order, which action must be brought within thirty (30) days following Seller's default, or, in the alternative (ii) notify Seller that Purchaser elects to terminate this Contract and obtain a return of the Deposit.

## Section 14. Broker

§14.01. Purchaser represents and warrants that the broker specified in Schedule D is the only broker with whom they have dealt in connection with this Contract and that Purchaser knows of no other broker who has claimed or may have the right to claim a commission in connection with this transaction. The commission shall be paid pursuant to separate agreement by the party specified in Schedule D and pursuant to the Approval Order. Purchaser shall indemnify and defend Seller against any costs, claims or expenses, including reasonable attorneys' fees and disbursements, arising out of any breach by Purchaser of any representations, warranties or agreements contained in this paragraph. The representations and obligations under this paragraph shall survive the Closing or, if the Closing does not occur, the termination of this Contract.

## Section 15. Notices

§15.01. All notices under this Contract shall be in writing and shall be delivered personally or shall be sent by prepaid overnight courier, addressed as set forth in Schedule D, or addressed as Seller or Purchaser shall otherwise have given notice as herein provided; notices may be given by email or fax as long as such notices are also given via personal delivery or prepaid overnight courier as aforesaid. The attorneys for the parties may give any extension of time or other notice on behalf of their respective clients. Attorneys may give and receive notices on behalf of Seller and Purchaser.



Initial

3968646.5

**Section 16.     Limitations on Survival of Representations, Warranties, Covenants and other Obligations**

§16.01.          Except as otherwise provided in this Contract, no representations, warranties, covenants or other obligations of Seller set forth in this Contract shall survive the Closing, and no action based thereon shall be commenced after the Closing.

§16.02.          The delivery of the Approval Order and the deed by Seller, and the acceptance thereof by Purchaser, shall be deemed the full performance and discharge of every obligation on the part of Seller to be performed hereunder, except those obligations of Seller which are expressly stated in this Contract to survive the Closing.

**Section 17.     Miscellaneous Provisions**

§17.01.          Purchaser shall not assign this Contract or its rights hereunder, nor shall any interest in Purchaser be assigned or transferred, without the prior written consent of Seller, to be granted or withheld in Seller's sole discretion, and further provided that Purchaser and any such assignee shall be jointly and severally liable for Purchaser's obligations hereunder and that all representations and warranties of Purchaser hereunder shall apply to Purchaser and to such assignee.  Notwithstanding anything contained herein to the contrary, Purchaser shall have the right to assign this Contract to an entity controlled by or under common control with Purchaser. No permitted assignment of Purchaser's rights under this Contract shall be effective against Seller unless and until an executed counterpart of the instrument of assignment shall have been delivered to Seller and Seller shall have been furnished with the name and address of the assignee not less than ten (10) business days prior to the Closing Date.  The term "Purchaser" shall be deemed to include the assignee under any such permitted and effective assignment.

§17.02.          This Contract embodies and constitutes the entire understanding between the parties with respect to the transaction contemplated herein, and all prior agreements, understandings, representations and statements, oral or written, are merged into this Contract. Neither this Contract nor any provision hereof may be waived, modified, amended, discharged or terminated except by an instrument signed by the party against whom the enforcement of such waiver, modification, amendment, discharge or termination is sought, and then only to the extent set forth in such instrument.

§17.03.          This Contract shall be governed by, and construed in accordance with, the law of the State of New York.  The venue for any dispute arising from this Contract shall be the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") and the Bankruptcy Court shall have exclusive jurisdiction to interpret and enforce this Contract.

§17.04.          This Contract may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, and a facsimile, "pdf" and/or electronic copy of a signed original counterpart of this Contract shall be deemed sufficient to bind the parties, and shall be deemed an original for all purposes.


Initial

3968646.5

§17.05.    The captions in this Contract are inserted for convenience of reference only and in no way define, describe or limit the scope or intent of this Contract or any of the provisions hereof.

§17.06.    This Contract shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs or successors and permitted assigns.

§17.07.    This Contract shall not be binding or effective upon Seller in full until (i) this Contract is properly executed and delivered by Seller and Purchaser and (ii) the Approval Order is obtained

§17.08.    As used in this Contract, the masculine shall include the feminine and neuter, the singular shall include the plural and the plural shall include the singular, as the context may require.

§17.09    Purchaser shall have the right to effectuate a tax-deferred exchange pursuant to Code Section 1031.  In connection therewith, Seller shall cooperate with the reasonable requests of Purchaser to effectuate the same, provided the same do not delay the Closing or otherwise subject Seller to any liability, delay or other cost.

## Section 18.    Bankruptcy Court Approval

§18.1.    Purchaser acknowledges that this Contract and the transactions contemplated hereby are subject to the approval of the Bankruptcy Court and the entry by the Bankruptcy Court of an order confirming a Chapter 11 plan or otherwise approving the transaction contained in the Contract and affording Purchaser Section 363 protections as a good faith purchaser (the "Approval Order"), and Seller's and Purchaser's obligation to consummate the transaction contemplated hereunder is subject to entry of the Approval Order.  Notwithstanding any other provision of this Contract, this Contract shall not be binding or effective in full or in part until the Approval Order is obtained.

§18.2.    Following the date of this Contract, Seller, at its own sole cost and expense, will file with the Bankruptcy Court a motion (the "Approval Motion") seeking entry of an order (the "Bidding Procedures Order"), which shall establish the stalking horse bid, approve the form of notice and fix the dates for an auction for the Premises and schedule a subsequent hearing for entry of the Approval Order.  Seller will provide copies of the proposed Approval Motion and Bidding Procedures Order to Purchaser for review prior to submitting them to the Bankruptcy Court, and Purchaser shall cooperate with Seller in the prosecution of the Approval Motion.  The Bidding Procedures Order shall provide the following provisions:  (a) an initial overbid of not less than $400,000 for an alternative bid to qualify as a qualified bid, (b) minimum overbid increments of not less than $100,000 at auction, (c) the right of Purchaser to participate fully in the auction process, and (d) clear deadlines for submission of qualified overbids.  In the event Purchaser is designated as the stalking horse bidder and is the successful bidder at the auction, Purchaser shall deposit an additional Six Hundred Thousand Dollars ($600,000) (the "Second Deposit") with the Escrowee within two (2) business days immediately following the entry of the Approval Order.



**Initial**

3968646.5

The Approval Motion shall be filed within seven (7) business days following the date that this Contract is signed by each of Seller and Purchaser.

§18.3        The Approval Order shall, among other things, contain findings of fact and conclusions of law establishing, among other things, that:  (a) the sale of all real and personal property hereunder to the Purchaser shall be free and clear of all liens, encumbrances, judgments, and other interests, and free and clear of the interest of any co-owner, pursuant to Sections 363(f) and 363(h) of the Bankruptcy Code, 11 U.S.C. § 363(f), 363(h); (b) to the extent that the Property includes any executory contracts (within the meaning of Section 365 of the Bankruptcy Code) or any unexpired leases (including any sublease, license or occupancy agreement, the "**Leases**") such Leases shall be rejected and extinguished; and (c) the Purchaser is determined to be a good faith purchaser within the meaning of and entitled to the protections of Section 363(m) of the Bankruptcy Code.

§18.4.        Purchaser acknowledges that Seller may not act in his personal capacity but only as the Court-appointed trustee in bankruptcy and as such is obligated to provide notice to all parties in interest, including the public, of the proposed sale of the Premises.  The Bankruptcy Code and the Bankruptcy Court require an opportunity for interested parties to make higher or better offers for the purchase of the Premises, and consequently, until the entry of the Approval Order, Seller is permitted to cause his representatives to solicit additional interest in the Premises and respond to any inquiries, proposals or offers by any person (in addition to Purchaser and his agents and representatives) in connection with the sale of the Premises.  In addition, Seller is obligated to respond to any inquiries or offers to purchase the Premises and perform any and all other acts related thereto which are required by order(s) of the Bankruptcy Court, under the Bankruptcy Code or other applicable law, including, without limitation, supplying information relating to the Premises to prospective purchasers.  The Seller will ask the Bankruptcy Court to approve the Bidding Procedures Order which will provide a sale and marketing process in order to ensure that Purchaser's bid is the highest and best bid for the Premises.   Purchaser's bid as set forth in this Agreement will be deemed a qualified bid under the Bidding Procedures Order.  If at least one other qualified bid is received by the Seller in accordance with the Bidding Procedures Order and an auction is held, Purchaser shall be entitled to participate in such auction in accordance with the Bidding Procedures Order.  In such event, the Seller will determine the winning bid at the conclusion of the auction in accordance with the Bidding Procedures Order.

§18.5.        Provided that Purchaser is not in material default hereunder, if for any reason whatsoever the Bankruptcy Court shall enter an order approving the sale of the Premises pursuant to the Bidding Procedures Order to another buyer (an "**Alternative Buyer**") that does not contemplate consummation of the sale of the Premises to Purchaser pursuant to this Contract, then in such event, and subject to the direction and order of the Bankruptcy Court, Seller shall direct Escrowee to return the Deposit within five (5) business days after the Court enters an order directing the sale of the Premises to the Alternative Buyer; subject to the terms of the Bidding Procedures Order, which may require alternative procedures regarding the Deposit in the case where this Contract is the second highest bid.

§18.6.        In the event that the Premises is sold to an Alternative Buyer, Purchaser shall be entitled to the payment of a break-up fee equal to ~~Two Hundred Fifty Thousand Dollars~~ **Three Hundred Thousand Dollars**

Initial

*atat*

3968646.5

**($300,000.00)**
~~($250,000.00)~~ (the "**Break-up Fee**"), as compensation for having entered into this Contract, payable by Seller only from the proceeds of the sale of the Premises to the Alternative Buyer. The Break-up Fee shall be payable to Purchaser only if Purchaser is not the successful bidder and the Premises is sold to an Alternative Buyer; for example, but not by way of limitation, Purchaser shall not be entitled to a Break-up Fee if the Approval Order is not entered and the Premises is not sold to an Alternative Buyer or if Purchaser is the successful bidder at a purchase price in excess of the Purchase Price. If Purchaser is entitled to the Break-up Fee, then Seller shall also reimburse Purchaser for the reasonable and documented out-of-pocket costs and expenses (including reasonable expenses of counsel) incurred by Purchaser in connection with the negotiation, diligence, execution and performance of this Contract, which amount shall not exceed $50,000.00 (the "Expense Reimbursement"). The Break-up Fee and Expense Reimbursement will be deemed allowed administrative expensive claims in the bankruptcy case. The foregoing is subject to the terms of the Bidding Procedures Order that is approved by the Bankruptcy Court.

§18.7. Purchaser acknowledges that this bid is irrevocable through the earlier of the date of Closing by the Purchaser and the date that is ninety (90) days after entry of the Approval Order. The foregoing is subject to the terms of the Bidding Procedures Order, which may require that the second highest bid remain irrevocable until Closing to an Alternative Buyer.

§18.8. Purchaser hereby irrevocably designates and appoints Steven J. Cohen, Esq. (the "Agent"), having an address c/o Wachtel Missry LLP, One Dag Hammarskjold Plaza, 47th Floor, 885 Second Avenue, New York, New York 10017, as agent for service of process regarding the Debtor's Bankruptcy Court case, this Contract, and any matter related thereto or hereto. The Agent, by signing below, irrevocably consents to and accepts its designation and appointment as agent for service of process upon Purchaser and any assignee or transferee of Purchaser herein.

§18.9. Purchaser acknowledges and agrees that Albert Togut (the "Trustee") is entering into this Contract solely in his capacity as Chapter 11 Trustee of JTRE 14 VESEY STREET LLC, pursuant to Bankruptcy Court orders, and Purchaser agrees that neither the Trustee nor his retained professionals shall have any personal liability or obligation whatsoever under this Contract.

§18.10. Notwithstanding any other provision of this Contract, Seller reserves the right to proceed to Closing pursuant to a confirmed Plan in the Debtor's bankruptcy case. Upon notice that Seller has so elected, Purchaser shall reasonably cooperate with Seller in obtaining approval of and effectuating such a Plan that includes a sale of the Premises to Purchaser on the terms set forth herein.

**[BALANCE OF PAGE INTENTIONALLY LEFT BLANK]**



3968646.5

Docusign Envelope ID: 85107F64-FBCE-4910-9553-4718F7A319A4

From: **Sean Heaphy** sean.heaphy@icloud.com
Subject: **14 Vesey Street (Signature Page).pdf**
Date: **Mar 13, 2026 at 11:35:31 AM**
To: **Sean Heaphy** sean.heaphy@icloud.com

**IN WITNESS WHEREOF**, the parties hereto have executed this Contract as of the date first above written.

**SELLER:**

Signed by:

*Albert Togut, as Trustee*

CC95761FD431406...

**ALBERT TOGUT, NOT INDIVIDUALLY, BUT SOLELY IN HIS CAPACITY AS CHAPTER 11 TRUSTEE OF JTRE 14 VESEY STREET LLC**

**PURCHASER:**

**14 VESEY LLC**

By: _____

Name: SEAN HEAPHY

Title: Authorized signature

**Acceptance and Designation of Appointment
As Agent Pursuant to §18.8**

_____
Steven J. Cohen, Esq.

**Receipt by Escrowee**

The undersigned Escrowee hereby acknowledges receipt of $600,000.00, subject to collection, to be held in escrow pursuant to §2.03.

**ESCROW AGENT:**

**PHILLIPS NIZER LLP**

Initial

By: _____

**IN WITNESS WHEREOF**, the parties hereto have executed this Contract as of the date first above written.

**SELLER:**

_____

**ALBERT TOGUT, NOT INDIVIDUALLY, BUT SOLELY IN HIS CAPACITY AS CHAPTER 11 TRUSTEE OF JTRE 14 VESEY STREET LLC**

**PURCHASER:**

**14 VESEY LLC**

By: _____
      Name:
      Title:

**Acceptance and Designation of Appointment
As Agent Pursuant to §18.8**

_____
         Steven J. Cohen, Esq.

**Receipt by Escrowee**

The undersigned Escrowee hereby acknowledges receipt of $600,000.00, subject to collection, to be held in escrow pursuant to §2.03.

**ESCROW AGENT:**

**PHILLIPS NIZER LLP**

By: _____
69A356CB876C4DB
      A Partner

Initial

3968646.4

## SCHEDULE A

## DESCRIPTION OF PREMISES

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND BEING IN THE BOROUGH OF MANHATTAN, CITY, COUNTY AND STATE OF NEW YORK, LYING BELOW AND NOT ABOVE A HORIZONTAL LIMITING PLANE AT ELEVATION 117.06 FEET, BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE NORTHERLY SIDE OF VESEY STREET, AT OR OPPOSITE THE CENTER OF A CERTAIN PARTY WALL STANDING PARTLY ON THE PREMISES HEREBY DESCRIBED AND PARTLY ON THE PREMISES ADJOINING ON THE WEST, DISTANT 232 FEET 5 $^3/_4$ INCHES WESTERLY FROM THE CORNER FORMED BY THE INTERSECTION OF THE NORTHERLY SIDE OF VESEY STREET AND WESTERLY SIDE OF BROADWAY;

RUNNING THENCE NORTHERLY PARALLEL WITH OR NEARLY SO WITH CHURCH STREET AND THROUGH THE CENTER OF SAID PARTY WALL AND A LINE IN CONTINUATION THEREOF, 101 FEET 2 $^3/_4$ INCHES TO THE SOUTHERLY LINE OF THE PREMISES SECONDLY DESCRIBED IN APPORTIONMENT AGREEMENT RECORDED IN THE OFFICE OF THE NEW YORK COUNTY REGISTER IN LIBER 3701 PAGE 495;

THENCE EASTERLY ALONG THE SOUTHERLY LINE OF SAID PREMISES PARALLEL OR NEARLY SO WITH THE SOUTHERLY SIDE OF BARCLAY STREET, 75 FEET 3 $^1/_2$ INCHES TO A POINT DISTANT 101 FEET '/2 INCH NORTHERLY FROM THE NORTHERLY SIDE OF VESEY STREET, MEASURED ALONG A LINE DRAWN PARALLEL WITH THE WESTERLY LINE OF PREMISES HEREBY DESCRIBED FROM A POINT IN THE NORTHERLY SIDE OF VESEY STREET, DISTANT 75 FEET 3 $^1/_2$ INCHES EASTERLY FROM THE POINT OR PLACE OF BEGINNING;

THENCE SOUTHERLY ALONG THE LAST MENTIONED LINE PARALLEL WITH THE WESTERLY LINE OF PREMISES HEREBY DESCRIBED, 101 FEET '/2 INCH TO THE NORTHERLY SIDE OF VESEY STREET;

THENCE WESTERLY ALONG THE NORTHERLY SIDE OF VESEY STREET, 75 FEET 3'/2 INCHES TO THE POINT OR PLACE OF BEGINNING


**Initial**

3968646.5

# SCHEDULE B

## PERMITTED EXCEPTIONS

1.      Zoning regulations and ordinances which are not violated by the existing structures or present use thereof and which do not render title uninsurable.

2.      The covenants, conditions, easements, and agreements as expressly set forth herein below:

      (a)      Declaration of Zoning Lot Restrictions recorded in Reel 881 page 1712;

      (b)      Zoning Lot and Development Agreement recorded in Reel 881 page 1725;

      (c)      Covenants and Restrictions set forth in certain indenture recorded in Reel 881 page 1745;

      (d)      Encroachment and Access Agreement recorded in CRFN 2006000611983; and

      (e)      Notice of Designation Landmarks and Preservation of Historical Districts recorded in CRFN 2026000016037.

3.      Unpaid installments of assessments not due and payable on or before the Closing Date.

4.      Financing statements, chattel mortgages and liens on personalty filed more than 5 years prior to the Closing Date and not renewed, or filed against property or equipment no longer located on the Premises, provided that Purchaser's title company shall agree to omit same from the owner's and lender's title insurance policies.

5.      (a)      Rights of utility companies to lay, maintain, install and repair pipes, lines, poles, conduits, cable boxes and related equipment on, over and under the Premises, provided that none of such rights imposes any monetary obligation on the owner of the Premises, and do not adversely affect the continued existence and use of the Premises or any portion thereof as same exists and is being used as of the date hereof.

      (b)      Minor encroachments and projections (i.e., less than 1 foot), if any, of stoops, doors, areas, steps, cellar steps, entrances, sidewalk elevators, trim, cornices, lintels, ledges, water tables, windows, window sills, awnings, trim, ornamental projections, sign brackets, lights, canopies, keystones, pilasters, ledges, fences, fire escapes and landings, hedges, coping and retaining walls, foundations and similar items projecting from the Premises over any street or highway or over any adjoining property and encroachments of similar elements projecting from adjoining property over the Premises and variances, if any, between fences, retaining walls and the like and lines of record title, provided same are less than 1 foot.

3968646.5

Initial

*aɬaɬ*

(c)  Revocability or lack of right to maintain vaults, coal chutes, excavations or sub-surface equipment beyond the line of the Premises.

(d)  Any state of facts that an accurate survey would disclose, provided that such facts do not render title unmarketable.  For the purposes of this Contract, none of the facts shown on the survey, if any, identified below shall be deemed to render title unmarketable, and Purchaser shall accept title subject thereto.

(e)  Laws and governmental regulations that affect the use and maintenance of the Premises, provided same do not adversely affect the continued existence and use of the Premises or any portion thereof as same exists and is being used as of the date hereof.

(f)  Covenants, conditions, restrictions, easements, rights, reservations, consents and agreements of record as of the date hereof, provided same do not adversely affect the continued existence of the Premises or any portion thereof as same exists and any development "as of right" within the existing Building.

(g)  Any notes or notices of violations of law or municipal ordinances or requirements affecting the Premises, including without limitation, sidewalk violations and environmental control board violations.

(h)  Possible lack of right to maintain vault or vaulted area under, and coal chutes or fuel oil supply lines in, the sidewalk.

Initial

*aīaī*

3968646.5

Docusign Envelope ID: 85107F64-FBCE-4910-9553-4718F7A319A4

## SCHEDULE C

## PURCHASE PRICE

The Purchase Price shall be paid as follows:

| | |
|---|---|
| (a) By wire transfer, the receipt of which is hereby acknowledged by Seller (the "Initial Deposit") | $600,000.00 |
| (b) By wire transfer, in accordance with the provisions of §~~18.03~~ 18.02 (the "Second Deposit") | $600,000.00 |
| (c) By wire transfer at Closing, in accordance with the provisions of §2.02 | ~~$11,300,000.00~~ **$11,800.000.00** |
| **Purchase Price total** | ~~$12,500,000.00~~ **$13,000,000.00** |

**Initial**

*aↄaↄ*

3968646.5

**SCHEDULE D**
**MISCELLANEOUS**

1.  Title insurer (§1.02): Any reputable title insurer licensed to conduct business in the State of New York as designated by Purchaser and reasonably acceptable to Seller.

2.  Seller's tax identification number (§2.03): _____.

3.  Purchaser's tax identification number (§2.03): _____.

4.  Scheduled date and time of Closing (§3.01): forty-five (45) days following the date that the Approval Order is obtained, at 10 a.m., **TIME BEING OF THE ESSENCE** with respect to Purchaser's obligations hereto; provided, however, Purchaser shall have the one-time right, upon written notice to Seller not less than five (5) days prior to the Closing date, to extend the Closing date for a period of up to fifteen (15) days, **TIME BEING OF THE ESSENCE**.

5.  Place of Closing (§3.01): Seller's attorney's office, 485 Lexington Avenue, 14th Floor, New York, New York 10017, or, at Seller's or Purchaser's option, as a remote closing in escrow with Purchaser's title company.

6.  Broker (§14.01): Cushman & Wakefield Realty of Manhattan, LLC (to be paid by Seller pursuant to separate agreement).

7.  Address for notices (§15.01):

| | |
|---|---|
| If to Seller: | **ALBERT TOGUT, NOT INDIVIDUALLY, BUT SOLELY IN HIS CAPACITY AS CHAPTER 11 TRUSTEE OF JTRE 14 VESEY STREET LLC**<br>c/o Togut, Segal & Segal LLP<br>Attn: Frank A. Oswald, Esq.<br>One Penn Plaza, Suite 3335<br>New York, New York 10119<br>E-mail: frankoswald@teamtogut.com |
| with a copy to: | Togut, Segal & Segal LLP<br>One Penn Plaza, Suite 3335<br>New York, New York 10119<br>Attn: Frank Oswald, Esq.<br>Eitan Blander, Esq.<br>E-mail: frankoswald@teamtogut.com<br>eblander@teamtogut.com |
| | Phillips Nizer LLP<br>485 Lexington Avenue, 14th Floor<br>New York, New York 10017<br>Attn: Marc Andrew Landis, Esq.<br>E-mail: mlandis@phillipsnizer.com |

Initial

3968646.5

Docusign Envelope ID: 85107F64-FBCE-4910-9553-4718F7A319A4

If to Purchaser:        14 VESEY LLC
c/o Wachtel Missry LLP
One Dag Hammarskjold Plaza, 47th Floor
885 Second Avenue
New York, New York 10017
Attn: Steven J. Cohen, Esq.
Email: cohen@wmllp.com

with a copy to:        Wachtel Missry LLP
One Dag Hammarskjold Plaza, 47th Floor
885 Second Avenue
New York, New York 10017
Attn: Steven J. Cohen, Esq.
Email: cohen@wmllp.com

Initial

3968646.5

**Exhibit B**

**<u>Bidding Procedures Order</u>**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

Caption in Compliance with D.N.J. LBR 9004-1(b)

**TOGUT, SEGAL & SEGAL LLP**
Frank A. Oswald, Esq.
550 Broad Street, Suite 1508
Newark, NJ 07102
Tel: (212) 594-5000
frankoswald@teamtogut.com

Albert Togut, Esq. (admitted *pro hac vice*)
Eitan E. Blander, Esq. (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, NY 10119
Tel: (212) 594-5000
altogut@teamtogut.com
eblander@teamtogut.com

*Attorneys for Albert Togut,*
*Not Individually But Solely in His Capacity*
*as Chapter 11 Trustee*

In re:

JTRE 14 VESEY LLC, et al.,

Debtors.[1]

Chapter 11

Case No.: 24-12087 (MBK)

Judge: Michael B. Kaplan, U.S.B.J.

(Jointly Administered)

**ORDER APPROVING (A) BIDDING PROCEDURES
REGARDING TRUSTEE'S SALE OF 14 VESEY ST. PROPERTY,
(B) THE STALKING HORSE BID PROTECTIONS AND (C) THE TIME, DATE,
PLACE AND FORM OF NOTICE FOR AN AUCTION AND SALE HEARING**

The relief set forth on the following pages, numbered four (4) through nine (9), is **ORDERED.**

---

[1] JTRE 14 Vesey LLC's case is jointly administered with the case of 14 Vesey Street Partners (DEL) LLC (24-12086), Park 28 Partners LLC (24-17234), and W72 Street Partners LLC (24-17236).

(Page 2)
Debtors:     JTRE 14 Vesey LLC, et al.
Case No.:    24-12087 (MBK)
Caption:     Order Approving (A) Bidding Procedures Regarding Trustee's Sale of 14 Vesey
             St. Property, (B) the Stalking Horse Bid Protections, and (C) the Time, Date,
             Place, and Form of Notice for an Auction and Sale Hearing

---

Upon the application (the "Application")[2] of Albert Togut, not individually but solely in his capacity as Chapter 11 trustee (the "Trustee") of the estate of JTRE 14 Vesey LLC (the "Debtor") in the above captioned jointly-administered case, by his attorneys, Togut, Segal & Segal LLP, for entry of an order pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002(a)(2), 6004, and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (a) approving the proposed bidding procedures (the "Bidding Procedures") to be used in connection with the Trustee's proposed sale (the "Sale") of the Debtor's real property located at 14 Vesey Street, New York, New York, 10007 (the "Property"), in accordance with the Stalking Horse Sale Contract for the Property, substantially in the form attached to the Application as Exhibit A (the "Sale Contract") to the successful bidder for the Property (a "Purchaser" or "Successful Bidder"), including procedures for an auction for same (the "Auction") if necessary, (b) approving a break-up fee for the stalking horse bidder, and (c) scheduling the Auction and a hearing (the "Sale Hearing") to consider approval of the Sale, and approving the form and manner of notice of the Auction and the Sale Hearing; and this Court having considered the Application; and based on the Application, it appearing that the relief requested in the Application is in the best interests of the Debtor's estate and all parties in interest; and after due deliberation thereon and good cause appearing therefor, it is hereby:

---

[2]    Capitalized terms used but not defined herein shall have the meaning ascribed to such term in the Application.

2

(Page 3)  
Debtors:      JTRE 14 Vesey LLC, et al.  
Case No.:     24-12087 (MBK)  
Caption:      Order Approving (A) Bidding Procedures Regarding Trustee's Sale of 14 Vesey  
              St. Property, (B) the Stalking Horse Bid Protections, and (C) the Time, Date,  
              Place, and Form of Notice for an Auction and Sale Hearing

**FOUND AND DETERMINED THAT:[3]**

A.     This Court has jurisdiction over the Application and the relief

requested therein pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the

Application and the relief requested therein is a core proceeding pursuant to 28 U.S.C.

§§ 157(b)(2)(A), (N) and (O). Venue is proper before this Court pursuant to 28 U.S.C. §§

1408 and 1409.

B.     Good and sufficient notice of the relief sought in the Application

has been given and no further notice is required. A reasonable opportunity to object or

be heard regarding the relief requested in the Application has been afforded to all

interested persons and entities, including the Notice Parties.

C.     The proposed notice of the Bidding Procedures, the Auction, the

Sale Hearing and the proposed Sale, as set forth in the Application and the Sale

Contract, is good, appropriate, sufficient and is reasonably calculated to provide all

interested parties with timely and proper notice of the Bidding Procedures, the Auction,

the Sale Hearing and the Sale and no other or further notice of the Sale, the Auction or

the Bidding Procedures, other than as set forth herein and in the Application, is

required.

D.     The Trustee has articulated good and sufficient cause for this Court

to grant the relief requested in the Application, including this Court's (a) approval of

the Bidding Procedures, attached hereto as Exhibit 1; and (b) approval of the form and

---

[3]   Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as  
findings of fact, when appropriate. *See* Fed. R. Bankr. P. 7052.

(Page 4)
Debtors:      JTRE 14 Vesey LLC, et al.
Case No.:    24-12087 (MBK)
Caption:     Order Approving (A) Bidding Procedures Regarding Trustee's Sale of 14 Vesey
             St. Property, (B) the Stalking Horse Bid Protections, and (C) the Time, Date,
             Place, and Form of Notice for an Auction and Sale Hearing

manner of service of the notice of the Auction, the Application and Sale Hearing, attached hereto as Exhibit 2 (the "Notice of Auction and Sale Hearing").

E.      The Trustee has articulated good and sufficient cause for, and the best interests of the Debtor's estate will be served by, this Court scheduling a subsequent hearing to consider whether to grant the remainder of the relief requested in the Application, including approval of the proposed Sale free and clear of, among other things, all liens, claims, encumbrances, and interests, other than permitted exceptions (collectively, "Liens"), with such Liens to attach to the proceeds of the Property.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Application is GRANTED to the extent provided in this Order.

2.      Except as specified below, all objections to entry of this Order or to the relief provided herein and requested in the Application that have not been withdrawn, waived, resolved, or settled are hereby denied and overruled in their entirety.

**THE BIDDING PROCEDURES**

3.      The Bidding Procedures, as set forth in Exhibit 1 hereto and incorporated herein by reference as if fully set forth herein, are hereby approved in all respects and shall govern all bids and bid proceedings relating to the Property.

4.      The deadline for submitting bids for the Property (the "Bid Deadline") shall be May 21, 2026, at 5:00 p.m. (prevailing Eastern Time), unless otherwise extended by the Trustee in consultation with the Lender. In the event the Bid

4

(Page 5)
Debtors:     JTRE 14 Vesey LLC, et al.
Case No.:    24-12087 (MBK)
Caption:     Order Approving (A) Bidding Procedures Regarding Trustee's Sale of 14 Vesey
             St. Property, (B) the Stalking Horse Bid Protections, and (C) the Time, Date,
             Place, and Form of Notice for an Auction and Sale Hearing

Deadline is extended, the Trustee may adjourn the dates for the Auction and the Sale Hearing.

5.      Except as may be limited by the Sale Contract, and subject to the consultation rights provided for in the Bidding Procedures, the Trustee is authorized to extend the deadlines set forth in this Order and/or adjourn, continue or suspend the Auction and/or the Sale Hearing for any reason, without further order of this Court, by filing a notice with this Court and serving such notice on all Notice Parties and Potential Bidders.

6.      The Trustee is authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

7.      The Stalking Horse Bid Protections are approved in their entirety and the amount of such Stalking Horse Bid Protections as to Purchaser, if applicable pursuant to the Bidding Procedures, shall be an allowed administrative expense claim under section 503(b) of the Bankruptcy Code.  The Trustee is authorized, but not directed, to pay any amounts that may become due to the Purchaser on account of the Stalking Horse Bid Protections on the terms set forth in the Sale Contract.

8.      For the avoidance of doubt, in the event that the Trustee pursues an Alternative Proposal as defined in the Bidding Procedures, this shall not in any way relieve the Trustee of any requirement to pay the Stalking Horse Bid Protections on the terms set forth in the Sale Contract.

(Page 6)
Debtors: JTRE 14 Vesey LLC, et al.
Case No.: 24-12087 (MBK)
Caption: Order Approving (A) Bidding Procedures Regarding Trustee's Sale of 14 Vesey St. Property, (B) the Stalking Horse Bid Protections, and (C) the Time, Date, Place, and Form of Notice for an Auction and Sale Hearing

## THE AUCTION

9.      The Auction shall commence on May 26, 2026, at 1:00 p.m. (prevailing Eastern Time) at the New Jersey offices of Togut, Segal & Segal, LLP, attorneys for the Trustee, 550 Broad Street, Suite 1508, Newark, NJ 07102, or such later time or other place, within New York City or New Jersey or conducted virtually, as decided by the Trustee.  In accordance with the Bidding Procedures, and the Trustee shall notify all Qualified Bidders of such later time or place; provided, however, in the event that no Qualified Bids other than the one submitted by the Purchaser are received by the Bid Deadline, the Trustee shall not be required to conduct an Auction, and in such event the Trustee shall file a notice of cancellation of the Auction on the electronic docket that is maintained for the jointly-administered cases, and serve such notice on all of the Notice Parties and proceed with the approval of the Sale of the Property to the Qualified Bidder.

## SALE HEARING

10.      The Sale Hearing shall be held before the Honorable Michael B. Kaplan, United States Bankruptcy Judge of the Bankruptcy Court, on [_____], 2026 at 10:00 a.m. (prevailing Eastern Time) at the Clarkson S. Fisher U.S. Courthouse, 402 East State Street, Trenton, New Jersey 08608, at which time this Court shall consider:  (a) approval of the Sale to the Successful Bidder free and clear of all Liens;  (b) entry of the proposed Sale Order, substantially in the form attached to the Application as Exhibit "C";  (c) any other issues or objections that are timely interposed by any parties;  and (d) the granting of such other or further relief as this Court may deem just or proper.

(Page 7)
Debtors: JTRE 14 Vesey LLC, et al.
Case No.: 24-12087 (MBK)
Caption: Order Approving (A) Bidding Procedures Regarding Trustee's Sale of 14 Vesey
St. Property, (B) the Stalking Horse Bid Protections, and (C) the Time, Date,
Place, and Form of Notice for an Auction and Sale Hearing

11. Except as may be limited by the Sale Contract, the Sale Hearing may be adjourned by the Trustee, after consultation with the Successful Bidder, as applicable, from time to time without further order of this Court, by filing a notice on the electronic docket that is maintained for the jointly-administered cases and serving such notice on the Notice Parties and all Qualified Bidders.

## **NOTICE**

12. The Notice of Auction and Sale Hearing, substantially in the form attached hereto as <u>Exhibit 2</u>, is hereby approved.

13. Within two (2) business days after the entry of this Order, the Trustee shall cause this Bidding Procedures Order, together with the exhibits hereto, to be served on all of Notice Parties and all of the Debtor's known creditors, all of the parties that have recorded liens against the Property, and all parties which the Trustee and the Broker have identified as having an interest in acquiring the Property.

14. The notice as set forth in the preceding paragraph shall constitute good and sufficient notice of the Auction, the Sale Hearing and the proposed Sale Order, and no other or further notice of the Auction, the Sale Hearing and/or the proposed Sale Order shall be necessary or required.

## **OBJECTIONS TO THE SALE**

15. Objections, if any, to the Sale of the Property pursuant to the Application, other than with respect to the relief granted herein, shall be filed with this Court and served so as to be **actually received** no later than 4:00 p.m. (prevailing Eastern Time) on [_____] (the "<u>Objection Deadline</u>"), by: (a) Togut, Segal & Segal

(Page 8)
Debtors:      JTRE 14 Vesey LLC, et al.
Case No.:     24-12087 (MBK)
Caption:      Order Approving (A) Bidding Procedures Regarding Trustee's Sale of 14 Vesey
              St. Property, (B) the Stalking Horse Bid Protections, and (C) the Time, Date,
              Place, and Form of Notice for an Auction and Sale Hearing

LLP, attorneys for the Trustee, One Penn Plaza, Suite 3335, New York, New York 10119,

Attn: Frank Oswald, Esq; (b) Wachtel Missry LLP, counsel to the Stalking Horse

Purchaser, One Dag Hammarskjold Plaza, 47th Floor, 885 Second Avenue, New York,

New York 10017, Attn: Steven J. Cohen, Esq; (c) Benesch, Friedlander, Coplan &

Aranoff LLP, counsel for Lender, 1155 Avenue of the Americas, 26th Floor New York,

NY 10036, Attn: Abbey Walsh, Esq.; (d) the United States Trustee, One Newark Center,

Suite 2100, Newark NJ 07102, Attn: Lauren E. Bielskie, Esq.; (e) A.Y. Stauss LLC,

counsel to the Debtors, 290 West Mount Pleasant Avenue, Suite 3260 Livingston, New

Jersey 07039, Attn: Eric H. Horn, Esq.; and (f) all parties that have filed a Notice of

Appearance. Objections, if any, shall state the party's interest in the Chapter 11 Case

and shall also set forth the specific grounds, legal and/or factual, for the objection.

Only timely filed and served responses, objections, and other pleadings may be

considered by this Court at the Sale Hearing.

16.     The failure of any person or entity to file an objection to the

Application or before the Objection Deadline shall forever bar any such objection to the

Application or the relief requested therein, or to the consummation of the Sale

contemplated by the Sale Contract or agreement with the Successful Bidder(s), if any,

including the transfer of the Property free and clear of Liens.

## **ADDITIONAL PROVISIONS**

17.     The terms and conditions of this Order shall be effective

immediately upon its entry.

18.     The Trustee is authorized and empowered to take such steps, incur

8

(Page 9)
Debtors:       JTRE 14 Vesey LLC, et al.
Case No.:      24-12087 (MBK)
Caption:       Order Approving (A) Bidding Procedures Regarding Trustee's Sale of 14 Vesey
               St. Property, (B) the Stalking Horse Bid Protections, and (C) the Time, Date,
               Place, and Form of Notice for an Auction and Sale Hearing

and pay such costs and expenses, and do such things as may be reasonably necessary to fulfill the notice requirements established by this Order.

19.     Entry of this Order shall in no way impair the ability of the Court, United States Trustee, or the Trustee to implement or enforce other orders of the Court entered in the Debtor's case, and all such orders shall continue in full force and effect.

20.     This Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

**Exhibit 1**

**<u>Bidding Procedures</u>**

Caption in Compliance with D.N.J. LBR 9004-1(b)

**TOGUT, SEGAL & SEGAL LLP**
Frank A. Oswald, Esq.
550 Broad Street, Suite 1508
Newark, NJ 07102
Tel: (212) 594-5000
frankoswald@teamtogut.com

Albert Togut, Esq. (admitted *pro hac vice*)
Eitan E. Blander, Esq. (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, NY 10119
Tel: (212) 594-5000
altogut@teamtogut.com
eblander@teamtogut.com

*Attorneys for Albert Togut,*
*Not Individually But Solely in His Capacity*
*as Chapter 11 Trustee*

| | |
|---|---|
| In re:<br><br>JTRE 14 VESEY LLC, et al.,<br><br>               Debtors.[1] | Chapter 11<br><br>Case No.: 24-12087 (MBK)<br><br>Judge: Michael B. Kaplan, U.S.B.J.<br><br>(Jointly Administered) |

## BIDDING PROCEDURES

      The following bidding procedures (the "Bidding Procedures") shall govern the sale by Albert Togut, not individually but solely in his capacity as Chapter 11 trustee (the "Trustee") of JTRE 14 Vesey LLC (the "Debtor") in the above captioned jointly-administered case, of the Debtor's real property located at 14 Vesey Street, New York, New York, 10007 (the "Property") pursuant to the sale contract for the Property attached as Exhibit A (the "Sale Contract") to the Trustee's *Application for: (I) an Order Approving (A) Bidding Procedures Regarding Trustee's Sale of 14 Vesey St. Property and (B) the Time, Date, Place and Form of Notice for an Auction and Sale Hearing; and (II) an Order Approving (A) the Sale Free and Clear of Liens, Claims, Encumbrances and other Interests, and (B) Payment of the Broker Fee from the Sale Proceeds* [Docket No. ___] (the "Application"),[2] subject to higher and better offers as provided

---

[1]    JTRE 14 Vesey LLC's case is jointly administered with the case of 14 Vesey Street Partners (DEL) LLC (24-12086), JTRE 14 Vesey LLC (24-17234), and W72 Street Partners LLC (24-17236).

[2]    Capitalized terms not defined herein shall have the meaning ascribed to them in the Application.

in the Bidding Procedures.  On [\_\_\_\_\_], 2026, the Bankruptcy Court entered an order approving the Application, including these Bidding Procedures.

## DUE DILIGENCE

Parties interested in conducting due diligence regarding the Property (each a "Potential Bidder") should contact the Trustee's retained real estate broker, Cushman & Wakefield (the "Broker"), Attn: Bobby Carrozzo (email: Bobby.Carrozzo@cushwake.com).

The Trustee shall allow Potential Bidders to conduct due diligence regarding the Property;  provided, however, that the Trustee is not obligated to furnish any due diligence information after the Bid Deadline (as defined below).

## QUALIFIED BID REQUIREMENTS

To be considered, any bid submitted by a Potential Bidder for the Property (parties interested in bidding on the Property must submit a separate bid for the Property in accordance with these Bidding Procedures) must be in writing and include language:

a.  stating that the bid is irrevocable through the earlier of the Closing Date and the date that is thirty (30) days after the entry of the Sale Order, provided, however, that (a) if the Qualified Bid (defined below) becomes the Successful Bid (as defined below), such bid shall be irrevocable through the Closing Date or such earlier date as the sale contract may be terminated in accordance with its terms and (b) if the Qualified Bid becomes the Second Highest Bid (defined below), such bid shall remain irrevocable through the earlier of: (i) the closing of the sale of the Property covered by the Second Highest Bid;  and (ii) sixty (60) days after the entry of the Sale Order in respect of the Successful Bid, unless the Successful Bidder fails to close and the Trustee shall have given notice to the Second Highest Bidder that he has decided to consummate the transaction contemplated by the Second Highest Bid, in which case the Second Highest Bid shall remain open through the closing with such Second Highest Bidder;

b.  be submitted in writing to (i) the Trustee's Broker, Attn: Bobby Carrozzo (email: Bobby.Carrozzo@cushwake.com), (ii) real estate counsel for the Trustee, Phillips Nizer LLP, 485 Lexington Avenue, New York, NY, 10017, Attn: Marc Landis, Esq. (MLandis@phillipsnizer.com) and Huyen Dang, Esq., (hdang@phillipsnizer.com) (212) 841-0705, and (iii) counsel to the Trustee, Togut, Segal & Segal LLP, Attn: Frank A. Oswald, Esq. (email: frankoswald@teamtogut.com), so as to be received no later than **5:00 p.m. (ET) on May 21, 2026** (the

"Bid Deadline") or such other date established by the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") in the Bidding Procedures Order.

In addition to the foregoing, a "Qualified Bidder" is a Potential Bidder that delivers a binding bid ("Qualified Bid") that satisfies the following:

a. the bid must be for the Property must be made on the same (or better) terms and conditions as those set forth in the Sale Contract, and must include an agreement substantially similar to such Sale Contract, marked to show any changes thereto;

b. the bid must be for a price at least $400,000 greater than the Purchase Price set forth in the Sale Contract and under terms which the Trustee believes to be higher or better than the terms set forth in the Sale Contract;

c. the bid must be accompanied by a deposit (the "Deposit") in an amount equal to at least 10% of the purchase price proposed by the Potential Bidder, in the form of a wire transfer, certified or cashiers check made payable to: "Phillips Nizer LLP as Escrowee";

d. the bid must be accompanied by sufficient information to demonstrate, in the Trustee's discretion, subject to consultation with the Lender, that the Potential Bidder has the financial ability to timely consummate the proposed transaction, including, but not limited to, current bank account statements, current audited financial statements, commitments or other proof of available and non-contingent financing, and such other forms of financial disclosure and credit quality in support of such Potential Bidder (including financial information from any entities that will finance or guarantee the obligations of such Potential Bidder), which the Trustee requests;

e. the bid must be firm and unconditional and not subject to any contingencies that are not also provided in the Sale Contract including, without limitation, further due diligence review or receipt of debt or equity financing;

f. the bid must expressly acknowledges that no offer or bid for the Property shall be deemed accepted by, or binding upon, the Debtor's estate unless and until such offer or bid is accepted in writing by the Trustee and approved by Order of the Bankruptcy Court;

g. the bid must expressly acknowledge that the Property is being sold **"AS IS", "WHERE IS" IN ITS CURRENT CONDITION, WITHOUT ANY REPRESENTATIONS, COVENANTS,**

**GUARANTEES OR WARRANTIES OF ANY KIND OR NATURE WHATSOEVER**, and free and clear of any liens, claims or encumbrances of whatever kind or nature, with such liens, if any, to attach to the proceeds of sale, and is subject to among other things (a) any state of facts that an accurate survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; and (d) any building or zoning ordinances or any other applicable municipal regulations and violations thereof; and (e) environmental conditions;

h. the bid must expressly state that the Potential Bidder (a) has had an opportunity to conduct due diligence regarding Property prior to making its offer and does not require further due diligence, (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Property in making its bid, and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Property, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures;  and

i. the bid must expressly state that the Potential Bidder has obtained all necessary approvals to make its bid and to enter into and consummate the transaction set forth in the Sale Contract;

j. the bid must include an executed original of these Bidding Procedures acknowledging and agreeing to these Bidding Procedures and all the terms thereof;

k. the bid must include a statement that the Potential Bidder is not an "Insider" (as that term is defined under the Bankruptcy Code) of any of the Debtors;  and

l. the bid must expressly state that that the Potential Bidder has not engaged in any bad faith or collusion with respect of the Auction or Sale.

Following entry of the Bidding Procedures Order, the Trustee, after consultation with his professionals and the Lender, may reject any bid that is on terms that are more burdensome or conditional than the terms of the Sale Contract;  requires any indemnification of the Potential Bidder other than as set forth in the Sale Contract; includes non-cash consideration;  entitles the Potential Bidder to any break-up fee, termination fee, or similar type of payment;  is not in conformity with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules of the

Bankruptcy Court or an Order of this Court; is from a person or an entity that the Trustee, concludes, after consultation with the Lender, does not demonstrate that the party making the bid has the financial ability to consummate the transaction or fulfill financial commitments under its proposal; or is contrary to the best interests of the Debtor's estate. In addition, notwithstanding anything contained herein to the contrary, the Trustee shall have the right, after consultation with the Lender, to entertain bids that do not conform to one or more of the requirements set forth herein.

The Trustee may, after consultation with the Lender, communicate prior to the Auction with any Potential Bidder and may request any additional information reasonably required by the Trustee in connection with his evaluation of such Potential Bidder's bid.

Within one (1) business day after the Bid Deadline, the Trustee shall inform each Potential Bidder who has submitted a bid whether it is a Qualified Bidder.

## SALE WITHOUT HOLDING AN AUCTION

If (i) no Qualified Bids have been submitted (other than that submitted by the Purchaser) by the Bid Deadline or (ii) the aggregate value of the highest Qualified Bid by its terms submitted by the Bid Deadline for the Property is for a price and under terms which the Trustee believes to not be higher or better than the Purchase Price in the Sale Contract, the Trustee may report the same to the Bankruptcy Court and proceed with a hearing to approve the sale of the Property (the "Sale Hearing") based on the Sale Contract without holding an auction.

## AUCTION

If the value of the highest or best Qualified Bid submitted (other than that submitted by the Purchaser) on or before the Bid Deadline for the Property (as determined by the Trustee, in consultation with the Lender) is for a price and under terms that the Trustee believes to be equal to or higher or better than the Purchase Price set forth in the Sale Contract, an auction (the "Auction") for the Property will take place on **May 26, 2026, at 1:00 p.m. (ET)** at the New Jersey law offices of Togut, Segal & Segal LLP; provided however, that the Trustee, in consultation with the Lender, may change the location of the Auction by providing notice of such change to each Qualified Bidder. Subject to the terms of the Sale Contract, the Trustee may extend the deadlines set forth in the Bidding Procedures Order and/or adjourn, continue or cancel the Auction and/or the Sale Hearing for any reason, including in the event the Trustee determines that a more favorable transaction is available that can be consummated without significant delay, without further order of the Bankruptcy Court, by filing a notice with the Bankruptcy Court and serving such notice on all Potential Bidders.

Only a Qualified Bidder that has submitted a timely Qualified Bid will be eligible to participate at the Auction. The Trustee and his professionals will evaluate all Qualified Bids received and, after consultation with his professionals, will select the Qualified Bid that reflects the highest or best offer for the Property as the "Starting Auction Bid." In considering which Qualified Bid shall be the Starting Auction Bid for

the Property, the Trustee will consider, among other things, the Qualified Bid, the changes to the Sale Contract required by the Qualified Bid, and the Qualified Bidder's ability to timely consummate the purchase of the Property.

The following rules shall apply at the Auction: the minimum initial overbid(s) must be, in the aggregate, at least $100,000 greater than the Starting Auction Bid, unless otherwise determined by the Trustee, in consultation with the Lender. From time to time, the Trustee, in an open forum, may advise Qualified Bidders participating in the Auction of his determination as to the terms of the then highest or otherwise best bid for the Property. The Trustee shall also consider the potential costs of satisfying the conditions of any bid.

Subject to the Sale Contract, the Trustee, after consultation with his professionals and with the Lender , may adopt other rules for the Auction at the Auction that, in his reasonable judgment, will better promote the goals of the Auction. All such rules will provide that: (a) the procedures must be fair and open, with no participating Qualified Bidder disadvantaged in any material way as compared to any other Qualified Bidder and (b) the Auction will be conducted openly and all Qualified Bidders will be permitted to attend; and (c) the bidding at the Auction will be documented, recorded, or videotaped. Nothing herein shall prohibit the Trustee from meeting privately with any Qualified Bidder to negotiate the terms of a bid or overbid.

During the Auction, the Trustee will review each bid or overbid submitted by a Qualified Bidder to identify, after consultation with his professionals and the Lender, the bid or overbid that constitutes the highest or otherwise best bid for each of the Property. The Trustee may consider, among other things, (a) the amount of consideration offered under the Qualified Bid; (b) the changes to the Sale Contract required by the Qualified Bid; and (c) the Qualified Bidder's ability to timely consummate the purchase of Property. The bid that is selected by the Trustee as the highest or otherwise best bid for the Property will be considered the "<u>Successful Bid</u>" and such bidder the "<u>Successful Bidder</u>" for the Property.

Any bid submitted after the conclusion of the Auction need not be considered for any purpose unless an order of the Bankruptcy Court is entered directing that such bid be considered, and neither the Trustee nor any other person or entity shall have any obligation to seek such an order from the Bankruptcy Court.

by the Trustee at the conclusion of the Auction and approved by the Bankruptcy Court at the Sale Hearing, shall remain open and irrevocable until the earlier of (a) the closing of the sale to the Successful Bidder, or (b) thirty (30) days after entry of the Sale Order. In the event that, for any reason, the Successful Bidder fails to close the transaction contemplated by its Successful Bid within sixty (60) days after entry of the Sale Order, the Trustee, in consultation with the Lender, may elect to regard the Second Highest Bid as the highest or best bid for the Property, and the Trustee will be authorized to consummate the transaction contemplated by the Second Highest Bid without further order of the Bankruptcy Court.

## THE SALE HEARING AND RETURN OF DEPOSITS

The Sale Hearing will be held at a date and time established by the

Bankruptcy Court in the Bidding Procedures Order. At the Sale Hearing, the Trustee will seek entry of a Sale Order, among other things, authorizing and approving the sale of the Property to the Successful Bidder pursuant to the terms and conditions set forth in the Successful Bid.

Subject to the Sale Contract and the terms of the Successful Bid, the Sale Hearing may be adjourned or rescheduled at the Trustee's discretion, , subject to consultation with the Lender, and the Trustee will notify all relevant parties of such adjournment or rescheduling in an appropriate manner, including by an announcement of the adjourned date at the Sale Hearing.

No offer shall be deemed finally accepted by the Trustee unless and until it is approved by the Bankruptcy Court.

In the event the Successful Bidder fails to consummate the purchase of the Property because of a breach or failure to perform on the part of such bidder, the bidder's Deposit shall be forfeited to the Trustee on behalf of the Debtor's estate, provided that the Trustee reserves the right to seek all available damages from the defaulting bidder.

All Deposits, other than the Deposit of the Successful Bidder and the Second Highest Bidder for the Property, will be returned within seven (7) business days following entry of the Sale Order. The Deposit of the Second Highest Bidder will be returned as soon as practicable following the earlier of (a) the closing of the sale with the Successful Bidder pursuant to the Successful Bid and (b) sixty (60) days after entry of the Sale Order, unless the Trustee has elected to regard the Second Highest Bid as the highest or best bid for the Property, as described above. The Trustee will not be required to maintain any Deposit in an interest-bearing account, but any interest earned on any Deposit will be remitted to the appropriate Qualified Bidder if the Deposit is returned to the Qualified Bidder pursuant to the above. The Trustee shall not have any liability with respect to any Deposit.

## FIDUCIARY OUT

Notwithstanding anything to the contrary in these Bidding Procedures, nothing in these Bidding Procedures shall require the Trustee to take any action or to refrain from taking any action related to any sale transaction or with respect to these Bidding Procedures, to the extent the Trustee reasonably determines in good faith, in consultation with counsel, that taking or failing to take such action, as applicable, would be inconsistent with applicable law or its fiduciary obligations under applicable law.

Further, notwithstanding anything to the contrary in these Bidding Procedures or the Bidding Procedures Order, through the date of the Auction (if held), nothing in these Bidding Procedures shall diminish the right of the Trustee or his professionals to: (a) consider, respond to, and facilitate alternate proposals for sales or other restructuring transactions involving the Property (each an "Alternate Proposal"); (b) provide access to non-public information concerning the Debtors to any entity or enter into confidentiality agreements or nondisclosure agreements with any entity

with respect to Alternative Proposals; (c) maintain or continue discussions or negotiations with respect to Alternate Proposals; (d) otherwise cooperate with, assist, participate in, or facilitate any inquiries, proposals, discussions, or negotiations of Alternate Proposals; and (e) enter into or continue discussions or negotiations with any person or entity regarding any Alternate Proposal.  For the avoidance of doubt, if the Trustee determines to consider or accept an Alternate Proposal of any kind, the Stalking Horse Purchaser shall be given the opportunity to match or exceed any such Alternate Proposal before the Starting Auction Bid is selected.

### NOTICE

The Trustee is providing notice of the Bidding Procedures, the date of an Auction concerning the Property, and the date for the Sale Hearing, together with a copy of the Sale Contract, to, among others, all of the parties that have recorded liens against the Property and all parties which the Trustee has identified as having an interest in acquiring the Property.

### JURISDICTION

The Bankruptcy Court shall retain exclusive jurisdiction over any matter or dispute relating to the sale of the Property, the Bidding Procedures, the Sale Hearing, the Auction, the Sale Contract, and/or any other matter that in any way relates to the foregoing.

ALBERT TOGUT, not individually but solely in his capacity as Chapter 11 Trustee, By His Attorneys, TOGUT, SEGAL & SEGAL LLP By:

/s/
FRANK A. OSWALD
A Member of the Firm
550 Broad Street, Suite 1508
Newark, NJ 07102
(212) 594-5000

**Exhibit 2**

**<u>Notice of Auction and Sale Hearing</u>**

**BID DEADLINE:**          May 21, 2026, at 5:00 p.m. (prevailing Eastern Time)
**AUCTION DATE:**         May 26, 2026, at 1:00 p.m. (prevailing Eastern Time)
**OBJECTION DEADLINE:**    [_____] at 4:00 p.m. (prevailing Eastern Time)
**SALE HEARING**           [_____] at 10:00 a.m. (prevailing Eastern Time)

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-1(b)

**TOGUT, SEGAL & SEGAL LLP**
Frank A. Oswald, Esq.
550 Broad Street, Suite 1508
Newark, NJ 07102
Tel: (212) 594-5000
frankoswald@teamtogut.com

Albert Togut, Esq. (admitted *pro hac vice*)
Eitan E. Blander, Esq. (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, NY 10119
Tel: (212) 594-5000
altogut@teamtogut.com
eblander@teamtogut.com

*Attorneys for Albert Togut,*
*Not Individually But Solely in His Capacity*
*as Chapter 11 Trustee*

| | |
|---|---|
| In re:<br><br>JTRE 14 VESEY LLC, et al.,<br><br>            Debtors.[1] | Chapter 11<br><br>Case No.: 24-12087 (MBK)<br><br>Judge: Michael B. Kaplan, U.S.B.J.<br><br>(Jointly Administered) |

**NOTICE OF AUCTION AND HEARING TO CONSIDER**
**APPROVAL OF TRUSTEE'S SALE OF 14 VESEY ST. PROPERTY**

---

[1] JTRE 14 Vesey LLC's case is jointly administered with the case of 14 Vesey Street Partners (DEL) LLC (24-12086), Park 28 Partners LLC (24-17234), and W72 Street Partners LLC (24-17236).

**NOTICE IS HEREBY GIVEN**, that:

1.      On March 23, 2026, Albert Togut, not individually but solely in his capacity as Chapter 11 trustee ("<u>Trustee</u>") of the estate of JTRE 14 VESEY LLC (the "<u>Debtor</u>"), by his attorneys, Togut, Segal & Segal LLP, filed an application (the "<u>Application</u>")[2] with the United States Bankruptcy Court for the District of New Jersey (the "<u>Bankruptcy Court</u>") in the above captioned jointly-administered chapter 11 cases requesting, among other things, (a) approval of bidding procedures (the "<u>Bidding Procedures</u>") in connection with the Trustee's sale of the Debtor's real property located at 14 Vesey Street, New York, New York, 10007 (the "<u>Property</u>"), as described in the Application, in accordance with the respective form of Sale Contract substantially in the form attached to the Application as <u>Exhibit "A"</u> (the "<u>Sale Contract</u>"), to the successful bidder(s) for the Property (a "<u>Purchaser</u>" or "<u>Successful Bidder</u>") at an auction for same (the "<u>Auction</u>") if necessary, (b) approving a break-up fee and expense reimbursement to the stalking horse bidder, and (c) the scheduling of a bid deadline, auction date, and sale hearing (the "<u>Bidding Schedule</u>").

2.      On [_____], 2026, the Bankruptcy Court entered an order (the "<u>Bidding Procedures Order</u>") [Docket. No. ___] approving, among other things, the Bidding Procedures, and establishing the Bidding Schedule.

3.      A copy of each of the Application, the Bidding Procedures, and the Bidding Procedures Order may be obtained by: (a) accessing the Bankruptcy Court's website at <u>www.nysb.uscourts.gov</u>; (b) contacting the Office of the Clerk of the Bankruptcy Court; or (c) contacting Frank A. Oswald, Esq., or Eitan Blander, Esq.,

---

[2]    Capitalized terms which are not defined herein shall have the meanings ascribed to them in the Application.

at Togut, Segal & Segal LLP, attorneys for the Trustee, at (212) 594-5000.  Note that a PACER password is needed to access documents on the Bankruptcy Court's website.

4.      All interested parties are invited to make offers for the Property in accordance with the terms of the Bidding Procedures and Bidding Procedures Order. The deadline to submit offers (the "Bid Deadline") is **May 21, 2026, at 5:00 p.m. (prevailing Eastern Time)**.

5.      All requests for information concerning the sale of the Property should be directed by written request to the Trustee's retained real estate broker, Cushman & Wakefield, Attn: Bobby Carrozzo (email: Bobby.Carrozzo@cushwake.com).

6.      Pursuant to the Bidding Procedures Order, the Trustee may conduct an auction (the "Auction") for the sale of the Property on **May 26, 2026, at 1:00 p.m. (prevailing Eastern Time)** at the New Jersey offices of Togut, Segal & Segal, LLP, attorneys for the Trustee, 550 Broad Street, Suite 1508, Newark, NJ 07102, provided that the Trustee, after consultation with the Lender, may change the location of the Auction by providing notice of such change to each Qualified Bidder.[3]

7.      The Bidding Procedures Order further provides that a Sale Hearing will be held on [_____]**, at 10:00 a.m. (prevailing Eastern Time)** before the Honorable Michael B. Kaplan, United States Bankruptcy Judge of the Bankruptcy Court, Clarkson S. Fisher U.S. Courthouse, 402 East State Street, Trenton, New Jersey 08608.  The Sale Hearing may be adjourned from time to time.

---

[3]     The Trustee, in consultation with the Lender, may extend the deadlines set forth in the Bidding Procedures Order and/or adjourn, continue or cancel the Auction and/or the Sale Hearing for any reason, including in the event the Trustee determines that a more favorable transaction is available that can be consummated without significant delay, without further order of the Bankruptcy Court, by filing a notice with the Bankruptcy Court and serving such notice on all Potential Bidders.

8. At the Sale Hearing, the Trustee will request that the Bankruptcy Court enter an order, among other things, approving the highest or best bid for the Property (which will be determined as described in the Bidding Procedures), pursuant to which the Trustee will sell and transfer ownership of the Property (the "Sale Order"). In addition, the Trustee will request that the Bankruptcy Court provide that the transfer of the Property be free and clear of all liens, claims and interests, other than certain permitted exceptions as expressly set forth in the Sale Contract, with such liens, claims and interests to attach to the sale proceeds with the same validity, extent and priority that existed when the above-captioned case commenced.[4]

9. At the Sale Hearing, the Bankruptcy Court may enter such orders as it deems appropriate under applicable law and as required by the circumstances and equities of this Chapter 11 Case. Objections, if any, to the sale of the Property pursuant to the terms of the agreement reached between the Trustee and the Successful Bidder(s) for the Property must be in writing and filed with the Bankruptcy Court and received by the Chambers of the Honorable Michael B. Kaplan, United States Bankruptcy Judge of the Bankruptcy Court, Clarkson S. Fisher U.S. Courthouse, 402 East State Street, Trenton, New Jersey 08608, must conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court, must set forth the name of the objecting party, the nature and amount of any claims or interests held or asserted against the Debtor's estate, the basis for the objection and the specific grounds therefor, and must be served upon: (a) Togut, Segal & Segal LLP, attorneys for the Trustee, One Penn Plaza, Suite 3335, New York, New York 10119, Attn: Frank Oswald, Esq; (b) Wachtel Missry LLP, counsel to the Stalking Horse Purchaser, One Dag

---

[4] All of the Trustee's rights, claims and defenses are expressly preserved and not waived

Hammarskjold Plaza, 47th Floor, 885 Second Avenue, New York, New York 10017, Attn: Steven J. Cohen, Esq.; (c) Benesch, Friedlander, Coplan & Aranoff LLP, counsel for Lender, 1155 Avenue of the Americas, 26th Floor New York, NY 10036, Attn: Abbey Walsh, Esq.; (d) the United States Trustee, One Newark Center, Suite 2100, Newark NJ 07102, Attn: Lauren E. Bielskie, Esq.; (e) A.Y. Stauss LLC, counsel to the Debtors, 290 West Mount Pleasant Avenue, Suite 3260 Livingston, New Jersey 07039, Attn: Eric H. Horn, Esq.; and (f) all parties that have filed a Notice of Appearance, so as to be actually received no later than [_____]**, 2026 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

10.  Objections which are not timely filed on or before the Objection Deadline will be forever waived and may not be considered by the Bankruptcy Court.

11.  If no objection to the Sale is timely filed, the Bankruptcy Court may enter the Sale Order without a hearing and the Sale will be consummated as proposed

Dated: New York, New York
April __, 2026

ALBERT TOGUT, not individually but
solely in his capacity as Chapter 11 Trustee,
By His Attorneys,
TOGUT, SEGAL & SEGAL LLP
By:

/s/_____
FRANK A. OSWALD
A Member of the Firm
550 Broad Street, Suite 1508
Newark, NJ 07102
(212) 594-5000

**Exhibit C**

**<u>Sale Order</u>**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

Caption in Compliance with D.N.J. LBR 9004-1(b)

**TOGUT, SEGAL & SEGAL LLP**
Frank A. Oswald, Esq.
550 Broad Street, Suite 1508
Newark, NJ 07102
Tel:  (212) 594-5000
frankoswald@teamtogut.com

Albert Togut, Esq. (admitted *pro hac vice*)
Eitan E. Blander, Esq. (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, NY 10119
Tel:  (212) 594-5000
altogut@teamtogut.com
eblander@teamtogut.com

*Attorneys for Albert Togut,*
*Not Individually But Solely in His Capacity*
*as Chapter 11 Trustee*

| | |
|---|---|
| In re:<br><br>JTRE 14 VESEY LLC, et al.,<br><br>           Debtors.[1] | Chapter 11<br><br>Case No.: 24-12087 (MBK)<br><br>Judge:  Michael B. Kaplan, U.S.B.J.<br><br>(Jointly Administered) |

## <u>ORDER APPROVING SALE OF 14 VESEY ST. PROPERTY</u>

The relief set forth on the following pages, numbered seven (7) through fourteen (14), is **ORDERED.**

---

[1] JTRE 14 Vesey LLC's case is jointly administered with the case of 14 Vesey Street Partners (DEL) LLC (24-12086), Park 28 Partners LLC (24-17234), and W72 Street Partners LLC (24-17236).

Upon the application (the "<u>Application</u>")[2] of Albert Togut, not individually but solely in his capacity as Chapter 11 trustee (the "<u>Trustee</u>") of JTRE 14 Vesey LLC (the "<u>Debtor</u>") in the above captioned jointly-administered case, for entry of an order, pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rules 2002(a)(2), 6004, and 9006 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") approving the sale (the "<u>Sale</u>") of the Debtor's real property located at 14 Vesey Street, New York, New York, 10007 (the "<u>Property</u>") to 14 Vesey LLC (the "<u>Purchaser</u>"); and this Court having reviewed the Application and the form of Purchase and Sale Agreement for the Property attached to the Application as **Exhibit A** (the a "<u>Sale Contract</u>"); and upon this Court's prior order, dated [_____], 2026 approving the Bidding Procedures in connection with the Sale (the "<u>Bidding Procedures Order</u>") [Docket No. __]; and good and sufficient notice of the Application and the Bidding Procedures Order having been given to all parties entitled thereto;

**NOW, THEREFORE**, upon the record of the Sale Hearing (as defined in the Bidding Procedures Order) and upon all of the prior pleadings and proceedings in this case, and after due deliberation thereon and good cause appearing therefor

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.      This Court has jurisdiction over the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this case and the Application in this district is proper under 28 U.S.C. §§ 1408 and 1409.

---

[2]     Capitalized terms used but not defined herein shall have the meaning ascribed to such term in the Application except where indicated otherwise.

B.      The statutory predicates for the relief sought in the Application are

sections 105(a), 330, and 363 of the Bankruptcy Code and Bankruptcy Rules 2002 and

6004.

C.      Proper, timely, adequate and sufficient notice of the Application

and the relief requested therein, the Sale Hearing, the Sale, and the transaction

described in the Sale Contract has been provided by the Trustee in accordance with

section 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 9006, and in

compliance with the Bidding Procedures Order.

D.      The Trustee has marketed the Property and conducted the Sale

process in compliance with the Bidding Procedures Order.

E.      Creditors, parties-in-interest, and other entities have been afforded

a reasonable opportunity to bid for the purchase of the Property.  A reasonable

opportunity to object or be heard regarding the Application and the relief requested

therein has been afforded to all interested persons and entities.

F.      The Trustee has the authority to consummate the Sale pursuant to

the Sale Contract and all other documents contemplated thereby, and no consents or

approvals, other than those expressly provided for in the Sale Contract, are required for

the Trustee to consummate the Sale.

G.      Approval of the Sale Contract and consummation of the Sale are in

the best interests of the Debtor's estate, its creditors, and other parties-in-interest.

H.      The Trustee has demonstrated (i) good, sufficient, and sound

business purpose and justification and (ii) compelling circumstances for the Sale

pursuant to sections 363(b) and (f) and (l) of the Bankruptcy Code.

I.      The Sale Contract was negotiated, proposed and entered into by

(Page 4)

Debtors:     JTRE 14 Vesey LLC, et al.
Case No.:    24-12087 (MBK)
Caption:     Order Approving Sale of 14 Vesey St. Property

and between the Trustee and the Purchaser without collusion, in good faith, and from arm's-length bargaining positions. Neither the Trustee nor the Purchaser has engaged in any conduct that would cause or permit the avoidance of the Sale Contract or the consummation of the Sale, or the imposition of costs or damages under section 363(n) of the Bankruptcy Code.

J.    The Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby in that: (a) the Purchaser recognized that the Trustee was free to deal with any other party interested in a transaction regarding the Sale; (b) the Purchaser agreed to provisions in the applicable Sale Contract that would enable the Trustee to accept a higher or better offer in respect of the Sale; (c) the Purchaser made the highest or best bid in respect of the Sale; (d) all payments to be made by or to the Purchasers and other agreements or arrangements entered into by the Purchaser in connection with the transaction have been disclosed; and (e) the negotiation and execution of the Sale Contract and any other agreements or instruments related thereto were in good faith and constitute arm's-length transactions between the Purchaser and the Trustee. The Purchaser has acted in good faith and will continue to be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the transaction contemplated by the Sale Contract.

K.    The terms and conditions of the Sale Contract are fair and reasonable. The consideration provided by the Purchaser for the Property pursuant to the Sale Contract (i) is fair and reasonable, (ii) is the highest or best offer for each of the Property, (iii) will provide a greater recovery for the Debtor's creditors than would be provided by any other practical available alternative, and (iv) constitutes reasonably

equivalent value and fair consideration under the Bankruptcy Code and applicable non-bankruptcy law.

L.      The amount of the Purchase Price for the Property exceeds the amounts of the claims that are secured by the known liens and encumbrances against the Property, excluding such claims and liens held by the Lender.

M.      Neither the Trustee nor the Purchaser are or will be liable to any agent, broker, person or firm acting or purporting to act on behalf of either the Trustee or the Purchaser for any commission, broker's fee or finder's fee respecting the Sale, except as provided for in the Sale Contract and this Order.

N.      The Property constitutes property of the Debtor's estate.  The Debtor is the sole and lawful owner of the Property and holds good title thereto.  The transfer of the Property by the Trustee to the Purchaser will be a legal, valid, and effective transfer of the Property, and will vest the Purchaser with all right, title, and interest of the Debtor in and to the Property free and clear of all liens, claims, interests, obligations, rights, charges and encumbrances, except for permitted exceptions, as specifically provided in the Sale Contract ("Permitted Exceptions").  After the Closing of the Sale under the Sale Contract, the applicable Purchaser shall have no liability for any claims asserted against or liabilities of the Debtor or the Estate.

O.      The Trustee may sell the Property free and clear of all, liens, interests, obligations, rights, encumbrances, pledges, mortgages, deeds of trust, security interests, claims (including, any "claim" as defined in Section 101(5) of the Bankruptcy Code), charges, options, rights of first refusal, easements, servitudes, transfer restrictions under any agreement, judgments, hypothecations, demands, licenses, sublicenses, assignments, debts, obligations, guaranties, options, contractual

5

commitments, restrictions, environmental liabilities, options to purchase, and options,

in each case of whatever kind, nature, or description in, against or with respect to the

Property, having arisen, existed or accrued prior to and through the Closing, whether

direct or indirect, absolute or contingent, choate or inchoate, fixed or contingent,

matured or unmatured, liquidated or unliquidated, arising or imposed by agreement,

understanding, law, equity, statute or otherwise and whether arising prior to, on or

after the Petition Date (collectively, "Liens, Claims and/or Interests"), except for

Permitted Exceptions as expressly provided in the Sale Contract, because one or more of

the standards set forth in section 363(f)(1)–(5) have been satisfied with regard to each

such Lien, Claim and/or Interest.  Those non-debtor parties with Liens, Claims and/or

Interests in or with respect to the Property who did not object, or who withdrew their

objections to the Sale or the Application, are deemed to have consented to the sale of the

Property free and clear of those non-debtor parties' Liens, Claims and/or Interests in

the Property pursuant to section 363(f)(2) of the Bankruptcy Code.  Those non-debtor

parties with Liens, Claims and/or Interests in or with respect to the Property who

objected to the Application, but who did not withdraw any such objection, can be

compelled to accept a monetary satisfaction of their liens, claims or interests within the

meaning of Section 363(f)(5) of the Bankruptcy Code.

   P. The Sale of the Property is exempt from any and all real estate

transfer taxes as a conveyance pursuant to the Bankruptcy Code and a plan filed in the

Debtor's Chapter 11 case.  Specifically, the Sale of the Property is essential to the

consummation of the *Chapter 11 Plan* dated as of [_____] [Docket No. __] (as may be

subsequently amended, supplemented or otherwise modified from time to time, the

"Plan"), and such tax exemption is allowed pursuant to section 1146(a) of the

Bankruptcy Code and is deemed to be a transfer under a plan confirmed under section 1129 of the Bankruptcy Code, subject in all respects to this Court's entry of an Order confirming the Plan and a plan filed in the Debtor's case. Purchaser shall not be responsible for payment of any transfer taxes.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

**General Provisions**

1. The Application is GRANTED to the extent set forth herein.

2. The findings of fact set forth above and conclusions of law set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this case pursuant to Bankruptcy Rule 9014. To the extent any finding of fact later shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law later shall be determined to be a finding of fact, it shall be so deemed.

3. All objections, if any, to the Application or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections, are hereby overruled on the merits with prejudice, and in each case, all parties which asserted such objections and reservations of rights are enjoined from taking any action against the Purchaser or any other purchaser of the Property, their affiliates or any agent of the foregoing in any manner including, without limitation, to recover any claim which such person or entity has solely against the Debtor or the Estate.

**Approval of the Sale Contract**

4. The Sale, and all of the terms and conditions and transactions

contemplated by the Sale Contract are hereby authorized and approved pursuant to sections 105(a) and 365 of the Bankruptcy Code.

5.      Pursuant to section 363 of the Bankruptcy Code, the Trustee is authorized to consummate the Sale pursuant to and in accordance with the terms and conditions of the Sale Contract and shall at all times act in accordance with the terms thereof and this Order.

6.      The Trustee is authorized to expend such funds and he and his retained attorneys are authorized to execute and deliver, and empowered to perform under, consummate, and implement the Sale Contract, together with all additional instruments and documents that may be reasonably necessary, convenient or desirable to implement the Sale Contract and consummate the Sale pursuant thereto and effectuate the provisions of this Order and the transaction approved hereby, and to take all other actions as may be necessary for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser, the Property, as may be necessary or appropriate to the performance of the obligations as contemplated by the Sale Contract and this Order.

**Transfer of the Property**

7.      Except for Permitted Exceptions only as expressly provided in the applicable Sale Contract, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, upon the closing of the Sale (the "Closing"), the Property (and good and marketable title to such) and all of the attendant respective rights, title and interest therein shall be transferred to the Purchaser free and clear of all Liens, Claims and/or Interests, including, without limitation, tax liens, with all such Liens, Claims and/or Interests to

attach to the net cash proceeds of the Property in the order of their priority, with the same validity, force and effect which they now have as against the applicable Property, subject to any claims and defenses, setoffs or rights of recoupment that the Trustee or the Estate may possess with respect thereto.

8.      Except for Permitted Exceptions, only as expressly provided in the Sale Contract, all persons and entities (and their respective successors and assigns) including, but not limited to, all governmental, tax, and regulatory authorities, lenders, trade and other creditors, holding Liens, Claims and/or Interests (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or non-liquidated, senior or subordinated) against, in or with respect to the Trustee, the Debtor's estate and/or the Property arising or accruing under or out of, in connection with, or in any way relating to, the Trustee, the Debtor's estate, the Property, or the transfer of the Property to the Purchaser, hereby are forever barred, estopped, and permanently enjoined from asserting such persons' or entities' Liens, Claims and/or Interests against the Property, the Purchaser or any of the Purchaser's affiliates, designees, heirs, successors or assigns. Following the Closing of the Sale under the Sale Contract, no holder of a Lien, Claim and/or Interest shall interfere with the Purchaser's title to or use and enjoyment of the applicable Property based on or related to such Lien, Claim and/or Interest or any actions that the Trustee has taken or may take in the Debtor's Chapter 11 Case. Effective upon the Closing, the Purchaser shall have no liability for any Claims (as defined in section 101(5) of the Bankruptcy Code) against the Trustee or the estate concerning the Property.

9.      The transfer of the Property to the Purchaser pursuant to the Sale

Contract constitutes a legal, valid, and effective transfer of the Property, and shall vest

the Purchaser with all right, title, and interest of the Debtor in and to the applicable

Property.

**Additional Provisions**

10.     Without limiting the other terms of this Order, prior to or upon the

Closing, each of the Debtor's creditors is authorized and directed to execute such

documents and take all other actions as may be necessary to release their interests, if

any, in the Property as such Liens, Claims and/or Interests may have been recorded or

may otherwise exist.

11.     Except for Permitted Exceptions, only as expressly provided in the

Sale Contract, this Order shall be (a) effective as a determination that, upon the Closing,

all Liens, Claims and/or Interests existing with respect to the Property prior to the

Closing have been unconditionally released, discharged and terminated as to the

Purchaser and the Property, and that the conveyances described herein have been

effected, and (b) binding upon all filing agents, filing officers, title agents, title

companies, recorders of mortgages, recorders of deeds, registrars of deeds,

administrative agencies, governmental departments, secretaries of state, federal, state,

and local officials, and all other persons and entities who may be required by operation

of law, the duties of their office, or contract, to accept, file, register or otherwise record

or release any documents or instruments, or who may be required to report or insure

any title or state of title in or to the Property.

12.     Each and every federal, state, and local governmental agency or

department or office is hereby directed to accept this Order and any and all documents

10

(Page 11)

Debtors: JTRE 14 Vesey LLC, et al.
Case No.: 24-12087 (MBK)
Caption: Order Approving Sale of 14 Vesey St. Property

and instruments necessary and appropriate to consummate the transaction contemplated by the Sale Contract.

13. Without limiting the other provisions of this Order, if any person or entity that has filed financing statements, mortgages, mechanic's liens, lis pendens or other documents or agreements evidencing interests with respect to the Property shall not have delivered to Trustee prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all interests which the person or entity has with respect to the Property or otherwise, then (a) the Trustee is hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Property and (b) the Purchaser and/or the Trustee are hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Liens, Claims and/or Interests in, against or with respect to the Property. This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, and local governmental agency, department, or office.

14. The Property shall be conveyed by the Trustee to, and accepted by the Purchaser "AS IS", "WHERE IS", "WITHOUT FAULTS", "WITHOUT ANY EXPRESS OR IMPLIED WARRANTY OR REPRESENTATION OF ANY KIND", except as expressly provided in the Sale Contract and this Order. Without limiting the generality of the foregoing, neither the Trustee nor any other person or entity makes any warranty or representation regarding the condition, working order, existence, quantity or location of such assets, and the Purchaser shall have no recourse and may

not assert any claim against the Trustee, or his representatives, based on any such warranty or representation.

15. This Court hereby retains exclusive jurisdiction, regardless of whether a Chapter 11 plan has been confirmed and consummated and irrespective of the provisions of any such plan or order confirming such plan, to enforce and implement this Order, the terms and provisions of the Sale Contract, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects including, but not limited to, retaining jurisdiction to (a) compel compliance with this Order and the Sale Contract, (b) resolve any dispute, controversy or claim arising under or related to the Sale Contract, or the breach thereof and (c) interpret, implement, and enforce the provisions of this Order and resolve any disputes related thereto.

16. Nothing contained in any plan confirmed in the Debtor's Chapter 11 Case or any order of this Court confirming such plan shall conflict with or derogate from the provisions of the Sale Contract or the terms of this Order.

17. Entry of this Order shall in no way impair the ability of the Court, United States Trustee, or Trustee to implement or enforce other orders of the Court entered in the Debtor's case, and all such orders shall continue in full force and effect.

18. The transaction contemplated by the Sale Contract are undertaken by the Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code. The Purchaser is a purchaser in good faith of the Property and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code. Accordingly, any reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale to the Purchaser.

19.     The terms and provisions of the Sale Contract and this Order shall be binding in all respects upon, and shall inure to the benefit of the Trustee, the Debtor's estate, the Purchaser, and any of such parties' respective affiliates, designees, successors, and assigns, and shall be binding in all respects upon all of the Debtor's estate's creditors, all prospective and actual bidders for the Property, and all persons and entities receiving notice of the Application, and/or the Sale Hearing notwithstanding any subsequent appointment of any examiner(s) or receiver(s) under any chapter of the Bankruptcy Code or any other law, and all such provisions and terms shall likewise be binding on such trustee(s), examiner(s), or receiver(s) and shall not be subject to rejection or avoidance by the Debtor, its estate, its creditors, or any examiner(s) or receiver(s).

20.     Each and every federal, state and local government agency or department and all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds and other similar persons are hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transaction contemplated by the Sale Contract. A certified copy of this Order may be filed with the appropriate clerk and/or recorded to act to cancel any Lien, Claim and/or Interest.

21.     The Broker Commissions are fixed and awarded in the amount of $260,000 payable to Cushman, and the Trustee is authorized and directed to pay and satisfy the Broker Commissions to Cushman from the proceeds of the Sale without further Order of this Court.

22.     The failure specifically to include any particular provision of the Sale Contract in this Order shall not diminish or impair the effectiveness of such

provision, it being the intent of this Court that the Sale Contract be authorized and approved in its entirety.

23.     The Sale Contract and any related agreements, documents, or other instruments may be further modified, amended, or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtor's estate.

**Exhibit D**

<u>**Broker Declaration**</u>

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

Caption in Compliance with D.N.J. LBR 9004-1(b)

**TOGUT, SEGAL & SEGAL LLP**
Frank A. Oswald, Esq.
550 Broad Street, Suite 1508
Newark, NJ 07102
Tel: (212) 594-5000
frankoswald@teamtogut.com

Albert Togut, Esq. (admitted *pro hac vice*)
Eitan E. Blander, Esq. (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, NY 10119
Tel: (212) 594-5000
altogut@teamtogut.com
eblander@teamtogut.com

*Attorneys for Albert Togut,*
*Not Individually But Solely in His Capacity*
*as Chapter 11 Trustee*

In re:

JTRE 14 VESEY LLC, et al.,

               Debtors.[1]

Chapter 11

Case No.: 24-12087 (MBK)

Judge: Michael B. Kaplan, U.S.B.J.

(Jointly Administered)

**DECLARATION OF BOBBY CARROZZO IN SUPPORT OF
TRUSTEE'S APPLICATION FOR: (I) AN ORDER APPROVING
(A) BIDDING PROCEDURES REGARDING THE TRUSTEE'S SALE
OF 14 VESEY ST. PROPERTY, (B) THE STALKING HORSE BID
PROTECTIONS, AND (C) THE TIME, DATE, PLACE AND FORM
OF NOTICE FOR BIDS, AN AUCTION AND A SALE HEARING; AND
(II) AN ORDER APPROVING (A) THE SALE FREE AND CLEAR OF
LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS; AND
(B) PAYMENT OF BROKER COMMISSIONS FROM SALE PROCEEDS**

---

[1]    JTRE 14 Vesey LLC's case is jointly administered with the case of 14 Vesey Street Partners (DEL) LLC (24-12086), Park 28 Partners LLC (24-17234), and W72 Street Partners LLC (24-17236).

Under 28 U.S.C. § 1746, I, Bobby Carrozzo, declare as follows under penalty of perjury:

1.      I am a licensed salesperson Senior Director in the New York Investment Sales Group of Cushman & Wakefield ("Cushman").  I submit this Declaration (the "Declaration") in support of the Trustee's application (the "Application")[2] for entry of (a) the Bidding Procedures Order approving (i) the Bidding Procedures regarding the Sale of the Property in accordance with the Sale Contract, (ii) the Stalking Horse Bid Protections, and (iii) the time, date, place and form of notice for the Auction and the Sale Hearing;  and (b) the Sale Order approving (i) the Sale of the Property and (ii) the Broker Commission.

2.      Except as otherwise indicated, I have personal knowledge of the matters set forth herein and, if called as a witness, would testify competently thereto.

**THE MARKETING PROCESS**

3.      On July 1, 2024, the Court entered its Order (the "Cushman Retention Order") approving the employment and retention of Cushman as real estate broker on behalf of the Debtor's estate to market and solicit offers for the Sale of the Property [Docket. No 86].[2]  Pursuant to the Cushman Retention Order, Cushman is entitled to a commission (the "Broker Commission") equal to two percent (2%) of the ultimate purchase price for the sale of the Property.

4.      Following the appointment of the Trustee, the Trustee continued and extended the retention of Cushman, most recently pursuant to the Extension Agreement dated January 20, 2026, attached hereto as **Exhibit 1**, which extended

---

[2]   Capitalized terms used but not defined herein shall have the meaning ascribed to such term in the Application.

Cushman's exclusivity regarding the Property to July 1, 2026. I have been designated as the licensed real estate agent of Cushman responsible for the services to be rendered regarding the Property.

5. Following the launch of the Property listing on August 20, 2024, Cushman, among other things, identified and contacted numerous brokers and potential buyers for the Property, through direct e-mail correspondence and/or telephone outreach.

6. Additionally, Cushman posted marketing information regarding the Property on its own website and other listing websites, including CoStar, LoopNet, Crexi, and others. The forms of listing were designed to expose the Property to thousands of prospective bidders and brokers worldwide.

7. In total, Cushman received direct expressions of interest from 90 parties, showed the Property to 29 interested parties, and received a total of 8 written offers through the date of this Declaration.

8. The Trustee has received a "Stalking Horse" offer of $13,000,000 to sell the Property to a purchaser (the "Stalking Horse Bidder") free and clear of liens and encumbrances pursuant to section 363 of the Bankruptcy Code, subject to higher or better offers and Bankruptcy Court approval. The terms of the proposed sale are set forth in a Sale Contract (the "Sale Contract") entered into by and between the Trustee and the Stalking Horse Bidder.

9. Based on my extensive experience, I believe that the Property has been appropriately and extensively marketed and that the offer submitted by the Stalking Horse Bidder reflects the highest offer available in the market for the Property at this time.

10. I have reviewed the Trustee's proposed Bidding Procedures and believe that they are fair and reasonable and designed to ensure that the offer made by the Stalking Horse Bidder is tested by the market. Cushman will continue to market and show the Property through and until the Bidding Deadline established by the Court.

I declare under 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed on March 23, 2026, in New York City, New York

*/s/ Bobby Carrozzo*
Bobby Carrozzo

**Exhibit 1**

**<u>Extension Agreement</u>**



Cushman & Wakefield Realty of Manhattan, LLC
1290 Avenue of the Americas, 8th Floor
New York, New York 10104

January 20, 2026

ALBERT TOGUT, not individually, but solely
in his capacity as Chapter 11 Trustee of:
JTRE 14 VESEY STREET LLC
JTRE PARK 28 LLC
JTRE W72ND STREET LLC
ONE PENN PLAZA, STE. 3335
NEW YORK, NY 10119

Re:  The Exclusive Right to Sell Listing Agreement between Albert Togut, as Chapter 11 Trustee of
JTRE 14 Vesey Street LLC, JTRE Park 28 LLC, and JTRE W72nd Street LLC (collectively and
separately known as "Seller") and Cushman & Wakefield Realty of Manhattan, LLC ("Cushman &
Wakefield") for the exclusive right to sell the buildings located at 14 Vesey Street (Block: 88 Lot:
2), 31 E 28th Street (Block: 858, Lot: 1001), and 27 W 72nd Street (Block: 1125, Lot: 1201),
(collectively and separately referred to as the "Property"), dated June 20, 2024 (the "Agreement")

Al:

Your signature and return of the enclosed copy of this letter will confirm our agreement to further extend the
above-referenced Agreement, which was previously ratified and extended by agreement dated April 30, 2025,
through ~~December 31, 2026~~. *July 1, 2026*

Facsimile and PDF signatures shall constitute original signatures for purposes of this letter agreement.

The property located at 31 E 28th Street (Block: 858, Lot: 1011) has been sold and is no longer applicable to
the Agreement.

Very truly yours,

CUSHMAN & WAKEFIELD REALTY OF
MANHATTAN, LLC

By: _____
Name: Robert A. Gastel
Title: Senior Managing Director

Agreed:

ALBERT TOGUT, not individually, but solely
in his capacity as Chapter 11 Trustee of:
JTRE 14 VESEY STREET LLC
JTRE PARK 28 LLC
JTRE W72ND STREET LLC

By: _____, as Trustee
Name:  Albert Togut, as Chapter 11 Trustee
Title: Chapter 11 Trustee