<table>
<tr><td>

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
*Caption in Compliance with D.N.J. LBR 9004-1(a)*

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
Michael J. Barrie (NJ No. 033262000)
Continental Plaza II
411 Hackensack Ave., 3rd Floor
Hackensack, NJ 07601-6323
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
mbarrie@beneschlaw.com
-and-
Abbey Walsh (admitted *pro hac vice*)
1155 Avenue of the Americas, Floor 26
New York, NY 10036
Telephone: (646) 593-7050
Facsimile: (646) 755-3397
abbey.walsh@beneschlaw.com

*Counsel to CPIF MRA, LLC*

</td><td></td></tr>
<tr><td>

In re:

JTRE 14 VESEY LLC, *et al.*,[1]

Debtors.

</td><td>

Chapter 11

Case No. 24-12087 (MBK)

(Jointly Administered)

**Hearing Date: May 7, 2026 at 10:00 a.m.**
**Obj. Deadline: April 30, 2026 at 4:00 p.m.**

</td></tr>
</table>

## MOTION OF CPIF MRA, LLC FOR DETERMINATION
## THAT A TERM SHEET FAILURE HAS OCCURRED
## PURSUANT TO THE RULE 9019 SETTLEMENT TERM SHEET

CPIF MRA, LLC ("Lender"),[2] by and through its undersigned counsel, Benesch,

Friedlander, Coplan & Aronoff LLP, hereby files this motion (the "Motion") for entry of an order

substantially in the form attached hereto as **Exhibit A** finding that a term sheet failure (a "Term

Sheet Failure") has occurred under that certain Binding Term Sheet dated as of June 18, 2024 (the

"Settlement Term Sheet") by and among (a) 14 Vesey Partners (DEL) LLC ("Vesey Partners"),

---

[1] JTRE 14 Vesey LLC's case is jointly administered with the cases of 14 Vesey Street Partners (DEL) LLC (24-12086), Park 28 Partners LLC (24-17234) and W72 Street Partners LLC (24-17236) (together, the "Debtors").

(b) JTRE 14 Vesey LLC ("JTRE 14 Vesey" and together with Vesey Partners, the "Vesey Debtors"), (c) Jack Terzi ("Terzi"), and (d) Lender. A copy of the Settlement Term Sheet is attached hereto as **Exhibit B**. In support of its Motion, Lender respectfully states as follows:

## PRELIMINARY STATEMENT

1. On June 21, 2024, following over two months of good faith negotiations under the supervision of a court-appointed mediator, Lender, the Vesey Debtors, and Terzi, the Vesey Debtors' principal, entered into the Settlement Term Sheet, which provided a global settlement of various disputes between the parties. By order dated July 1, 2024, pursuant to Bankruptcy Rule 9019, the Court approved the Settlement Term Sheet and the settlement set forth therein.

2. Among other things, the Settlement Term Sheet provided for (i) a brokered sale process (the "Sale") for property owned by JTRE 14 Vesey located at 14 Vesey Street, New York, New York 10007 (the "Vesey Property") and properties owned by the other Debtors, all of which were mortgaged to Lender to secure loans made by the Lender to the Debtors, (ii) an agreement on the amount and treatment of Lender's claim against the Vesey Debtors and (iii) a release of Terzi from his personal guaranties of the Lender's loans to the Debtors. However, the reduction in the amount and treatment of the Lender's claim and the release of Terzi from his personal guaranties are contingent upon no "Term Sheet Failure" occurring.

3. A Term Sheet Failure includes (i) any breach of the Settlement Term Sheet by either of the Vesey Debtors or Terzi, or (ii) any interference with the Sale process by either of the Vesey Debtors or Terzi. The Settlement Term Sheet provides that a "Term Sheet Failure" determination must be made by the Court.

4. Multiple Term Sheet Failures have occurred, including those listed herein (which may not be an exhaustive list). *First*, Terzi failed to uphold his obligations under the Settlement

2

Term Sheet to cooperate with Lender in advancing the Sale process and to refrain from interfering with same, including by: (i) failing to cooperate with Lender and Broker (as defined below) in setting an offering price and bid deadline for the Debtor's real properties; (ii) failing to cooperate with Lender and Broker in setting an "Outside Date" for the Sale; and (iii) failing to produce evidence of completed asbestos abatement at certain of the Debtors' properties. *Second,* Terzi and/or the Debtors breached the Settlement Term Sheet by unilaterally cancelling insurance coverage on the Debtors' properties (including on the Vesey Property) on or around July 3, 2024, resulting in the lapse of insurance coverage for the properties. *Third,* Terzi breached an express provision of the Settlement Term Sheet requiring him to escrow or cause to be escrowed sufficient available funds (the "Escrow Payment") to pay real estate taxes due to the New York City Department of Finance by failing to escrow or cause such payment to be escrowed. And, *fourth,* the Vesey Debtors and Terzi failed to pay the Administrative Costs (as defined below) of the Vesey Debtors' chapter 11 cases, including Terzi's Share of the Mediation Charges (as each such term is defined below).

5.    Each of these breaches of the Settlement Term Sheet independently supports a determination by the Court that a Term Sheet Failure has occurred.

### JURISDICTION AND VENUE

6.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue of these cases and this Motion are proper under 28 U.S.C. §§ 1408 and 1409.

7.    The statutory predicates for the relief sought herein are section 105(a) of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "Bankruptcy Code") and Rules 9014 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**RELIEF REQUESTED**

8.      Lender seeks entry of an order pursuant to Section 105 of the Bankruptcy Code and Fed. R. Bankr. P. 9014 and 9019 declaring that one or more Term Sheet Failures have occurred and as a result, (i) Lender's claim against each of the Vesey Debtors is allowed in the Filed Claim Amount and not subject to compromise; and (ii) Terzi is not entitled to a release of his personal guaranties of the Lender's loans to the Debtors.

**BACKGROUND**

I.      **Procedural Background**

9.      The Vesey Debtors commenced their chapter 11 cases on February 28, 2024 in order to stay a pending UCC foreclosure action by Lender against its property.  In response to Lender's motion to dismiss the chapter 11 cases, the Court ordered the parties to attend mediation to resolve the ongoing disputes between them.  *See Order Directing Mediation and Its Procedures* [ECF No. 41] (the "Mediation Order").

10.      On June 21, 2024, following a months' long course of mediator-supervised negotiations, the Vesey Debtors filed a motion (the "Settlement Motion") seeking approval of the Settlement Term Sheet, which provided for a global resolution of the Debtors' chapter 11 cases. On July 1, 2024, the Court entered the *Order (I) Approving the Settlement by and Among the Debtors and the Lender, and (ii) Granting Related Relief* [ECF No. 87] (the "Settlement Order") pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 9019 , expressly approving the Settlement Term Sheet in all respects, incorporating its terms by reference, and providing that the Court would retain jurisdiction over any matter arising from, and/or related to the Settlement Order or the relief granted therein.  *See* Settlement Order ¶¶ 3, 5.  The Settlement Order further provided that its provisions were "self-executing" and "effective and enforceable immediately upon entry." *Id.* ¶ 4.

4

11.     On September 12, 2024, as a result of numerous breaches of the Settlement Term

Sheet described in further detail below, Lender delivered to the Debtors' counsel a *Notice of Occurrence of Term Sheet Failure and Withdrawal of Consent to Use Cash Collateral* to the Debtors (the "Term Sheet Failure Notice").  A true and correct copy of the Term Sheet Failure Notice is attached hereto as **Exhibit C.**

12.     On October 30, 2024, Lender filed *its Motion to Appoint a Chapter 11 Trustee* [ECF No. 109] (the "Trustee Motion"), seeking the appointment of a chapter 11 trustee for the Debtors due, in large part, to the same behavior that caused the breaches of the Settlement Term Sheet.  On November 21, 2024, the Court granted the Trustee Motion over the objection of JTRE 14 Vesey and the next day entered the *Order Appointing Chapter 11 Trustee* [ECF No. 130].  Albert Togut, who also served as the mediator, was appointed by the United States Trustee as the chapter 11 trustee (the "Trustee").

**II.     The Settlement Term Sheet and the Term Sheet Failures**

13.     The primary purpose of the Settlement Term Sheet was to establish a framework for the Sale of the Debtors' properties and the compromise and resolution of Lender's claims against the Vesey Debtors.  Under the Settlement Term Sheet, Terzi and the Vesey Debtors agreed to take (or refrain from taking) certain actions and in exchange Lender agreed that, in the absence of a Term Sheet Failure finding made by the Court: (i) Lender's claim against the Vesey Debtors would be reduced from the original filed claim amount of $29,016,757.66  (the "Filed Claim Amount") to $24,100,000.00; and (ii) upon the consummation of the sale of the Debtors' real properties , Lender would release Terzi from his personal guaranties of the Debtors' loans. Settlement Term Sheet at 6.

14.     The Settlement Term Sheet defines a "Term Sheet Failure" to include (i) any breach of the Settlement Term Sheet by either of the Vesey Debtors or Terzi, and/or (ii) any interference with the Sale process by either of the Vesey Debtors or Terzi.  *Id*. at 2.

15.     Terzi and the Vesey Debtors have breached their obligations under the Settlement Term Sheet in multiple ways.[3]  Each breach, individually, constitutes a Term Sheet Failure.

### A.  Failure to Establish an Outside Date

16.     The Settlement Term Sheet provides that the Vesey Debtors are required to retain Cushman & Wakefield as broker (the "Broker") to market the Debtors' properties for a court-approved sale by no later than an "Outside Date" determined in consultation with the Broker and Lender. *Id.*  at 2.

17.     Despite repeated requests by Lender and Broker, Terzi refused to set an Outside Date.  *See* Trustee Motion, Ex. 3 (Declaration of Robert Shields) ("Shields Decl."), a copy of which is attached hereto as **Exhibit D**, ¶ 13.  Ultimately, this was one of the Term Sheet Failures noted by Lender in the Term Sheet Failure Notice and one of the reasons that Lender sought the appointment of a trustee.

### B.  Failure to Maintain Insurance on the Properties

18.     The Settlement Term Sheet provides that the Vesey Debtors must "maintain their real property assets such that Lender's interest therein is adequately protected, ***including by ensuring that such property is properly insured***, weatherized and secured."  *Id*.at 6 (emphasis added).

19.     On or around September 9, 2024, Lender discovered through communications with the Debtors' insurance broker that the Debtors had cancelled all of the insurance coverage on the

---

[3] The Term Sheet Failures set forth herein may not be all of the Term Sheet Failures that have occurred and Lender reserves its right to supplement this list as may be necessary.

Debtors' properties (including the Vesey Property) on or around July 3, 2024, and that such insurance coverage had thereby lapsed, leaving the Debtor's properties (including the Vesey Property) uninsured for over two months.  *See* Shields Decl. ¶ 2 & Ex. A.

### C.  Interference with the Sale Process

20.    The Settlement Term Sheet prohibits the Vesey Debtors and Terzi from "interfer[ing] with the Sale" process.  Settlement Term Sheet at 3.

21.    Over the course of the Sale process, Lender participated in various periodic update calls held by the Broker in which Terzi, Morris Terzi (Terzi's brother) and/or other representatives of the Debtors also participated.  *See* Shields Decl. ¶ 12.  As a result of these calls, Lender learned that Terzi had repeatedly engaged in conduct that had hampered the Sale process, including by prohibiting the Broker from both establishing an offering price and setting a bid deadline for the sale of each of the Debtors' properties, including for the Vesey Property.  *See id*. ¶ 13.  On October 1, 2024, the Broker sent an email to Terzi (the "Broker Email") copying Lender, the mediator, and various others outlining its concerns regarding the detrimental impact of Terzi's conduct on the willingness of potential bidders to submit timely and competitive bids, which the Broker indicated undermined its efforts to maximize both bidding activity and pricing for the Debtors' properties. *See id*. ¶ 14 & Ex. E.

22.    Also as a result of its attendance on the Broker's update calls, Lender learned that Terzi had allegedly commissioned an asbestos abatement for the Vesey Property, which Lender understood that, if true, would positively impact bidder interest and pricing for the Vesey Property. *See id*. ¶ 15.  However, despite repeated demands from Lender to Terzi to produce a record of the abatement work, Terzi did not provide any documentation demonstrating that such abatement had been completed, even though Lender had already paid contractors to carry out this work.  *Id.*

### D.   Failure to Escrow Real Estate Taxes

23.     The Settlement Term Sheet requires Terzi to deposit the Escrow Payment for the municipal real estate taxes as follows:

> No later than June 21, 2024, Terzi will cause to be escrowed or otherwise deposited (in a manner acceptable to Lender) fifty percent (50%) of the aggregate amount of real estate taxes (*i.e.* $65,000) coming due on or about July 31, 2024 on the Vesey Property.  Such funds will be deposited in such a way that the funds will be available to pay such real estate taxes on the date such taxes are due and payable.

Settlement Term Sheet at 6.

24.     Terzi never made this Escrow Payment.  *See* Declaration of Albert Togut dated April 14, 2026 ("Togut Decl."), a copy of which is attached hereto as **Exhibit E**, ¶ 7.

### E.   Failure to Pay Administrative Costs and Mediation Charges

25.     Terzi and the Vesey Debtors agreed to pay half of costs and expenses of the mediator and his professionals (the "Mediation Charges") and all costs of administration of the Vesey Debtors' cases (the "Administrative Costs") from a source other than the proceeds of Lender's collateral.  *See* Mediation Order ¶ 5, Settlement Term Sheet at 1; Togut Decl. ¶ 5.

26.     The Administrative Costs of the Debtors' chapter 11 cases have largely consisted of costs to maintain insurance on the Vesey Property and legal fees incurred by the Debtors' chapter 11 counsel prior to the appointment of the Trustee.  Togut Decl. at ¶ 8.

27.     The insurance costs have totaled at least $35,516 to date (a portion of which is attributable to the Vesey Debtors), and the Vesey Debtors' counsel fees totaled $114,945. *Id.*  The Vesey Debtors lacked sufficient funds to make these payments and even the insurance costs were not paid by Terzi. *Id.* at ¶ 9.  Ultimately, Lender had no choice but to advance the funds to the estate to pay necessary insurance premiums. *Id.*

28.     The Debtors also do not have sufficient funds to pay the legal fees owed to the Vesey Debtors' counsel prior to the Trustee's appointment. *Id.* at ¶ 10.  As such, it is likely that

8

this obligation will be satisfied from the proceeds of the sale of the Vesey Property, which is Lender's collateral, notwithstanding the provisions of the Settlement Term Sheet. *Id.*

29.    Pursuant to the Mediation Order, the Mediation Charges were to be paid equally by the Mediation Parties, meaning the Debtors and Terzi were jointly responsible for the payment of fifty percent (50%) of the Mediation Charges. *See* Mediation Order ¶ 5, Settlement Term Sheet at 1, Togut Decl. ¶ 5.    Under the Settlement Term Sheet, the Vesey Debtors and Terzi agreed to be jointly responsible for the Administrative Costs. *See* Mediation Order ¶ 5, Settlement Term Sheet at 1, Togut Decl. ¶ 4.    Pursuant to the Settlement Term Sheet, these amounts could not be paid from the proceeds of Lender's collateral.    Settlement Term Sheet at 1.

30.    The Mediation Charges totaled $270,990.30. *Id.* at ¶ 11.    Terzi and the Debtors were jointly responsible for half of this amount, or $135,495.15 ("Terzi's Share"). *Id.*

31.    Despite being notified by the Trustee (who was also the mediator) of the outstanding balance owed for the Mediation Charges, the Debtors paid only $60,106.50 of Terzi's Share of the Mediation Charges, in satisfaction of the first invoice period for April-May 2024 ($50,000 of which was paid at the beginning of the Mediation), after which neither Terzi nor the Debtors paid any additional amounts. *Id.* at ¶ 12.

32.    In contravention of the Settlement Term Sheet, Lender was forced to pay the unpaid portion of Terzi's Share of the Mediation Charges in the amount of $75,388.65, which was paid out of proceeds of the sale of one of the Debtors' properties, which was the Lender's collateral. *See* Togut Decl. ¶ 13.

## ARGUMENT

**I.    The Court has Jurisdiction to Determine Whether a Term Sheet Failure Has Occurred**

33.    Under section 105(a) of the Bankruptcy Code, this Court has the statutory authority to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code.  11 U.S.C. § 105(a).  Further, the Court may "tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process," either on motion of a party in interest or on its own initiative.  *Id.*

34.    The Court's equitable authority necessarily includes "'the power and the jurisdiction to enforce its valid orders.'"  *In re Biolitec, Inc.*, No. 13-11157 (DHS), 2015 WL 351201, at *8 (Bankr. D.N.J. Jan. 22, 2015) (quoting *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 266 (3d Cir. 1991)); *see also Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (stating that a bankruptcy court "plainly had jurisdiction to interpret and enforce its own prior orders," and that, when such court had issued an order enjoining state law actions against the debtors' insurer, it had "explicitly retained jurisdiction to enforce its injunctions.").  This jurisdiction extends to settlement orders and stipulations between parties.  *See, e.g., Bartock v. BAE Survivability Sys., LLC (In re Bartock)*, 398 B.R. 135, 153 (Bankr. W.D. Pa. 2008) (pointing to a stipulation that retained the bankruptcy court's jurisdiction over matters arising from a settlement agreement and stating that, "[w]hen parties stipulate to the settlement of an action they 'thereby consent to the exercise of the court's power to compel compliance.'") (quoting *Cooper-Jarrett, Inc. v. Cent. Transp., Inc.*, 726 F.2d 93, 96 (3d Cir.1984)) (additional internal citations and quotations omitted); *In re E. W. Resort Dev. V, L.P., No. 10-10452 (BLS)*, 2014 Bankr. LEXIS 3930, at *30-31 (Bankr. D. Del. Sep. 12, 2014) (finding that it was "within the court's jurisdiction" to enforce a settlement

agreement that the court had already "approved and authorized" and which had a close nexus to the plan and the bankruptcy proceeding in general).

35.     The Court has jurisdiction under section 105(a) of the Bankruptcy Code to enforce both the Settlement Order and the Settlement Term Sheet.  The Settlement Order expressly provides that the Court "shall retain jurisdiction over any matter arising from, and/or related to" the Settlement Order or the relief granted therein, including in connection with the Settlement Term Sheet, which the Settlement Order directly "incorporate[s] by reference."  Settlement Order ¶¶ 3, 5.  Following *Bartock*, the parties to the Settlement Term Sheet *expressly consented* to this Court's jurisdiction to enforce the terms of that settlement.  In addition, the Settlement Term Sheet requires that the Court determine whether a Term Sheet Failure has occurred before Lender is released from its agreements under thereunder.  The structure of the Settlement Term Sheet itself therefore expressly contemplates that this Court will retain jurisdiction to enforce its own orders in connection with the Settlement Order and the Settlement Term Sheet.

## II.    Multiple Term Sheet Failures Have Occurred

36.     Any breach of the Settlement Term Sheet constitutes a Term Sheet Failure.  Any interference with, hindering, or obstruction of the Sale process by the Vesey Debtors or Terzi also constitutes a Term Sheet Failure.  As of the date hereof, at least six independent Term Sheet Failures have occurred: (i) Terzi failed to cooperate with Lender and Broker to set an Outside Date for the Sale of the Debtors' properties (which lack of cooperation also constituted interference with the Sale process) (*see infra* Section II.A); (ii) the Vesey Debtors failed to maintain insurance coverage on the Vesey Property, leading to the cancellation and lapse of same (*see infra* Section II.B); (iii) Terzi further interfered with the Sale process by prohibiting the Broker from establishing both an offering price and a bid deadline for the Sale of the Debtors' properties, including for the Vesey Property (*see infra* Section II.C); (iv) Terzi again interfered with the Sale by failing to

produce documentation that certain asbestos work had been completed at the Vesey Property, despite repeated demands from Lender for same, which failure inhibited the Broker's ability to appropriately market the Vesey Property (*see infra* Section II.C); (v) Terzi failed to deposit the Escrow Payment covering his portion of municipal real estate taxes due on the Vesey Property (*see infra* Section II.D); and (vi) Terzi and the Vesey Debtors failed to pay the Administrative Costs of the Vesey Debtors as well as Terzi's Share of the Mediation Charges (*see infra* Section II.E). Any one of these occurrences is grounds for declaring that a Term Sheet Failure has occurred.

37. This Court has already found cause to appoint a chapter 11 trustee based, in part, on the foregoing conduct, including the Vesey Debtors and Terzi's failure to maintain insurance for the properties and failure to cooperate in the sale of the properties.

38. Accordingly, and for these reasons, Lender respectfully requests that the Court issue an order pursuant to Section 105 of the Bankruptcy Code and Fed. R. Bankr. P. 9014 and 9019 declaring that: (i) one or more Term Sheet Failures have occurred; (ii) Lender's claim against each of the Vesey Debtors is reinstated to, and allowed as, the Filed Claim Amount; and (iii) Terzi shall not be released from his personal guaranties for the benefit of Lender upon the sale of the Debtors' properties.

Dated: April 14, 2026

**BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP**

By: _/s/ Michael J. Barrie_
Michael J. Barrie (NJ 033262000)
411 Hackensack Ave., 3rd Floor
Hackensack, NJ 07601-6323
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
Email: mbarrie@beneschlaw.com

-and-

Abbey Walsh (admitted *pro hac vice*)
1155 Avenue of the Americas, Floor 26
New York, NY 10036
Telephone: (646) 593-7050
Facsimile: (646) 755-3397
Email: abbey.walsh@beneschlaw.com

*Counsel for CPIF MRA, LLC*

13