## EXHIBIT B

**Settlement Term Sheet**

## Binding Term Sheet

This Binding Term Sheet (the "**Term Sheet**") is entered into as of June 18, 2024 (the "**Effective Date**"[1]), by and between (a) 14 Vesey Partners (DEL) LLC ("**Vesey Partners**"), (b) JTRE 14 Vesey LLC ("**JTRE 14 Vesey**" and together with Vesey Partners, the "**Debtors**"), (c) Jack Terzi ("**Terzi**"), on the one hand, and (d) CPIF MRA, LLC ("**Lender**") on the other hand. These individuals and entities shall be referred to collectively as the "**Parties**," and individually as a "**Party**." This Term Sheet and any definitive documentation executed pursuant hereto is and will remain subject to the approval of the United States Bankruptcy Court for the District of New Jersey (the "**Bankruptcy Court**"), which is presiding over the Debtors' jointly-administered Chapter 11 cases captioned as *In re JTRE 14 Vesey, LLC, et al.*, Case No. 24-12087 (MBK) (the "**Bankruptcy Cases**"). This Term Sheet memorializes the agreements reached by the Parties following good faith mediation of their disputes before Albert Togut (the "**Mediator**") who was appointed by the Bankruptcy Court.

| | |
|---|---|
| **Bankruptcy Court Approval** | Within 3 days of the Effective Date of this Term Sheet, Debtors shall (i) file an appropriate motion in the Bankruptcy Cases seeking the Bankruptcy Court's approval of this Term Sheet as a settlement under Federal Rule of Bankr. Procedure 9019 (the "**9019 Motion**" and the order approving such motion, the "**Settlement Order**") and (ii) seek a hearing on its pending motion to approve bidding procedures (D.I. 32), which will be modified as set forth in this Term Sheet. |
| **Administrative Costs of the Bankruptcy Cases** | The Debtors and Terzi shall fund all costs of administration of the Bankruptcy Cases (other than the costs of the Mediator whose costs are equally shared by the Lender and Debtors) from a source other than the proceeds of Lender's collateral, *provided, however*, in no event may such funding come in the form of debtor-in-possession financing absent the prior written consent of Lender (to be given or withheld in its sole and absolute discretion) and in no event shall the Debtors seek to surcharge the Lender's collateral pursuant to section 506(c) of the Bankruptcy Code or any other applicable law (it being agreed that the Settlement Order will waive the estates' surcharge rights). |
| **Broker** | Cushman & Wakefield (the "**Broker**") will be the broker for the marketing and sale process (the "**Sale Process**") culminating in the sale (the "**Sale**") of the Debtors' real property assets (the |

---

[1] For the avoidance of doubt, this Term Sheet will be binding upon the Parties upon delivery of a fully executed copy of the Term Sheet to all Parties; *provided that* the Debtors will not be bound by such Term Sheet until approved by the Bankruptcy Court and the Lender will be released from the Term Sheet if the Bankruptcy Court denies approval of the Term Sheet or if the Debtors do not timely file a motion seeking approval of the Term Sheet in form and substance reasonably acceptable to Lender.

24468019 v11

|  | "**Vesey Property**") and for the Affiliated Sales (as defined below).<br><br>The Broker will be granted full access to the Vesey Property and the properties of the Affiliated Debtors and the Debtors and Affiliated Debtors will agree that Lender may have direct communications with the Broker, including through periodic updates regarding the marketing process and the delivery of letters of intent, indications of interest, term sheets, and other similar sale-related documentation.<br><br>Within 3 days of the Effective Date, the Debtors shall (i) file in the Bankruptcy Cases an appropriate application seeking the retention of the Broker (which filing will be acceptable to Lender in its reasonable discretion) and (ii) withdraw the pending retention application filed at D.I. 31.<br><br>For the avoidance of any doubt, Debtor shall be entitled to negotiate with the Broker regarding a reasonable and market commission to be paid in connection with the sale of the Vesey Property. |
|---|---|
| **Sale Timing and Milestones** | Timing of a sale to be determined by the Broker, *provided, however*, that, in consultation with the Broker, the Parties shall fix an outside date (the "**Outside Date**") by which the Sale must have been approved by final order of the Bankruptcy Court. |
| **Treatment of Lender's Claims** | The Lender's proofs of claims (assigned Claim No. 2 in Case No. 24-12086 and Claim No. 4 in Case No. 24-12087 and, together, "**Lender's Claims**") shall be deemed allowed in full, *provided, however*, that for the purposes of distribution of proceeds from any Sale in accordance with this Term Sheet, Lender agrees that its recovery on the Lender's Claims shall be capped at $24,100,000.00 and subject to the Waterfall provisions outlined below, *provided further, however*, that (i) if the Sale process fails for any reason or (ii) the Debtors or Terzi interfere with the Sale, challenge Lender's Claims, or (iii) the Debtors or Terzi otherwise breach the terms of this Term Sheet ((ii) and (iii) are collectively, a "**Term Sheet Failure**"), the Lender's Claims shall revert to the full amount the filed proofs of claim (plus any allowable postpetition fees, charges, and interest) (collectively, the "**Filed Claim Amount**"). For the avoidance of any doubt, a finding that Terzi or the Debtors interfered with the sale process or otherwise breached this Term Sheet must be made by the Bankruptcy Court prior to the amount of the Lender's Claims reverting back to the Filed Claim Amount. For the avoidance of |

| | |
|---|---|
| | doubt, closing with a backup bidder as set forth in the sale procedures shall not be considered a sale process failure. |
| | For the avoidance of doubt, the Lender may credit bid the Lender's Claims in connection with the Sale of the Vesey Property, *provided, however* that any credit bid of the Lender's Claims on the Vesey Property shall be capped at $24,100,100.00. For the avoidance of any doubt, to the extent that Lender credit bids and Lender is determined to be the best and highest offer for the Vesey Property, such credit bid shall be subject to the Distribution Waterfall (as hereinafter defined). |
| | The occurrence of a Term Sheet Failure will not affect the allowance of the Lender's Claims set forth herein. |
| **Waterfall of Sale Proceeds** | Net Cash Proceeds of the Sale of the Vesey Property shall be distributed as follows (the "**Distribution Waterfall**"): <br><br> 1. The first $21,500,000.00 of Net Cash Proceeds received in any Sale shall be paid to the Lender on account of Lender's Claims. <br> 2. Net Cash Proceeds in excess of $21,500,000.00 received in any Sale ("**Excess Sale Proceeds**") shall be divided as follows (the "**Sharing Percentage**"): 55% of such Excess Sale Proceeds shall be paid to Lender and 45% of the Excess Sale Proceeds shall be paid to the Debtors' estates until the Lender has been paid $24,100,000.00 in the aggregate. For the avoidance of any doubt, once Lender receives $21,500,000 in Net Cash Proceeds from the Sale, the $65,000 escrow shall be released to Terzi. <br> 3. Once the Lender has received $24,100,000.00 of Net Cash Proceeds, all remaining Net Cash Proceeds will be paid to JTRE 14 Vesey for the benefit of its estate, and, subject to the terms of this Term Sheet, the Lender's Claims against the Debtors will be deemed released and shall be expunged. <br><br> For purposes of this Term Sheet, "Net Cash Proceeds" means with respect to any sale or disposition by any Debtor of assets, the amount of cash proceeds received (directly or indirectly) from time to time (whether as initial consideration or through the payment of deferred consideration, which, for the avoidance of doubt, Lender is not through this Term Sheet consenting to any deferred compensation as part of any Sale or any non-cash consideration) after deducting therefrom only (i) reasonable fees, commissions, and expenses related thereto and required to |

24468019 v11

| | |
|---|---|
| | be paid by such Debtor in connection with such sale or disposition, and (ii) taxes paid or payable to any taxing authorities (including but not limited to real estate taxes) by such Debtor in connection with such sale or disposition, in each case to the extent, but only to the extent, that the amounts so deducted are, promptly after the time of receipt of such cash, actually paid to a person that is not an affiliate of any Debtor and are properly attributable to such transaction. For the avoidance of doubt, any income tax liability created by or attributable to the Sale will not be included in the calculation of Net Cash Proceeds. Lender will retain the ability to object to any amounts deducted from the proceeds of a Sale as not falling into the above definition of Net Cash Proceeds.  For the avoidance of doubt, in the event of a successful credit bid of below $21,500,000 by the Lender for the Vesey Property, there shall be no applicable Excess Sale Proceeds distributable in the waterfall described above. |
| **Affiliate Cases** | Within 3 days of the Effective Date of this Term Sheet, Terzi shall cause each of (i) JTRE Park 28 LLC ("**Park 28**") and (ii) JTRE W72nd Street LLC ("**W72nd Street**" and together with Park 28, the "**Affiliate Debtors**") to file voluntary petitions with the Bankruptcy Court for protection under chapter 11 of the Bankruptcy Code, and the Debtors shall seek to have those cases (the "**Affiliate Cases**") jointly administered with these Bankruptcy Cases. |
| | As part of filing the Affiliate Cases, each Affiliate Debtor will seek to join this Term Sheet as a settlement under F.R.B.P 9019 and engage Broker to pursue a marketing and sale process as contemplated herein. |
| | Lender shall agree to a $50,000 carveout from its collateral in each of the two Affiliate Cases (for an aggregate total of $100,000 spread evenly across two cases, the "**Carveouts**") solely for the payment of the reasonable fees and expenses incurred by debtor's counsel in such Affiliate Case, subject to a budget mutually agreed upon by the Parties (the "**Budget**"). Subject to court approval and documentation acceptable to Lender (including replacement liens and other typical protections, including the right to interact directly with the Broker and potential bidders and buyers and comment on marketing materials and sale documents), Lender will advance funds to each Affiliate Debtor to pay for insurance, property taxes, and condo fees (but, for the avoidance of doubt, Lender will not be obligated to fund any amounts in excess of the agreed amounts for such expenses as set forth in the Budget in any given month). In addition, Lender will consider, in its sole and absolute |

discretion, requests to fund emergency maintenance and other critical expenses to maintain the property of the applicable Affiliate Debtors. Lender will not be responsible for any legal expenses or non-operational expenses other than its agreement to the Carveout and payment of the Broker fees out of proceeds of the Affiliate Sales (as defined below) and Lender will not be responsible or otherwise pay for (directly or indirectly, including out of its collateral) any expenses outside of the Budget. The occurrence of a Term Sheet Failure will be a default under any and all financing agreements such that Lender's obligation to fund the Budget will immediately cease. For the avoidance of any doubt, Terzi shall have no obligation to fund the Affiliate Cases and the real properties related thereto; and such failure to fund the Affiliate Cases shall not be deemed a Term Sheet Failure.

In exchange for the Carveout and the funding of critical operational expenses by Lender, the Affiliate Debtors will agree that it will be a Term Sheet Failure to seek or propose any debtor-in-possession financing absent the prior written consent of Lender (to be provided or withheld in its sole and absolute discretion) and the order approving the Carveout will include a waiver of the ability to surcharge the Lender's collateral pursuant to section 506(c) of the Bankruptcy Code (or any other applicable law).

Promptly after filing the Affiliate Cases, each Affiliate Debtor shall each commence a parallel marketing and sale process for its principal real estate asset (the "**Affiliate Sales**"), with the Broker serving as the broker for the Affiliate Sales.

The receiver appointed in the state court litigation between Lender and Park 28 shall be appointed as a "bankruptcy custodian" in connection with that Affiliate Case.

To the extent there is a bid in connection with an Affiliate Sale that is recommended by the Broker and that Lender wishes to accept, it will be Term Sheet Failure if Terzi objects to or otherwise attempts to prevent the court approval of such sale.

As a required "first day" motion, each Affiliate Debtors will seek an order approving the Carveout that will include provisions where each Affiliate Debtor (i) stipulates to Lender's prepetition claim amount and the validity, priority, and enforceability of Lender's security interest and (ii) obtains court confirmation that

|  | Lender may credit bid its secured claim in connection with the applicable Affiliate Sales. |
|---|---|
| **Real Estate Taxes** | No later than June 21, 2024, Terzi will cause to be escrowed or otherwise deposited (in a manner acceptable to Lender) fifty percent (50%) of the aggregate amount of real estate taxes (*i.e.*, $65,000) coming due on or about July 31, 2024 on the Vesey Property. Such funds will be deposited in such a way that the funds will be available to pay such real estate taxes on the date such taxes are due and payable. |
| **Release of Terzi Guaranties** | In exchange for his full cooperation with the Sale Process and each Affiliate Sales process, including an agreement not to participate (directly or indirectly, whether through or on behalf of any other group or entity in any capacity, whether as a partner, manager, investor, contractor, consultant, or otherwise) in the Sale Process or any Affiliate Sale as a bidder, prospective bidder, or buyer (the "**Buyer Prohibition**"), and subject to the approval of the Sale and each Affiliate Sale by final order of the Bankruptcy Court (whether as a confirmation order or a sale order under section 363 of the Bankruptcy Coe) in accordance with this Term Sheet, upon the consummate of the Sale and each Affiliate Sale as contemplated herein, Lender shall grant Terzi a full release of his personal guaranties in connection with the loans held by Lender in connection with Debtors and each Debtor Affiliate; *provided, however*, in the event that the Bankruptcy Court finds that Terzi has interfered with, tampered with, or otherwise hindered the Sale Process or any Affiliate Sale process (including by breaching the Buyer Prohibition) or challenged (directly or indirectly) Lender's Claims or any claim of Lender in any Affiliate Case or otherwise causes a Term Sheet Failure, then he shall not be entitled to any release and the claims of Lender against Terzi will continue to be valid against Terzi as guarantor notwithstanding any release of any Debtors or Affiliate Debtor by Lender or any release provided to Terzi prior to such finding by the Bankruptcy Court. |
| **Use of Chapter 11 Plan** | The Parties agree that the Sale and the Affiliate Sales may be consummated through liquidating chapter 11 plans so long as such plans do not deviate from the terms and conditions of this Term Sheet and that the Lender will allow its claims to be impaired and will vote in favor of such plan. |
| **Maintenance of Properties** | At all times, the Debtors and debtors in the Affiliate Cases will maintain their real property assets such that Lender's interest therein in adequately protected, including by ensuring that such property is properly insured, weatherized, and secured; *provided* |

24468019 v11

|  | *however*, that Terzi shall have no personal obligation to provide funds for the Affiliate Cases and the real property assets associated therewith and such failure to fund shall not be deemed a Term Sheet Failure (but the Debtors and Affiliate Debtors will have an obligation to request funds from Lender to the extent necessary to satisfy this requirement). |
|---|---|
| **Release of Lender** | As a condition precedent for the closing of each sale contemplated by this Term Sheet, the loan parties associated with such sale will provide a full release of all claims against Lender to the extent arising out of or related to the loan documents associated with such property, any litigation related to such property, the bankruptcy case related to such property, and this Term Sheet. |
| **Mediator to Maintain Oversight** | The Parties agree that any dispute regarding the terms of this Term Sheet will be mediated in front of the Mediator. |

*[signatures appear on following page]*

24468019 v11

**AGREED AND ACCEPTED:**

**JTRE 14 Vesey LLC**

By:_____
Name:
Title:

**14 Vesey Partners (DEL) LLC**

By:_____
Name:
Title:

**CPIF MRA, LLC**

By:_____
Name:
Title:

24468019 v11

**AGREED AND ACCEPTED:**

**JTRE 14 Vesey LLC**                              **14 Vesey Partners (DEL) LLC**

By:_____          By:_____
Name:                                              Name:
Title:                                             Title:

**CPIF MRA, LLC**

By:_____
Name:
Title:

24468019 v11