## EXHIBIT C

**Term Sheet Failure Notice**

**Benesch**

Michael J. Barrie
1313 N. Market Street, Suite 1201
Wilmington, Delaware 19801
Direct Dial:  302.442.7068
Fax:  302.442.7012
mbarrie@beneschlaw.com

September 12, 2024

**VIA E-MAIL**

A.Y. STRAUSS LLC
Eric H. Horn, Esq.
290 West Mount Pleasant Avenue, Suite 3260
Livingston, New Jersey 07039
ehorn@aystrauss.com

> **Re:**   **NOTICE OF OCCURANCE OF TERM SHEET FAILURE AND WITHDRAWAL OF CONSENT TO USE OF CASH COLLATERAL**

Dear Eric:

As you know, we represent CPIF MRA, LLC (the "Lender") in connection with the following bankruptcy cases: *In re JTRE 14 Vesey LLC et al.*, Case No. 24-12087 (MBK) (the "Vesey Cases"), *In re Park 28 Partners LLC*, Case No. 24-17234 (MBK), and *In re W72 Street Partners LLC*, Case No. 24-17236 (MBK) (together, the "Affiliate Cases"[1] and, collectively with the Vesey Cases, the "Bankruptcy Cases").[2]

Following a mediation among the Lender, the Vesey Debtors, Mr. Terzi, and various entities controlled by Mr. Jack Terzi the parties reached a global settlement of their disputes (the "Settlement"), the terms of which were memorialized in the Term Sheet annexed hereto as Exhibit A (the "Term Sheet").[3]  By Order entered July 1, 2024 [D.I. 87] (the "Settlement Order"), the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") approved the Settlement and, for avoidance of any doubt as to the terms of the Settlement, the Settlement Order expressly incorporates the Term Sheet.

Among other things, the Term Sheet requires that "[a]t all times, the Debtors and debtors in the Affiliate Cases will maintain their real property assets such that Lender's interest therein in adequately protected, including by **ensuring that such property is properly insured**, weatherized, and secured."  Term Sheet, at p. 2 (emphasis added).  It also provides that: "(i) if the

---

[1]   Unbeknownst to Lender, prior to commencing these cases, JTRE Park 28 LLC changed its name to Park 28 Partners LLC and JTRE W72nd Street LLC changed its name to W72 Street Partners LLC. Lender reserves all rights with respect to same.

[2]   As context requires, the debtors in the Vesey Cases are referred to as the "**Vesey Debtors**," the debtors in the Affiliate Cases are referred to as the "**Affiliate Debtors**" and all four debtors are referred to collectively as the "**Debtors**."

[3]   Unless otherwise defined herein, all capitalized terms shall have the same meanings ascribed to them in the Term Sheet or the Cash Collateral Motion, as applicable.

24915111 v2

www.beneschlaw.com

Eric H. Horn, Esq.
September 12, 2024
Page 2

Sale process fails for any reason or (ii) the Debtors or Terzi interfere with the Sale, challenge Lender's Claims, or (iii) **the Debtors or Terzi otherwise breach the terms of this Term Sheet** ((ii) and (iii) are collectively, a "Term Sheet Failure"), the Lender's Claims shall revert to the full amount the filed proofs of claim (plus any allowable postpetition fees, charges, and interest) (collectively, the "Filed Claim Amount"). Term Sheet, at pp. 6 – 7 (emphasis added).

Subsequently, and as required by the Term Sheet, the Affiliate Debtors commenced their own Bankruptcy Cases.  Under the terms of the Term Sheet, the Lender consented, subject to certain conditions, to the use of its Cash Collateral to administer the Affiliate Cases.  To that end, on August 20, 2024, the Affiliate Debtors filed the *Debtors' Motion for Entry of an Order (I) Pursuant to 11 U.S.C §§ 105, 361, 362, 363, 503, and 507 and Fed. R. Bankr. P. 2002, 4001, and 9014 (A) Authorizing Debtors to Use Cash Collateral; (B) Granting Adequate Protection to Lender; and (II) Pursuant to 11 U.S.C. § 105 And Fed. R. Bankr. P. 9019 Joining the Affiliate Debtors to the Settlement by and Among the Vesey Debtors, the Lender and Jack Terzi and (III) Granting Related Relief* [D.I. 28] (the "Cash Collateral Motion").  In the Cash Collateral Motion, the Debtors sought to join both Affiliate Debtors to the Term Sheet and to memorialize the terms of Lender's consent to the use of its Cash Collateral in the proposed order (the "Proposed Cash Collateral Order").  The Cash Collateral Motion has not yet been heard by the Bankruptcy Court and remains pending.  However, the Lender's consent was premised on the Debtors' adherence to the Term Sheet and the breach of those obligations, as described below, necessarily warrants that the Lender withdraw its consent to the use of its Cash Collateral.

**NOTICE OF TERM SHEET FAILURE AND TERMINATION EVENTS THAT HAVE OCCURRED AND ARE CONTINUING IS HEREBY GIVEN**, including, but not limited to, the failure of the Vesey Debtors and Affiliate Debtors to properly maintain and pay for insurance on the Mortgaged Properties.  Specifically, Lender recently learned that *since as early as July 3, 2024*, insurance coverage on **all** the Debtors' real properties was cancelled and, as a consequence, none of the Mortgaged Properties are presently insured.  This undeniably constitutes a Term Sheet Failure under the Term Sheet.  And, it constitutes a failure of each Debtor's obligations as a debtor in possession.  In any event, based upon these breaches, and the Debtors' conduct this far in the Bankruptcy cases and whether or not the Cash Collateral Motion is ultimately heard, the Lender hereby withdraws its consent for the Debtors to use Lender's Cash Collateral.

What is more egregious, however, is the Debtors' continued stonewalling Lender's efforts to force place insurance coverage.  Notwithstanding Lender's numerous requests for information to force place insurance, such as loss runs, the Debtors have refused to comply.  This is an untenable situation; the properties must be insured. Moreover, the Lender also has learned that the unearned premiums with respect to the canceled policies were "returned" to the named insured (i.e. the Debtors) through their representative Morris Terzi.  Those funds were never returned to the Lender or the receiver.  Nor was the Lender informed of the cancellation of the policies or the "return" of the funds advanced.  It appears that the Debtors or the Terzis have absconded with those funds.

Thus, Lender hereby demands that before close of business tomorrow September 13, 2024 the Debtors provide Lender with: (i) the status of insurance on each of the properties; (ii) if the Debtors contend that insurance is presently in place, face sheets dated as of today or other

Eric H. Horn, Esq.
September 12, 2024
Page 3

information sufficient to show the policies are in effect as of today; (iii) if insurance is not in place on any of the properties, historical loss runs for each property; (iv) an accounting of funds received by any of the Debtors or the Terzis as a result of the cancellation of the policies and the "return" of premiums advanced by the Lender or the receiver. Copies of the foregoing information may be sent to me via email at mbarrie@beneschlaw.com, with a copy to kcapuzzi@beneschlaw.com and dbrogan@beneschlaw.com. Lender also demands the immediate return of the misappropriated funds.

Finally, the Lender understands that the Debtors and Jack Terzi still have not paid their share of the outstanding fees owed to the Mediator appointed by the Court. The order appointing the Mediator and directing the parties to mediation expressly requires that "[t]he costs of the Mediator and his professionals will be paid by equally by the Mediation Parties on a current basis." D.I. 41, at ¶ 5. The Lender has paid its share, but—despite repeated inquiries from the Mediator about non-payment of his fees—the Debtors and Jack Terzi have not.

We remind you that Lender expects and demands that each of the Debtors comply with, and strictly adhere to, the terms and conditions of the Term Sheet, their obligations under the Bankruptcy Code and any other agreements between the Parties at all times, and Lender hereby reserves all rights thereunder. No forbearance, delay, or inaction by Lender in the exercise of its rights and remedies, and no continuing performance by Lender or Debtors under the Term Sheet: (a) shall constitute: (i) a modification or an alteration of the terms, conditions, or covenants of the Term Sheet, any other agreements between the Parties or any related documents, instruments and agreements, all of which remain in full force and effect or (ii) a waiver, release, course of dealing, or limitation upon Lender's exercise of any of its rights and remedies thereunder, all of which are hereby expressly reserved, or (b) release you in any way from any of your respective duties, obligations, covenants, or agreements under the Term Sheet or from any consequences of any Term Sheet Failure.

This letter does not assert all (i) existing misrepresentations, breaches, defaults and (ii) rights and remedies of the Lender under the Term Sheet or otherwise. Accordingly, this letter is not, and shall not be deemed to be, a waiver of, or consent to, any misrepresentation, breach, default, or Term Sheet Failure, now existing or hereafter arising under the Term Sheet or otherwise. All rights are reserved.

Should you have any questions, please do not hesitate to contact me.

Sincerely,

BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP

Michael J. Barrie

Cc: Albert Togut, Mediator (via E-Mail)